# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Donquarion Lewis; Ke'Aujanaa Shepherd-Friday; and K.B., by and through her parent and next friend H.B.,

   Plaintiffs,

v

MICHIGAN DEPARTMENT OF EDUCATION,

   Defendant.

Case No. 22-cv-00838-RJJ-PJG

Hon. ROBERT J. JONKER

Mag. PHILLIP J. GREEN

**DECLARATION OF REBECCA MCINTYRE**

---

Erin H. Diaz (P80388)
Mitchell D. Sickon (P82407)
Disability Rights Michigan
Attorneys for Plaintiffs
4095 Legacy Parkway
Lansing, Michigan 48911
(517) 487-1755
ediaz@drmich.org
msickon@drmich.org

Jennifer B. Salvatore (P66640)
David L. Fegley (P85275)
Salvatore Prescott Porter & Porter
Attorneys for Plaintiffs
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
salvatore@sppplaw.com
fegley@sppplaw.com

Elizabeth K. Abdnour (P78203)
Abdnour Weiker LLP
Attorney for Plaintiffs
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com

Jacquelyn N. Kmetz (P83575)
MI AECRES
Attorney for Plaintiffs
P.O. Box 705
Ludington, Michigan 49431
(231) 794-2379
jkmetz@miaecres.org

Kathleen A. Halloran (P76453)
Neil Giovanatti (P82305)
Ticara D. Hendley (P81166)
Attorneys for Defendant
Michigan Department of
Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
hallorank1@michigan.gov
giovanattin@michigan.gov
hendleyt1@michigan.gov

I, REBECCA MCINTYRE, pursuant to 28 U.S.C. § 1796, hereby declare the following is true and correct:

1. I am employed by the Michigan Department of Education (MDE) in the Office of Special Education as the Assistant Director.

2. I submit this declaration in support of MDE's Motion for Summary Judgment.

3. In my role as Assistant Director in the Office of Special Education, I am responsible for, among other things, development and continuous improvement of MDE's general supervision system to ensure local education agencies' (LEAs) compliance with the requirements of the Individuals with Disabilities Education Act (IDEA). I have held this role since December 2021.

4. Prior to my current position, I was the supervisor of the program accountability unit in the Office of Special Education from May 2019 to December 2021. I was responsible for overseeing MDE's dispute resolution process including due process complaints and state complaints.

**MDE's Regulatory Background**

5. In Michigan, MDE is the state education agency (SEA) that accepts federal funds under the Individuals with Disabilities Education Act (IDEA) that are used for child find activities and to educate eligible students with disabilities.

6. Within MDE, the Office of Special Education (OSE) is responsible for the general supervision, administration, and funding of special education programs and services under the IDEA. In June 2024, OSE published a document entitled

General Supervision Accountability System that summarizes how OSE meets its general supervisory responsibilities under the IDEA, reflecting its efforts since at least 2016.  This document is available here:  https://www.michigan.gov/mde/-/media/Project/Websites/mde/specialeducation/gs/MI-OSE-SystemGenSupervision.pdf?rev=f14539d5b3f549d3ba7093850ff19e39.

7. Except for the Michigan School for the Deaf, MDE does not directly provide special education services to students with disabilities; the LEAs are responsible for providing such services directly to students.

**MDE's General Supervision**

8. OSE actively monitors the provision of special education under the IDEA using a framework that has eight components that include: (1) state performance plan and annual performance report, (2) data on results and process, (3) integrated monitoring activities, (4) policies, procedures, and effective implementation of evidence based practices, (5) professional learning and technical assistance, (6) fiscal accountability and management, (7) effective dispute resolution, and (8) improvement, correction, incentives, and sanctions.

9. One of the ways that OSE specifically monitors special education is through its Performance Reporting Unit.  This unit continuously monitors data related to special education services from the ISDs.  If the Performance Reporting Unit identified an area of concern in the data, OSE will direct the ISD to conduct monitoring of specific districts, with assistance of OSE as needed.

10. If OSE notices a pattern of specific complaints or determines there is an area of concern, MDE may use the state complaint data to inform the need for monitoring of a district or an ISD. Additionally, MDE has completed on-site monitoring in response to a series of state complaints from the same district. On site-monitoring can include technical assistance.

11. In 2021 and 2022, OSE undertook a statewide, comprehensive review of district's child find compliance. Child Find is a requirement under the IDEA to identify, locate, and evaluate children with disabilities who may be in need of special education and related services. As a result of this review, OSE issued a new policy in 2022, that included: (1) the district's responsibilities regarding Child Find, (2) activities that are needed to identify and locate children who may need services, (3) identifying triggers that should lead a district to identifying children who may need services, and (4) timelines for evaluations to comply with Child Find. A copy of the policy can be found at: https://www.michigan.gov/mde/-/media/Project/Websites/mde/specialeducation/eval-eligibility/ChildFind.pdf?rev=b0006793dfd748b09769a425b80bbc77.

12. As of 2024, as a function of its general supervision system, MDE OSE conducts monthly in-person scheduled visits with ISDs, to learn the processes ISDs use to support districts within their jurisdiction in the effective implementation of the IDEA and its regulations to ensure the provision of free appropriate education (FAPE) in the least restrictive environment (LRE). The visits include, but are not

4

limited to, an assessment of policy, review of student files, meetings with ISD staff, interviews of local school district staff, conversations with parents in the districts, and technical assistance. Once an on-site is complete, MDE issues a final report.

**MDE's Procedural Safeguards**

13. Under the IDEA, MDE must create and maintain procedures to ensure that students with disabilities and their parents have access to procedural safeguards with respect to the provision of a FAPE for students with disabilities.

14. In addition to MDE's general supervisory actions described above, MDE created and maintains the required procedures as outlined in the IDEA by supporting both a due process complaint and hearing system and a robust state complaint process.

15. MDE implements and maintains the due process requirement of the IDEA through the Administrative Code Rule 340.1724f. A due process complaint that is filed with MDE is referred to the administrative hearing system – the Michigan Office of Administrative Hearings and Rules (MOAHR), and the case is decided by an independent Administrative Law Judge (ALJ). MDE provides training to ALJs.

16. MDE's state complaint process allows anyone to file a state complaint if they believe a public agency, such as a public school district, has not followed the requirements of the IDEA.

17. MDE conducts comprehensive state complaint investigations which consist of interviews of the complainant, the child, if appropriate, the parents or

guardians of the child if they are not the complainant, and relevant school personnel.  Investigations also include a thorough review of student records, review of school policies, procedures, trainings, and on-site visits, as necessary.

18. At the conclusion of a state complaint investigation, OSE will issue a final decision stating the issues reviewed, a description of the investigatory process, including documents reviewed and individuals interviewed, findings of fact, conclusions, proposed decisions, and when applicable, proposed corrective action

19. If MDE determines an LEA has violated either a students' procedural right or substantive right to FAPE, MDE will issue a student-level Corrective Action Plan (CAP) to correct the issue for the individual student.  MDE will order a district-level CAP to correct the issue for the future provision of services to other similarly situated students in the LEA.

20. Steps in a CAP may include, but are not limited to: school or district wide policy changes in the specific area that was the root cause of the identified noncompliance, training for staff, file reviews, presentation to the board of education, assurances from the district superintendent, technical assistance to the LEA, and specific steps that must be taken to correct the noncompliance for the student, such as ordering compensatory education services or evaluations.

21. MDE uses an electronic system called Catamaran to monitor the LEA's compliance with CAPs.  The Catamaran system includes mechanisms to oversee the LEA's implementation of the CAPs, including allowing the LEA to upload updated policies and procedures, student-level data, services logs, compensatory services

logs and other information that demonstrates LEA's evidence of correction. This evidence is then reviewed by the ISD and MDE in a two-tier review process to ensure the correction was completed to MDE's expectations.

22. Once MDE verifies that the steps in the CAP are complete, only then does MDE close the complaint. If there are student-level CAPs, written notification is provided to the complainant when the student-level CAPs are completed.

23. All of the above procedural safeguards were in place in 2019 when the first of Plaintiffs' state complaints was filed.

24. In 2016 MDE voluntarily commissioned an independent evaluation on the functioning of the state's dispute resolution system. MDE hired a consulting firm that specializes in state-level dispute resolution to conduct the evaluation.

25. By 2019, MDE made several changes and improvements to the state complaint system after the commissioned consulting work was complete. System level improvements include, but are not limited to, (1) investigator training to ensure consistency in report writing and corrective action plan development, (2) modifying the scope of the investigations to include both procedural and substantive FAPE issues, (3) adding mediation options, and (4) changing who conducted the investigations, from the Intermediate School Districts (ISDs), to MDE. The ISDs now play a minor supporting role in state complaint investigations and if the state complaint is against an ISD, then the ISD is not included in the investigation.

26. In 2020, MDE re-hired the consulting firm to do a follow-up evaluation that looked at the progress being made by MDE and areas for continued

improvement. In 2020, the consulting firm found that MDE OSE continues to participate in ongoing technical assistance to support staff in maintaining internal standards and consistency and that MDE OSE made considerable gains in developing workflow models for the complaint investigation process that resulted in decisions that corrected noncompliance at the student level, addressed noncompliance at the system level for all students with disabilities, and met the general supervisory obligation of MDE. In addition, it was found that MDE OSE made significant improvements in using data from the dispute resolution system to inform monitoring priorities and drive the development of technical assistance. It was suggested that MDE provide additional support to parents, so they are clear on the understanding of their procedural protections. Overall, it was found that MDE's state complaint process improved from 2016-2020.

27. The consulting firm continues to work with MDE, meeting almost weekly, to implement the feedback from the report and to make intentional improvements to the state's dispute resolution system, including the state complaint system.

**Federal Oversight of MDE's State Complaint Process**

28. The Office of Special Education Programs (OSEP) is a division of the U.S. Department of Education's Office of Special Education and Rehabilitation Services (OSERS). OSEP's mission is to improve outcomes for students with disabilities and ensure implementation of the IDEA requirements and administration of the IDEA grant. Among many other activities that OSEP is

responsible for, OSEP monitors MDE's state complaint process and due process procedures.

29. In 2020, OSEP completed monitoring of MDE's Part B general supervision requirements, including its dispute resolution systems. MDE dispute resolution process spans Part C and Part B of the IDEA. OSEP found that, "[t]he state implements complaint procedures that address districts' failure to provide appropriate services, including reasonable guidelines for corrective actions appropriate to address the needs of the child such as compensatory education services, consistent with 34 C.F.R. § 300.151." *OSEP DMS Report* (2020).

**MDE Investigation of Kalamazoo Public Schools (KPS)**

30. As relevant to this matter, MDE noticed a pattern of state complaints filed by the same individual regarding KPS for the period of 2018-2019.

31. MDE thoroughly investigated all complaints and issued CAPs where MDE made a finding that a student had been denied FAPE or there was an issue related to Child Find.

32. Since there was a pattern of complaints that was noticed, MDE used its authority to conduct an on-site investigation in 2019. MDE is not required under the IDEA or any other law to conduct an on-site investigation when a trend is noticed with state complaints, but MDE took the initiative to do so.

33. MDE conducted staff interviews, reviewed student records and KPS's policies and procedures, and toured the program building that was the subject of the state complaints.

34. Due to this on-site investigation, in December 2019, MDE imposed significant corrective action on KPS, including a file review for every single student attending the program building utilizing a mandatory checklist that was required to be completed and provided to MDE. This process involved the review of over a hundred students' files. After the file review, KPS was required to locate documents and make complete the file of every single student. The purpose of creating a complete file that included attendance records, report cards, evaluations, and discipline records is so that KPS would have a comprehensive view of each student in one location. KPS was then directed to use the complete information to determine the need for evaluations for each student. KPS was also instructed to review and update its current policies, procedures, and practices for ensuring comprehensive records and files and using the information to inform its Child Find obligations.

35. MDE closely monitored KPS's completing of these required CAPs. In November 17, 2020, MDE confirmed that KPS had completed the required tasks under the CAPs. The district completed the required student- and district-level corrective actions and MDE determined the complaint was resolved and subsequently closed the complaint file.

36. There have been state complaints regarding KPS that resulted in MDE issuing a CAP that requires KPS to conduct an evaluation of a student to determine if they are eligible for special education services under the IDEA. If KPS completes the evaluation for the student and the student is found not eligible for services,

10

MDE cannot unilaterally direct that the student be provided with special education services despite the result of the evaluation. If MDE identifies flaws in the evaluation process, which has not occurred to date, MDE could direct the LEA to conduct the evaluation again using an appropriate process required under the law.

    I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Dated: February 6, 2025

Rebecca McIntyre