# EXHIBIT N

10/22/2021 9:43AM  FAX  517+487+0827+          DISABILITY RIGHTS MI                    ☑0002/0025

## STATE OF MICHIGAN
## MICHIGAN OFFICE OF ADMINISTRATIVE HEARINGS AND RULES

**In the matter of:**

**Donquarion Lewis,**                              **Docket No.:**

                                                   **Agency:**  **Department of Education**

**Petitioners,**

                                                   **ALJ:**

v.

**Kalamazoo Public Schools, Kalamazoo**            **COMPLAINT AND REQUEST**
**Regional Educational Service Agency,**           **FOR SPECIAL EDUCATION DUE**
**Michigan Department of Education,**              **PROCESS HEARING**
**and Michael Rice in his official capacity**
**as State Superintendent,**

·**Respondents.**

Erin H. Diaz (P80388)
Mitchell D. Sickon (P82407)
DISABILITY RIGHTS MICHIGAN (DRM)
4095 Legacy Parkway
Lansing, MI 48911-4263
(517) 487-1755
ediaz@drmich.org
msickon@drmich.org

Elizabeth K. Abdnour (P78203)
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw Street, Suite 4A-2
Lansing, MI 48915
(517) 292-0067
clizabeth@abdnour.com

Jacquelyn Babinski (P83575)
MI AECRES
(231) 794-2379
jbabinski@miaecres.org
www.miaecres.org

*Attorneys for Petitioners*

PLAINTIFFS 00004975
CONFIDENTIAL

## COMPLAINT AND REQUEST FOR

## SPECIAL EDUCATION DUE PROCESS HEARING

### I.    INTRODUCTION

1.    The Supreme Court has repeatedly recognized the importance of education and literacy, explaining, "education prepares individuals to be self-reliant and self-sufficient participants in society." *Wisconsin v Yoder*, 406 US 205, 221 (1972). "In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." *Brown v Board of Education*, 347 US 483, 493 (1954). But that is exactly what Defendants have denied Donquarion.

2.    Donquarion Lewis is a 19-year-old young man who has been eligible for special education services since 2012, but has graduated with a diploma, while still reading at the same third to fourth-grade level he had attained over four years earlier. After years of struggling in school, Kalamazoo Public Schools ("the District") found him eligible for special education, but failed to conduct comprehensive multidisciplinary evaluations in all suspected areas of eligibility and failed to determine all necessary supports and services to ensure that he would make progress in light of his circumstances. After experiencing family trauma that evinced itself in repeated behavior issues in school, the District failed to conduct evaluations or reconvene the IEP team to provide additional behavior supports. The District repeatedly waived the required triennial evaluations, and instead continued with the same supports and services that had failed Donquarion for years prior. Now, at 19, Donquarion wants to attend junior college, but is unable to even register for classes because he was never taught how to read by the District. The District failed to evaluate Donquarion and failed to appropriately instruct him. MDE and Superintendent Rice (collectively,

2

PLAINTIFFS 00004976
CONFIDENTIAL

CONFIDENTIAL

"the MDE Respondents") and KRESA investigated and failed to identify that the District was not comprehensively evaluating students.

3.       Petitioner, Donquarion Lewis, by and through his undersigned counsel, hereby submit the following Complaint and Request for a Special Education Due Process Hearing against the Kalamazoo Public Schools, Kalamazoo Regional Educational Service Agency ("KRESA"), Michigan Department of Education ("MDE"), and Superintendent Rice in his official capacity (collectively "Respondents"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 USC §§ 1400 *et seq.*; the Michigan Administrative Rules for Special Education ("MARSE"), Michigan Admin. Code R 340.1701 *et seq.*; the Michigan Special Education Act ("MSEA"), MCL 380.1701 *et seq.*; Section 504 of the United States Rehabilitation Act of 1973 ("Section 504"), 29 USC § 794; and Title II of the Americans with Disabilities Act ("Title II"), 42 USC §§ 12131 *et seq.*; and The Persons with Disabilities Civil Rights Act ("PDCRA") MCL 37.1101 *et seq.*

4.       Throughout Donquarion's educational career, the District has denied him comprehensive educational evaluations and individualized reading and social-emotional supports that were supported by peer-reviewed research, thereby failing to provide him with a FAPE as required by the IDEA and the MARSE.  Moreover, the Respondents have *failed* to provide Donquarion with an equal educational opportunity and have discriminated against him on the basis of his disability, in violation of Section 504 and Title II. MDE Respondents have also *failed* to monitor and supervise the provision of educational services and equal educational opportunity to Donquarion; to ensure compliance by the District with all relevant State and Federal laws in the provision of those educational services; to administer an effective complaint resolution process; and to provide appropriate technical assistance to the District to ensure that Donquarion is afforded

3

PLAINTIFFS 00004977
CONFIDENTIAL

a FAPE and an equal educational opportunity without discrimination.

## II.    JURISDICTION

5.    The MDE and the Michigan Office of Administrative Hearings and Rules ("MOAHR") have jurisdiction over this due process hearing request under 20 USC § 1415(b)(6) because this request concerns the legal obligations of Respondents under the IDEA regarding the identification, evaluation, educational placement, and provision of a FAPE to a student with a disability. This Tribunal has the authority to determine, based on the individual facts and circumstances of the case, whether the state educational agency ("SEA") should be a party to the hearing. Letter to Anonymous (OSEP January 2, 2017) ("[T]he hearing officer has the authority to determine, based on the individual facts of the case, whether the SEA is a proper party to the due process hearing."). *See also, RV v Rivera*, 220 F Supp 3d 588, (ED Pa 2016) (SEA found proper party to DPH when charter school dissolved, leaving SEA to provide services.); *Corey H v Bd of Ed of Chicago*, 995 F Supp 900 (ED Ill 1998) (uncontested evidence that SEA failure to take corrective action with respect to LEA's LRE rules and regulations was sufficient to establish violation of statutory requirement that it ensure compliance with LRE mandate).

6.    For Petitioners' claims under Section 504 and Title II of the ADA that seek educational relief, they shall be heard by this tribunal for purposes of administrative exhaustion. 20 USC §1415(l); *Fry v Napoleon Cmty Sch*, 137 S Ct 743 (US 2017).

7.    The District, KRESA, and MDE receive federal financial assistance within the meaning Section 504, 29 USC § 794, and are public entities as defined in by Title II of the ADA, 42 USC § 12131(1). Accordingly, they are responsible for upholding the rights of students under Section 504 and the ADA.

4

PLAINTIFFS 00004978
CONFIDENTIAL

## III.    PARTIES

### *The Student*

8.      Donquarion is a nineteen-year-old young man with a disability who resides in the District. His address is                                    Kalamazoo, MI 49009. Until June 2021, Donquarion attended Kalamazoo Central High School. Donquarion is a student with a disability, as defined by the IDEA and the MARSE under the primary category of Specific Learning Disability. *See* MARSE R 340.1713. He is also an individual with a disability within the meaning of Section 504 and the ADA, as he has been diagnosed with a severe specific reading disorder, a severe specific Mathematics disorder, ADHD combined-type, PTSD, complicated grief, major depressive disorder in remission, and panic disorder in remission, and rule-out diagnoses of Disruptive Mood Dysregulation Disorder, Mild neurocognitive/post concussive effects affecting cognitive and fine motor functioning, and Central Auditory Processing Disorder, which substantially limit one or more major life activities, including reading, learning, communicating, and interacting with others. 28 CFR § 35.108.

### *The Respondents*

9.      Kalamazoo Public Schools ("KPS" or "the District") is Donquarion's home district and as such, is the local education agency ("LEA") responsible for providing him with a FAPE and the procedural protections required under the IDEA. 20 USC § 1413. KPS is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 CFR § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 USC §§ 12132, 12131(1)(A), (B) and the Persons with Disabilities Civil Rights Act ("PDCRA") MCL 37.1101 *et seq*.

10.     Kalamazoo Regional Educational Service Agency ("KRESA") is the regional educational service agency, also known as an intermediate school district as defined in MCL

5

PAGE 6/25 * RCVD AT 10/22/2021 9:39:23 AM [Eastern Daylight Time] * SVR:HCV084RFAXPAA01/27 * DNIS:7630193 * CSID:517+487+0827+ * ANI:5173350002 * DURATION (mm-ss):09-12
PLAINTIFFS 00004979
CONFIDENTIAL

380.4(3), of which KPS is a constituent school district. KRESA must submit a plan for special education, which sets forth the special education programs and related services to be delivered. MARSE R 340.1832. Additionally, KRESA receives federal funding to provide special education services. MARSE R 340.1801. Under MARSE, KRESA is involved in both investigating LEA noncompliance and assisting the MDE in monitoring the LEA's compliance with SEA-issued corrective action. MARSE R 1853-54. KRESA is an educational institution, subject to the Persons with Disabilities Civil Rights Act ("PDCRA") MCL 37.1101 *et seq*. KRESA is also a "program or activity" covered by Section 504, 20 USC §794(b), and a "public entity" under Title II of the ADA, 42 USC §12131(1)(A).

11.     The MDE Respondents—MDE and Superintendent Rice—collectively and individually qualify as a State Educational Agency ("SEA") under 20 USC § 1401(32) ("The term [SEA] means the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools . . . .").

12.     The MDE Respondents have consistently received IDEA funding by submitting plans to the Secretary of the U.S. Department of Education that "provide[] assurances . . . that the State has in effect policies and procedures to ensure that . . . [a] free appropriate public education is available to all children with disabilities residing in the State." 20 USC § 1412.

13.     As SEA, MDE Respondents have general supervisory responsibility for implementing the IDEA's requirements.  MDE Respondents are specifically "responsible for ensuring" that IDEA's regulations are carried out and for its general supervision over each educational program for children with disabilities to ensure the programs meet MDE's educational standards, which include IDEA's regulatory requirements. 34 CFR § 300.149(a).

14.     Under the IDEA, MDE Respondents, as SEA, have additional responsibilities when

6

PLAINTIFFS 00004980
CONFIDENTIAL

it comes to resolving administrative complaints. The IDEA provides that in resolving an administrative complaint:

> in which the SEA has found a failure to provide appropriate services, an SEA, pursuant to its general supervisory authority under Part B of the [IDEA], must address—1. The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and 2. Appropriate future provision of services for all children with disabilities.

34 CFR § 300.151(b).

15.     MDE is the department of the State of Michigan that is responsible for administering and enforcing laws related to public education. MCL § 16.400-16.402. As Michigan's state educational agency, MDE bears the ultimate responsibility for ensuring that all public schools in Michigan comply with the IDEA. MDE is also a "program or activity" covered by Section 504, 20 USC § 794(b), and a "public entity" under Title II of the ADA, 42 USC § 12131(1)(A).

## IV.    STATEMENT OF FACTS

16.     Donquarion is a young man who helps care for his siblings and loves to play football. He dreamed of playing football in college, but was unable to meet the academic criteria.

17.     Donquarion initially received services for a speech delay through Early On. In 2007, the District created an IEP for Donquarion to continue with special education services for speech.

18.     In 2012, the District held an *initial* IEP meeting, finding Donquarion eligible under Specific Learning Disability. However, the District failed to conduct comprehensive educational evaluations at that time.

19.     Donquarion timely filed this due process complaint within two years of his

7

PLAINTIFFS 00004981
CONFIDENTIAL

knowledge of the District's, KRESA's, and MDE Respondents' violations.[1] Upon an evaluation in August 2021, Donquarion became aware that he had multiple other areas of need, while simultaneously having average to above average nonverbal intellectual functioning that the District would have identified had they conducted comprehensive evaluations as required under state and federal law.

20.    During his time at the District, Donquarion has participated in reading interventions, including System 44 and Read 180. The District's own documentation shows he failed to make progress under System 44. According to What Works Clearinghouse,[2] as of July 2010, there were no studies on Read 180 that met WWC's criteria for students with disabilities,

---

[1] The statute of limitations added to IDEA, goes to filing, not to limiting of the remedy as explained by the legislative history of the statute.

> In this reauthorization, we also include a 2–year statute of limitations on claims. However, it should be noted that this limitation is not designed to have any impact on the ability of a child to receive compensatory damages for the entire period in which he or she has been deprived of services. The statute of limitations goes only to the filing of the complaint, not the crafting of remedy. This is important because it is only fair that if a school district repeatedly failed to provide services to a child, they should be required to provide compensatory services to rectify this problem and help the child achieve despite the school's failings.

> Therefore, compensatory education must cover the entire period and must belatedly provide all education and related services previously denied and needed to make the child whole.

*GL v Ligonier Valley Sch Dist Auth.*, 802 F 3d 601, 624 (3d Cir 2015) (quoting 50 Cong Rec S11851 (daily ed Nov. 24, 2004) (statement of Sen. Tom Harkin)).

[2] What Works Clearinghouse (WWC) is the database created by the U.S. Department of Education's Institute of Education Sciences, which "reviews the existing research on different programs, products, practices, and policies in education. . . . to provide educators with the information they need to make evidence-based decisions." https://ies.ed.gov/ncee/wwc/.

PAGE 9/25 ^ RCVD AT 10/22/2021 9:39:23 AM [Eastern Daylight Time] ^ SVR:HCV084RFAXPAA01/27 ^ DNIS:7630193 ^ CSID:517+487+0827+ ^ ANI:5173350002 ^ DURATION (mm-ss):09-12
PLAINTIFFS 00004982
CONFIDENTIAL

meaning WWC could not determine the effectiveness of the intervention for students with disabilities.

21.    The most recent standardized test data the District documented for Donquarion placed him at 3rd grade proficiency in reading. That was in the fall of 2017. From fall 2013 through Fall 2017, Donquarion's NWEA Reading scores ranged from grade equivalencies of 2.0 to 4.0 and back to 3.0. No reading data or standardized test scores were recorded on IEPs or supporting documents for after fall 2017.

22.    Though Donquarion did not make sufficient progress in Reading, the District continued to use a reading intervention program that was not shown to be effective by WWC. Nor did the District amend Donquarion's IEP to provide for more supports.

23.    In 2017, Donquarion's cousin died. This event had a significant impact on Donquarion emotionally.

24.    Despite Donquarion's lack of progress, the District declined to conduct comprehensive evaluations in 2018 to determine the cause of the lack of progress. The District instead relied on 2015's incomplete evaluation data, finding that Donquarion continued to be eligible for special education services. This offered no insight into Donquarion's lack of progress.

25.    Donquarion suffered multiple head injuries while participating in football through the District and recreational leagues.

26.    The District held IEP meetings on April 16, 2019, October 16, 2019, October 12, 2020, and June 9, 2021. In each IEP, the District repeated the identical reading goal, Donquarion "will progress from reading a grade appropriate text and providing a summary that includes 2 details to reading various genres of classic, contemporary narrative, and informational texts at grade level and use comprehension strategies to identify 4-6 important key details, make

9

PLAINTIFFS 00004983
CONFIDENTIAL

connections, and inferences with 85% accuracy as measured by grade level assessments and student work samples" only changing the accuracy from 85% to 80% from October 2019 to October 2020. Though Donquarion made only limited progress, the District did not add any other supplementary aids or services or increase Donquarion's resource room time from 50 minutes per week.

27.     In 2020, Donquarion's uncle, who was his father-figure, was fatally shot. This was a traumatic event for Donquarion, and his behaviors in school started to escalate. However, the District failed to convene and IEP meeting or provide social work supports to assist him.

28.     Though Donquarion had significant behavior incidents documented, increasing in number in 2018 and continuing through Winter 2020, the District did not provide social work services or behavior-related goals in Donquarion's IEPs.

29.     In April 2019 and October 2019, the District wrote identical math and transition goals for Donquarion. Alarmingly, the transition goal is that Donquarion will have to "ask[] his teachers to ensure he is receiving those accommodations when needed 85% of the time as measured by teacher documentation and informal teacher observation."

30.     In 2020, the District held a REED meeting, and it again declined to conduct comprehensive evaluations, again relying on incomplete and now five-year-old data.

31.     In January 2021, George White, an educational advocate, filed an MDE state complaint on Donquarion's behalf. The final decision that MDE-OSE issued, cited approvingly to the 2020 and 2018 REEDs, which relied on 2015 data. Though progress reports showed that Donquarion was making only limited progress toward his Reading goal, and failing English, MDE determined that the District was providing Donquarion a free appropriate public education.

32.     June 9, 2021, the District held an IEP meeting, claiming that Donquarion attended.

10

CONFIDENTIAL

Donquarion graduated from high school on June 4, 2021, and has not been in contact with the District since then.

33.     From fall 2017 through early spring 2020, when the District was providing in-person classes, the District documented 32 behavior incidents. Beginning March 28, 2019, the District "excluded" Donquarion for the rest of the 2019 school year, 51 days, without convening a manifestation determination review. The District issued him five suspensions before ever creating a behavior intervention plan. That behavior intervention plan didn't determine a root-cause for the target behaviors or result in an IEP goal toward learning appropriate behaviors. When the District finally held an MDR on October 16, 2019, the District noted that Donquarion was "struggling to make any progress toward his academic goals and objectives" and further "can struggle with other adult interactions, which can lead to altercations." Inexplicably, the District failed to find the behavior a manifestation of Donquarion's disability or initiate further evaluations to determine the cause of the behavior.

34.     Donquarion struggled with reading his entire academic career. Though his reading challenges were well-documented, the District discriminated against him for his disability. For example, if teachers noticed him not engaged in class, they would call him out to read in front of the class. This embarrassment would prompt Donquarion to escape to the hall in tears. One teacher ran over his foot with a cart, and on other occasions, stood in the doorway not allowing Donquarion to leave and take a break when he was getting upset. Additionally, students would tease Donquarion for his reading struggles.

35.     Donquarion planned to play football in college and was approached by a coach of a junior college team in Arizona. However, due to Donquarion's inability to keep his G.P.A. above a 2.0, he feared he wouldn't be able to maintain the team's G.P.A. requirement. When it came time

11

to enroll in the college program, due to Donquarion's low reading level, he was unable to understand the class options offered and was unable to register for classes.

36.    The District failed to invite any responsible agencies such as Michigan Rehabilitation Services (MRS) to assist Donquarion in preparing an effective transition plan for life after high school.

37.    MDE has previously found the District out of compliance for its failure to conduct compliant Child Find activities in 2017, 2018, 2019, and 2020 under MDE complaints 17-0159, 18-0085, 19-0088, 19-0188, 19-0189, 19-0213, and 19-0220.

38.    KRESA plays a role in the State's scheme of general supervision, ensuring that local districts comply with Part B of the Act.

39.    At all days subsequent to August 29, 2017, the final decision date for complaint 17-0159, MDE Respondents and KRESA have been fully aware that the District was failing to conduct comprehensive educational evaluations in violation of IDEA, MARSE, and Section 504.

40.    Respondents' acts have deprived Donquarion of a FAPE he is entitled to by law.

41.    Respondents' acts have deprived Donquarion of his equal opportunity to receive the benefits that other participants in Respondents' programs and services enjoy.

42.    Respondents' acts were knowing and intentional.

43.    Respondents acted in bad faith and/or exercised gross misjudgment by failing to ensure that both initial evaluations and re-evaluations were comprehensive and that the test results accurately reflected Donquarion's cognitive functioning or achievement level to ensure that he had necessary services and supports, so he could make progress appropriate in light of his circumstances.

44.    As a result of Respondents' conduct, Donquarion has experienced severe emotional

12

PLAINTIFFS 00004986
CONFIDENTIAL

distress, such as humiliation, frustration, anxiety, sadness, hopelessness, and other forms of mental and emotional anguish. This complaint is filed to obtain compensatory education and related services, training for the District and KRESA, changes in MDE's processes, and, when appropriate, the appropriate damages owing for the District's, KRESA's and MDE Respondents' harm. [3]

## V.     ALLEGATIONS

### A.     RESPONDENTS VIOLATED THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT, 20 USC §§ 1400 et seq.

45.     Petitioners incorporate by reference all previous paragraphs of the Complaint herein.

#### i.     Respondents Failed to Conduct Comprehensive Educational Evaluations for and Failed to Provide a FAPE to Donquarion.

46.     Congress passed the Individuals with Disabilities Education Act ("IDEA") to ensure "that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 USC § 1400(1)(A), (B).

47.     Under the IDEA, each state must "ensure" that it provides "special education" and "related services" to all children with disabilities aged 3 to 21 residing in the state. 20 USC §§ 1401(9), 1412(a)(1). Special education means specially designed instruction that meets the unique

---

[3] Damages for emotional distress and humiliation are not available at due process, but Petitioner gives notice for purposes of exhaustion under the ADA and Section 504.

13

CONFIDENTIAL

needs of a child with a disability. See 20 USC § 1401(29). Related services means the supportive services "required to assist a child with a disability to benefit from special education." 20 USC § 1401(26). The State directs local school districts to provide special education and related services to each eligible student with a disability by implementing an "individualized education program" ("IEP"), an individually tailored statement that is developed, reviewed, and revised by an "IEP team." See 20 USC § 1414(d).

48.     The IDEA further requires through the least restrictive environment (LRE) requirement that states "ensure" that:

> [t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes . . . cannot be achieved satisfactorily. 20 U.S.C. § 1412(a)(5).

49.     As the state educational agency for Michigan, MDE is specifically "responsible for ensuring that" all eligible Michigan children with disabilities receive a free appropriate public education in the least restrictive environment. 20 USC §§ 1412(a)(11)(A), (a)(1), (a)(5). The MDE must coordinate with other public agencies as needed to ensure that children with disabilities receive the education to which they are entitled under the IDEA. See 20 USC § 1412(12).

50.     To fulfill these responsibilities, the MDE Respondents, among other things, must engage in "effective monitoring" to ensure that local school districts provide a free appropriate public education in the least restrictive environment to all eligible children. See 20 USC §§ 1416(a)(1)(C), (a)(3)(A), (a)(3)(B). While the State must use data to measure school districts' performance, maintain an administrative complaint process, and take corrective action upon finding any violations of the Act. See 20 USC §§ 1411(e)(2)(B)(i), 1415, 1416(a)(3), its duty requires far more.

14

PLAINTIFFS 00004988
CONFIDENTIAL

51.    Rather than focusing on technical compliance, the State's "primary focus" must be on "improving educational results and functional outcomes for all children with disabilities." 20 USC § 1416(a)(2)(A).8 The State must ensure that students actually receive a free appropriate public education in the least restrictive environment. See 20 USC §§ 1412(a)(1), (a)(5); 1416(a)(1)(C), (a)(3)(A). Accordingly, the State must now guarantee that districts meet the "markedly more demanding" standard for a free appropriate public education as clarified by the Supreme Court in *Endrew F*, which explicitly demands that every child with a disability receive an "ambitious" education, with the chance to meet "challenging objectives," and anticipates that most children can do so in the general education classroom. 137 S Ct at 1000.

52.    To this end, the IDEA requires states receiving IDEA funds to have "in effect policies and procedures to ensure that the State meets each of the following conditions": (1) "A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, . . ." ; (2) "An individualized education program, or an individualized family service plan that meets the requirements of section 1436(d) of this title, is developed, reviewed, and revised for each child with a disability in accordance with section 1414(d) of this title"; and (3) "Children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title," among others. 20 USC § 1412.

53.    The IDEA requires local education agencies receiving IDEA funding to "submit[] a plan that provides assurances to the State educational agency that . . . . [t]he local educational agency, in providing for the education of children with disabilities within its jurisdiction, has in effect policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title." 20 USC § 1413(a).

54.    As the Supreme Court has held, "[t]o meet its substantive obligation under IDEA,

15

PLAINTIFFS 00004989
CONFIDENTIAL

a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F* at 999 (2017).

55.     At all times relevant to this complaint, Donquarion has been a student with a disability under 20 USC § 1401(3).

56.     Respondents violated Donquarion's rights under the IDEA by knowingly failing to provide comprehensive initial evaluations and failing to utilize a variety of assessments in violation of 20 USC § 1414(a)(1)(A), § 1414(b); 34 CFR § 300.301, 304, 306.

57.     Respondents knowingly failed to reevaluate Donquarion when his educational or related service needs, including the need for emotional and behavioral supports, warranted a reevaluation in violation of 20 USC 1414(a)(2) and 34 CFR 300.303.

58.     The District failed to ensure that Donquarion's assessments were "administered by trained and knowledgeable personnel" in violation of 20 USC § 1414(b)(3)(A)(iv); 34 CFR § 300.304(c)(1)(iv).

59.     In their repeated failure to effectively correct the noncompliance of the District in the administrative complaint process, the MDE Respondents failed in their responsibilities under Federal law to "address" the District's "failure to provide appropriate services" concerning and failed to "address" the "[a]ppropriate future provision of services for all children with disabilities," which would have included Donquarion. 34 CFR § 300.151(b).

60.     MDE Respondents have failed to address the appropriate future provision of services in attempting to resolve state complaints, resulting in the continued denial of FAPE to students in violation 34 CFR 300.151.

61.     The KRESA failed in its responsibilities under Federal law to ensure a FAPE to Donquarion and is thus a proper party to this administrative proceeding per 20 USC § 1415(b); 34

16

PLAINTIFFS 00004990
CONFIDENTIAL

CFR § 300.2.

62. MDE Respondents failed in their responsibilities under State and Federal law to ensure FAPE to Donquarion and is thus a proper party to this administrative hearing per 20 USC § 1415(b); MARSE R 340.1701, 1852-55.

63. Respondents otherwise violated Donquarion's right to receive a FAPE.

## B. RESPONDENTS VIOLATED THE MICHIGAN ADMINISTRATIVE RULES FOR SPECIAL EDUCATION.

64. Petitioners incorporate by reference all previous paragraphs of the Complaint herein.

65. The Michigan Administrative Rules for Special Education ("MARSE"), R 340.1700 *et seq.* set the administrative rules for special education and related services in the state of Michigan.

66. MARSE defines special education as "specially designed instruction, at no cost to the parents, to meet the unique educational needs of the student with a disability and to develop the student's maximum potential. Special education includes instructional services defined in R 340.1701b(a) and related services." R 340.1701c(c).

67. MARSE requires the district to "[c]omplete a *full* and individual evaluation." R 340.1721a (emphasis added).

68. Pursuant to MARSE, "[t]he individualized education program team shall determine the programs and services for a student with a disability in accordance with 34 CFR part 300. The individualized education program shall not be restricted to the programs and services available." R 340.1721e(4).

69. Respondents are covered entities subject to MARSE.

70. The District failed to conduct a "full and individual evaluation" in violation of

17

PLAINTIFFS 00004991
CONFIDENTIAL

MARSE R 340.1713.

71.     The District and KRESA failed to ensure a FAPE in violation of MARSE R 340.1701.

72.     MDE Respondents failed to maintain an effective complaint resolution process, resulting in the continued denial of FAPE in violation of MARSE R 340.1851 et seq.

**C.     RESPONDENTS     VIOLATED     SECTION     504     OF     THE REHABILITATION ACT, 29 USC § 794.**

73.     Petitioners incorporate by reference all previous paragraphs of the Complaint herein.

74.     Pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its regulations, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 USC § 794.

75.     The regulations regarding Preschool, Elementary, and Secondary Education apply to "preschool, elementary, secondary, and adult education programs or activities that receive Federal financial assistance and to recipients that operate, or that receive Federal financial assistance for the operation of, such programs or activities." 34 CFR § 104.31.

76.     In general, "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 CFR § 104.33(a).

77.     The District is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under

18

PLAINTIFFS 00004992
CONFIDENTIAL

Section 504. 29 USC § 794.

78.    KRESA is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under Section 504. 29 USC § 794.

79.    MDE is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under Section 504. 29 USC § 794.

80.    Donquarion is a person with a disability within the meaning of Section 504. 29 USC § 794.

81.    The District failed to engage in evaluations and reevaluations as specified and required, thus violating Section 504. 34 CFR § 104.35.

82.    Respondents have intentionally discriminated against Donquarion in violation of Section 504 by failing to provide or ensure the provision of comprehensive educational evaluations resulting in a denial of a FAPE to Donquarion.

83.    Respondents have otherwise intentionally discriminated against Donquarion in violation of Section 504. As a direct and proximate cause of Respondents' violation of Section 504, Donquarion has suffered and continues to suffer severe and grievous mental and emotional suffering, humiliation, stigma, and other injuries they will continue to suffer.

### D.    RESPONDENTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 USC §§ 12131 et seq.

84.    Petitioners incorporate by reference all previous paragraphs of the Complaint herein.

85.    Title II of the ADA and its regulations ("ADA") provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or

19

PLAINTIFFS 00004993
CONFIDENTIAL

10/22/2021 9:50AM FAX 517+487+0827+          DISABILITY RIGHTS MI                    ☑0021/0025

be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC § 12132; *see also* 28 CFR § 35.

86.      Respondents are each a public entity subject to Title II of the ADA, 42 USC § 12131.

87.      Donquarion is a person with a disability within the meaning of the ADA. 42 USC § 12102.

88.      Respondents intentionally violated Donquarion's rights under the ADA and the regulations promulgated hereunder by excluding him from participation in and denying him the benefits of Respondents' services, programs, and activities, and by subjecting him to discrimination in violation of 42 USC § 12132.

89.      Respondents otherwise intentionally discriminated against Donquarion, in violation of 42 USC § 12132.

90.      As a direct and proximate cause of Respondents' violation of the ADA, Donquarion has suffered and continues to suffer severe and grievous mental and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

### E.      RESPONDENTS VIOLATED THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 et seq.

91.      Petitioners incorporate by reference all previous paragraphs of the Complaint herein.

92.      The Persons with Disabilities Civil Rights Act ("PDCRA") guarantees, as a civil right, the full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability. MCL 37.1102.

93.      The PDCRA further prohibits educational institutions from "[d]iscriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and

20

PLAINTIFFS 00004994

CONFIDENTIAL

rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids." MCL 37.1402.

94.    Respondents are each an educational facility within the meaning of MCL 37.1102 and an educational institution within the meaning of MCL 37.1401.

95.    Donquarion has a disability as defined in MCL 37.1103.

96.    Donquarion's disability is unrelated to his ability to utilize and benefit from Respondents' services.

97.    Respondents discriminated against Donquarion in the full utilization of or benefit from the services provided and rendered by Respondents due to Donquarion's disability.

98.    Respondents otherwise violated Donquarion's rights under the PDCRA.

## VI.    PRAYER FOR RELIEF

WHEREFORE, as a "proposed resolution of the problem" under 20 USC § 1415(b)(7)(A)(ii)(IV) and 34 CFR § 300.508(b)(6), Petitioners request the following relief:

A.    Find that Respondents violated state and federal law;

B.    Order compensatory education for Petitioner;

C.    Order compensatory related services, such as social work services, for Petitioner;

D.    Order the District to ensure that comprehensive educational evaluations are conducted for students in all suspected areas of eligibility and that information is obtained to allow the IEP team to determine all special education services and supports necessary for the student to make progress in light of her or his circumstances;

E.    Order training for District and KRESA staff regarding comprehensive educational

21

PLAINTIFFS 00004995
CONFIDENTIAL

evaluations;

F.    Order KRESA to ensure that its constituent districts engage in comprehensive educational evaluations and provide eligible students with a FAPE;

G.    Enjoin the Respondents from implementing all policies and practices that violate or have the effect of violating Petitioner's federal protected rights;

H.    Order MDE to implement a state-wide, pro-active enforcement protocol for ensuring compliance with MDE-OSE corrective action plans that includes, but is not limited to, a determination of whether the corrective action plan has resulted in providing the student with an educational program "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," *Endrew F*, 137 S Ct 988, 999 (2017);

I.    Order MDE to hire and/or reallocate the appropriate number of staff to ensure that corrective action plans are enforced and result in the changes prescribed;

J.    Order MDE to engage in pro-active monitoring, including substantive review of the facts and follow-up with parents to review the child's current circumstances, to ensure compliance with federal and state law;

K.    Order MDE to exercise its authority under MARSE R 340.1855;

L.    Find that Petitioner is the prevailing party;

M.    Award Petitioner damages;

N.    Award Petitioner reasonable attorneys' fees and costs under 42 USC § 1988 and/or other applicable statues; and

O.    Any other relief deemed necessary.

22

PLAINTIFFS 00004996

CONFIDENTIAL

Respectfully submitted,

Dated: 10/21/21                    By: Donquarion Lewis
                                       Donquarion Lewis
                                       Petitioner

Dated: 10/21/21                    By: _____
                                       Erin H. Diaz (P80388)
                                       Mitchell D. Sickon (P82407)
                                       Disability Rights Michigan (DRM)
                                       4095 Legacy Parkway
                                       Lansing, MI 48911-4263
                                       (517) 487-1755
                                       ediaz@drmich.org
                                       msickon@drmich.org

                                       Elizabeth K. Abdnour (P78203)
                                       ELIZABETH ABDNOUR LAW, PLLC
                                       1100 W. Saginaw St., Ste. 4A-2
                                       Lansing, MI 48915
                                       (517) 292-0067 phone
                                       (517) 709-7700 fax
                                       elizabeth@abdnour.com

                                       Jacquelyn Babinski (P83575)
                                       MI AECRES
                                       (231) 794-2379
                                       jbabinski@miaecres.org
                                       www.miaecres.org

                                       *Attorneys for Petitioners*

23

PLAINTIFFS 00004997
CONFIDENTIAL

## STATEMENT OF DELIVERY

A copy of this Due Process Complaint was sent to the following individuals by Fax and U.S.
First Class Mail:

Addressed To:

Kalamazoo Public Schools
Dr. Rita Raichoudhuri, Superintendent
1220 Howard Street
Kalamazoo, MI 49008
Fax: 269-337-0149

Kalamazoo RESA
Dave Campbell, Superintendent
1819 East Milham Avenue
Portage, MI 49002
Fax: 269-250-9205

MDE and Superintendent Michael Rice
608 W. Allegan Street
P.O. Box 30008
Lansing, MI 48909
Fax: 517-355-4565

Michigan Department of Education
Office of Special Education
608 West Allegan Street
Lansing, Michigan 48909
Fax: 517-241-7141

Date Faxed and Mailed: October 22, 2021

Mailed by:

Susan E. Pitts
Printed Name

Susan E. Pitts
Signature

24

PAGE 25/25 ^ RCVD AT 10/22/2021 9:39:23 AM [Eastern Daylight Time] ^ SVR:HCV084RFAXPAA01/27 ^ DNIS:7630193 ^ CSID:517+487+0827+ ^ ANI:5173350002 ^ DURATION (mm-ss):09-1:
PLAINTIFFS 00004998

CONFIDENTIAL