# EXHIBIT R



OFFICE OF SPECIAL EDUCATION
SPECIAL EDUCATION COMPLAINT INVESTIGATION REPORT

**Complainant:**
George White
4022 Rockwood Drive
Kalamazoo, MI 49004

**Case Number:** 19-0213

**Public Agency:**
Michigan Department of Education
Office of Special Education
Rebecca McIntyre, Supervisor
Program Accountability
608 West Allegan
PO Box 30008
Lansing, MI 48909

**COMPLAINT DECISION
AND
PLAN FOR
CORRECTIVE ACTION**

**District:**
Gary Start, District Superintendent
Kalamazoo Public Schools
1220 Howard St
Kalamazoo, MI 49008-1882

**Case Manager:**
Gina Alexander

**Date of Decision:**
April 18, 2020

On October 4, 2019, the Michigan Department of Education, Office of Special Education (OSE) received a special education complaint filed by George White (Complainant) on behalf of Keaujanaa Shepherd-Friday. The complaint alleged that the Kalamazoo Public Schools (District), which is under the jurisdiction of the Michigan Department of Education (MDE), violated the Individuals with Disabilities Education Act (IDEA) and the Michigan Administrative Rules for Special Education (MARSE). Complaints may be filed by any individual or organization, in accordance with 34 CFR § 300.153. The Complainant in this matter is a third party. A release of information from the Student's parent was submitted; therefore, the OSE was able to communicate directly with the third party during the investigation of this complaint. Pursuant to the Code of Federal Regulations 34 CFR §§ 300.151 through 300.153 implementing the IDEA, the OSE conducted an investigation into the allegations in this complaint. Consistent with the IDEA and Federal Regulations, and the MARSE, the MDE issues the following Findings of Fact, Conclusions and Decision.

**Complaint Issues:**

1. Whether the District provided the Student a free appropriate public education (FAPE) pursuant to 34 CFR §§ 300.17 and 300.101. Specifically:

    i. Whether the District enacted its Child Find obligations pursuant to 34 CFR § 300.111 and R 340.1702.

    ii. Whether the District implemented the discipline protections, under 34 CFR §§ 300.530, 300.532 and 300.536, for a student not yet eligible, consistent with 34 CFR § 300.534.

**Investigatory Process:**

Documents reviewed include:
    The original complaint;
    Documents submitted by the Complainant; and
    Documents submitted by the District.

Interviews were conducted with the following:
    The Complainant;
    The Parent;
    The principal of the high school;
    The school counselor; and
    A general education teacher.

The OSE provided the District and Complainant the opportunity to submit additional information for consideration during the investigation of this complaint.

**Applicable Federal Regulations or State Rules:**

| | |
|---|---|
| 34 CFR § 300.17 | Free appropriate public education |
| 34 CFR § 300.101 | Free appropriate public education (FAPE) |
| 34 CFR § 300.111 | Child find |
| 34 CFR § 300.534 | Protections for children not determined eligible for special education and related services |
| R 340.1702 | Student with a disability definition |

**Relevant Time Period:**

Pursuant to 34 CFR § 300.153(c), the OSE has the authority to investigate allegations of violations that occurred not more than one year from the date the complaint was received. In light of this limitation, the investigation will be limited to the period of time from October 5, 2018 to October 4, 2019 for the purpose of determining if a violation of the IDEA or the MARSE occurred. However, records beyond this timeframe may be reviewed for the purpose of developing a complete record for the student.

**Findings of Fact:**

1. The Student was sixteen years old and enrolled in one of the District's high schools for the 2018–19 school year as a ninth-grade general education student. On September 3, 2019, the Student exited the District and was enrolled in another district on September 18, 2019.
2. Enrollment and grade information regarding the Student was obtained on the Michigan Student Data System. The Student had been in the District since December of 2011 and was reported to be a ninth-grade student for the 2016–2017, 2017–2018, and 2018–2019 school years.
3. According to the 2018–2019 attendance report, provided by the District, the Student was in the tenth grade.
4. At the conclusion of the Student's three years in the District's high schools, the Student

<ol start="5">
<li>had earned 7.5 credits out of a possible 21 credits and had an overall grade point average of 0.8.</li>
<li>The Student was provided a Section 504 plan for all three years of high school attendance. Documentation indicated periodic reviews of the Student's plan, relevant to the 2018–2019 school year, were conducted June 6, 2018 and March 15, 2019.</li>
<li>The March 2019 Section 504 Plan included the following, in relevant part:
<ol type="i">
<li>Meeting participants included the Section 504 counselor, a resource program teacher, and the Parent.</li>
<li>The Student had a physical impairment: "Student had a diagnosis of Sickle Cell Disease" which substantially limited one or more major life activities, specifically learning as explained in the document:
<ol type="a">
<li>The symptoms associated with Sickle Cell Anemia would require ongoing medial monitoring/treatment which could result in missed time attending school, and therefore missed instruction in the classroom; some situations may require the Student to leave the classroom. In the event of a more critical issue (e.g., stroke), Student academic performance could be impacted/impaired (e.g., decline in achievement, inability to maintain attention, difficulty with organization, and mild delays in vocabulary development).</li>
</ol>
</li>
<li>The box was checked "yes" to the question, does the Student need accommodations, modifications, and/or interventions. The explanation in this section provided a description of Sickle Cell Disease.</li>
<li>Accommodation plan:
<ol type="a">
<li>Academic:
<ol>
<li>Extended time to complete assignments without penalty;</li>
<li>Excused medical absences;</li>
<li>Student was exempt from physical education - as per doctor documentation;</li>
<li>Provide Student early passing time to allow access to the school locker;</li>
<li>Since the Student becomes easily fatigued - carry the Student's backpack;</li>
<li>Provide copy of textbooks to keep at home;</li>
<li>Allow adequate access to water, including in class, to prevent dehydration;</li>
<li>Allow frequent bathroom breaks;</li>
<li>Upon Student request, allow to report to counseling office to find a location to rest;</li>
<li>The Student became easily fatigued, so allow use of the school elevator;</li>
<li>Breaks during testing, as needed, to manage medical needs; and</li>
<li>Extended time for tests, quizzes, and other assignments.</li>
</ol>
</li>
<li>Medical:
<ol>
<li>School locker assigned close to the majority of Student's classes;</li>
<li>Some of the pain experienced in school may be managed by prescribed pain medication; allow Student to leave class (upon request) to take medication, which would be stored in the office and to call to notify Parent; and</li>
<li>Be alert for signs of pain, fever, pain in chest area/ribs, coughing, and/or difficulty breathing, severe headache, paleness, sudden dizziness, blurred vision, inability to speak, and/or weakness on either</li>
</ol>
</li>
</ol>
</li>
</ol>
</li>
</ol>

                side of the Student's body - these are signs of a medical emergency requiring a 911 call. Do not leave Student unattended until EMS arrive.
        c. Communication: In case of emergency, following 911 call, contact Parent (phone number was included).
        d. State Assessments and accommodations:
            1. Extended time
            2. Small group setting
            3. Frequent breaks
    v. Person responsible for implementation/review: The Section 504 counselor.
    vi. Section 504 procedural safeguards.

7. District staff reported, the Parent did a nice job communicating absences due to health reasons and the Student was transparent when not feeling well. The Student did finish the school year, but the Parent called to inform the high school the Student was hospitalized. The principal checked on the Student and told the Student the school would not give failing grades. The transcript was unclear as to which grades were connected with which trimester. During the 2018–2019 school year, the Student earned passing grades (C, C+, D+, D, D, D-, CR) in seven of the fourteen courses.

8. The Parent reported making a verbal request to the Section 504 counselor in September 2018 to which the Parent reported the counselor responded a follow up would be forthcoming. The Parent indicated talking with the counselor one to two times per week.

9. The Section 504 counselor was interviewed and provided information about the school's Section 504 supports and the Student, as follows:
    i. Tutoring was available Tuesdays, Thursdays, and Saturdays, if needed.
    ii. When there are attendance issues the following may occur:
        a. Call home to see what the school can do to get the Student to school more frequently. Sometimes families are non-responsive.
        b. If a student misses ten days in a row, they may be dropped.
        c. To the counselor's knowledge, the absences for this Student were not associated with the medical condition.
            1. The counselor indicated being new to the high school and did not know about behavioral supports.
            2. The Student had several areas of need, mainly academic. The teacher and the Student are responsible. Staff never thought the Student needed more supports. There were no evaluation requests.
            3. The Parent did express concerns about grades and the Section 504 Plan via phone calls or face to face interviews. The counselor indicated no requests for an evaluation were made verbally or in writing.
    iii. The resource program teacher, listed on the Section 504 Plan, was interviewed. This teacher reported helping the counselor with the 504 process and the system in PowerSchool, but did not work with the Student.

10. In an interview with the principal of the school the Student attended, the high school was described as follows:
    i. Although the high school is indicated as an alternative high school in the Michigan Student Data System, the pacing guide is the same as the other high schools in the District. Instruction is differentiated.
    ii. Students come to high school via recommendation of parents, counselors or word of mouth, but there is an application. Applications are accepted throughout the year; however, students enter the program at the beginning of each trimester.
    iii. Students attend four class periods per day with the option of a fifth class if they

      want to do an online course.
11. The District website describes the high school as:
    i. The high school is designed for students who would find success in a smaller, more personal, school setting. A smaller learning environment that is centered on students' interests and passions, along with a strong academic curriculum in core subject areas help students engage themselves in the learning and college readiness process.
    ii. Vision: Students will become responsible members of the community with satisfying and productive futures. Students will reach their highest level of academic achievement while exploring individual curiosities, interests, and passions through personalized instruction, relevant curriculum, and ancillary services by a flexible and qualified staff.
    iii. Mission: An individualized program for District students, to ensure that all students with a desire to graduate are given that opportunity in a smaller, student-centered environment.
    iv. Beliefs: We believe that a collaborative partnership between the school, community, and family serves to enhance a foundation of respect, responsibility, and high academic achievement.
12. For this Student, the application was submitted prior to the beginning of the 2018–2019 school year and orientation was August 20, 2018.
    i. The District provided the registration form, filled out by the Parent. The section which asked if the student had ever received a Section 504 Plan or special education was left blank.
    ii. The Student application indicated the reason for leaving the previous high school as attendance/medical condition and the reason for making the application was to make up credits. The section which asked "what types of support do you need to be successful" was left blank. The goal was to graduate, pass all classes, and be a hematologist.
    iii. On the orientation interview form, the Student identified focusing in class was a challenge.
13. The Complainant indicated, the Parent was told the Student would be enrolled in the new high school due to behavioral and academic reasons and this was against the Parent's wishes.
    i. The principal responded only being aware the Student submitted an application. Typically, students find success in this program and want to stay.
    ii. The Parent supported, in the interview, the move to the last high school of attendance was not a choice made by the family. The Parent reported being told an application would have to be made as it was the only choice. After the move, the Parent learned independently the new high school functioned differently than other high schools.
    iii. The Parent understood the move was due to a fight but suggested the Student got into fights because of the Student's illness and being bullied and teased.
14. A review of the attendance report produced the following data:
    i. 62 days of unexcused absences (for periods 1 to 4),
    ii. 10 days of excused absences; and
    iii. 12 days of suspension:
        a. One day on October 4, 2018;
        b. One day on December 4, 2018; and
        c. Ten days beginning on April 17, 2019 and going through April 30, 2019.
    iv. The Student did not return after the April 2019 suspension. From May 1, 2019

through May 24, 2019 the Student was marked as unexcused. From May 28, 2019 through June 11, 2019, the Student was marked as excused. The last two days of school indicated unexcused.
15. The Parent indicated completing paperwork and submitting information to the office staff when the Student would be absent and most of the absences were due to complications from the disease. The principal indicated when information was provided, the assistant files the document and excuses the absence. All absences for the 2018–2019 school year were unexcused until excused was indicated in May.
16. The District's staff handbook included a section on Child Find which indicated: "As part of IDEA and the Michigan Revised School Code, if a staff member receives a written request from a parent or guardian to evaluate their child for special education eligibility, then the school psychologist, speech therapist, or Student Services must be notified within 24 hours. The school psychologist or speech therapist need to meet with the parent/guardian within 10 school days to conduct a review of existing evaluation data. The parent/guardian must sign for the evaluation being proposed. This includes Child Find efforts involving any student suspected of having a disability or having a disability who is in need for special education and related services. The consent for evaluation must be signed from the parent to proceed with conducting the evaluation. If staff members determine that an evaluation is not needed, then written support for refusing the evaluation must be made. Staff members need to notify a Student Services administrator if this occurs to review the written notice before it is sent to the parent/guardian."
17. The principal indicated the Student was brought to the school's child study team for academic issues. No documentation was provided.
18. The Complainant sent additional information regarding the Student, including a special education evaluation report conducted in the new district.
19. On February 27, 2020, the Student was found eligible for special education services as a student with an other health impairment. The Parent provided consent for the initial provision of services on March 2, 2020.

**Conclusions:**

Issue 1i:
1. "Child find" is the affirmative, ongoing obligation of states and local districts to identify, locate, and evaluate all children with disabilities residing within the jurisdiction who are in need of special education and related services. 34 CFR § 300.111(a)(1)(i).
2. Child find must include:
    i. Children who are suspected of being children with disabilities under 34 CFR §300.8 and in need of special education, even if they are advancing from grade to the Student had a disability.
3. The IDEA requires that a State (i.e., public agency) have in effect policies and procedures to ensure that the State (i.e., public agency) identifies, locates and evaluates all children with disabilities residing in the State, regardless of the severity of their disability, and who are in need of special education and related services. It is critical that this identification occur in a timely manner and that no procedures or practices result in delaying or denying this identification. Letter to State Directors of Special Education, (OSEP 2013).
4. Consistent with the consent requirements in § 300.300, either a parent of a child or a public agency may initiate a request for an initial evaluation to determine if the child is a child with a disability. 34 CFR § 300.301(b).

5. A district may not take a passive approach and wait for others to refer the student for special education services; the district must seek out IDEA-eligible students. *Compton Unified Sch. Dist. v. Addison*, (9th Cir. 2010), *cert. denied*, 132 S. Ct. 996 (2012).
6. Districts are responsible for conducting child find and identifying all IDEA-eligible students that reside in their jurisdiction. Because the child find obligation is an affirmative one, a parent is not required to request that a district identify and evaluate a child. Robertson County Sch. Sys. v. King, 99 F.3d 1139, 95-5526 (6th Cir. 1996, unpublished).
7. According to the Sixth Circuit, a petitioner needs to prove that the school district "overlooked clear signs of disability" and were negligent in failing to order testing, or that there was "no rational justification for failing to evaluate." Bd. of Educ. of Fayette County, Kentucky v. L.M., 47 IDELR 20122 (6th Cir. 2007), at para. 1, cert. denied, 110 LRP 48155, 128 S. Ct. 693 (2007) (citing Clay T. v. Walton County Sch. Dist., 952 F.Supp. 817, 823 (M.D.Ga.1997)).
8. For this Student, the District overlooked clear signs of a disability that may have resulted in a need for special education services. The Student has a documented disability in the multiple Section 504 Plans developed over several years. The Section 504 Plans in place for the 2018-2019 school year listed numerous areas of need in academics (which included attendance), medical, and communication. It is unclear whether the Student actually received any of the accommodations indicated in the Section 504 Plan; however, the Student was not progressing in the general curriculum. Without an evaluation, the District would not know whether the lack of progress required specialized instruction.
9. The District took a passive approach to their child find obligation and did not seek to evaluate without a specific request. Given the Student's documented disability and the remarkable lack of progress, the District failed in their affirmative obligation to identify, locate, and evaluate the Student who had a disability and a potential need for special education.

Issue 1ii:

1. A child who has not been determined to be eligible for special education and related services under this part and who has engaged in behavior that violated a code of student conduct, may assert any of the protections provided for in this part if the public agency had knowledge (as determined in accordance with paragraph (b) of this section) that the child was a child with a disability before the behavior that precipitated the disciplinary action occurred. 34 CFR § 300.534(a).
2. A student is determined to be eligible for special education and related services under IDEA and MARSE if, it has been determined by a group of qualified professionals and the Parent of the student, that the student has a disability as defined under 34 CFR § 300.8 and is in need of special education and related services consistent with 34 CFR §§ 300.111(c)(1) and 300.306(a)(1).
3. As a learner with a disability eligible under the IDEA, a student is entitled to receive a FAPE according to an individualized education program (IEP), which includes discipline protections, special education, related services, and supplementary aids and services designed to meet the Student's unique educational needs. 34 CFR § 300.17.
4. A public agency must be deemed to have knowledge that a child is a child with a disability if before the behavior that precipitated the disciplinary action occurred—
   i. The parent of the child expressed concern in writing to supervisory or administrative personnel of the appropriate educational agency, or a teacher of the child, that the child is in need of special education and related services;
   ii. The parent of the child requested an evaluation of the child pursuant to 34 CFR

       §§ 300.300 through 300.311; or
       iii. The teacher of the child, or other personnel of the LEA, expressed specific concerns about a pattern of behavior demonstrated by the child directly to the director of special education of the agency or to other supervisory personnel of the agency. 34 CFR § 300.534(b).

5. If the district does not have knowledge, no IDEA disciplinary protections are available, and the district may discipline the student with a disability the same way it would discipline a nondisabled student for similar misconduct. 34 CFR § 300.534(d).
6. According to the Office of Special Education and Rehabilitative Services (OSERS), "If a child engages in behavior that violates the code of student conduct prior to a determination of his or her eligibility for special education and related services and the public agency is deemed to have knowledge of the child's disability, the child is entitled to all of the IDEA protections afforded to a child with a disability, unless a specific exception applies. In general, once the student is properly referred for an evaluation under Part B of the IDEA, the public agency would be deemed to have knowledge that the child is a child with a disability for purposes of the IDEA's disciplinary provision." OSERS, Questions and Answers on Discipline Procedures, (June 1, 2009).
7. Discipline protections for a child not yet eligible are required when a district has a basis of knowledge the child is a child with a disability. 34 CFR § 300.534(b) clearly delineates what constitutes a basis of knowledge. There were no evaluation requests for the Student, either by the Parent or school personnel, and no evidence staff expressed specific concerns about a pattern of behavior to the director of special education or other supervisory personnel. Without a basis of knowledge, the Student is not eligible for discipline protections under the IDEA.

Overall FAPE:
1. The IDEA requires that a State (i.e., public agency) have in effect policies and procedures to ensure that the State (i.e., public agency) identifies, locates and evaluates all children with disabilities residing in the State, regardless of the severity of their disability, and who are in need of special education and related services. It is critical that this identification occur in a timely manner and that no procedures or practices result in delaying or denying this identification. Letter to State Directors of Special Education, July 19, 2013 (OSEP).
2. The IDEA seeks to ensure that children with disabilities have access to a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of children with disabilities and their parents or guardians are protected. 20 U.S.C. § 1400. Further, the IDEA "provides federal funds to assist state and local educational agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures. One of those goals/procedures is the affirmative duty of the state (i.e., the local educational agency) to assure that "all children residing in the State (i.e., local educational agency) who are disabled . . . and who are in need of special education and related services are identified, located, and evaluated." 20 U.S.C. § 1412(2)(C); Robertson County Sch. Sys. v. King, 99 F.3d 1139, 95-5526, October 15, 1996 (6th Cir., unpublished) (citing Wise v. Ohio Dept. of Educ., 80 F.3d 177, 181 (6th Cir. 1996)).
3. A FAPE means special education and related services that are provided in conformity
4. Failing to meet Child Find requirements is a matter of serious concern that can deny FAPE to a student whom a district should have identified. This failure to identify may entitle the student to compensatory education or tuition reimbursement accruing from the time the district first should have suspected the disability. *T.B. v. Prince George's*

*County Bd. of Educ.*, 17-1877, July 26, 2018 (4th Cir.); *Robertson County Sch. Sys. v. King*, 95-5526, October 15, 1996 (6th Cir., *unpublished*); *Lakin v. Birmingham Pub. Schs.*, 70 F. App'x 295, 02-1137 (6th Cir. 2003); and *Department of Educ. v. Cari Rae S.*, 158 F. Supp. 2d 1190, August 3, 2001 (D. Hawaii).

5. The provision of a FAPE is designated for students who are eligible to receive special education. Although the District failed to identify, locate, and evaluate the Student, without a full evaluation to determine eligibility, the MDE cannot determine whether a FAPE was denied. Eligibility determination in the new district was made after the filing of this complaint. As the Student is no longer in the District, a student level corrective action plan is not being issued.

### Decision:

1. Whether the District provided the Student a free appropriate public education (FAPE) pursuant to 34 CFR §§ 300.17 and 300.101. Specifically:
   i. Whether the District enacted its Child Find obligations pursuant to 34 CFR § 300.111 and R 340.1702.

   **The District did not take an affirmative action to fulfill the child find obligation. The MDE determines a violation.**

   ii. Whether the District implemented the discipline protections, under 34 CFR §§ 300.530, 300.532 and 300.536, for a student not yet eligible, consistent with 34 CFR § 300.534.

   **The Student did not meet the criterion detailed in the IDEA discipline protections for the District to have a basis of the Student was a student with a disability. The MDE determines no violation.**

### Corrective Action Plan:

The district must revise or develop procedures regarding child find, as needed, by November 15, 2020 to document and ensure that:

1. The District takes affirmative action in its child find obligation by addressing the following:
   i. The District's responsibility to initiate a special education evaluation, for a student who is suspected of being a student with a disability and in need of special education, even when a parent has not made a request.
   ii. Identification of factors or signs which may prompt District staff to consider a special education referral.
   iii. Assurance general education staff are informed of their role and responsibility in implementing the District's child find obligation.

The district must provide professional development by November 15, 2020 for all relevant staff regarding the new procedures.

Evidence of change in the district's practices must be provided and verified by the OSE.

Evidence of timely compliance and required submissions for Corrective Action Plans must be documented in Catamaran. Please direct questions regarding the complaint investigation to Rebecca McIntyre at (517) 335-0457 or mcintyrer1@michigan.gov. All correspondence

should be clearly marked as pertaining to case 19-0213.

Rebecca McIntyre, Supervisor
Program Accountability
Office of Special Education

cc: Natasha Shepherd
Reuquiyah Saunders
Mindy Miller
David Campbell
Tori Wentela