# EXHIBIT BB

# STATE OF MICHIGAN
## MICHIGAN OFFICE OF ADMINISTRATIVE HEARINGS AND RULES

| | | |
|---|---|---|
| **In the matter of:** | : | **Docket No.** |
| **H▇▇▇▇ B▇▇▇▇, on behalf of her minor child, K.B.,** | : | **Case No.** |
| | : | **Agency: Department of Education** |
| **Petitioner,** | : | **Case Type: ED Sp Ed Regular** |
| **v.** | : | **Filing Type: Appeal** |
| **KALAMAZOO PUBLIC SCHOOLS; KALAMAZOO REGIONAL EDUCATIONAL SERVICE AGENCY; MICHIGAN DEPARTMENT OF EDUCATION; and MICHAEL RICE in his official capacity as State Superintendent;** | : | **Administrative Law Judge:** |
| | : | **COMPLAINT AND REQUEST FOR A DUE PROCESS HEARING UNDER THE IDEA** |
| **Respondents.** | | |

---

Elizabeth K. Abdnour (P78203)
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw Street, Suite 4A-2
Lansing, MI 48915
(517) 292-0067
elizabeth@abdnour.com

Erin H. Diaz (P80388)
Mitchell D. Sickon (P82407)
DISABILITY RIGHTS MICHIGAN
4095 Legacy Parkway
Lansing, MI 48911-4263
(517) 487-1755
ediaz@drmich.org
msickon@drmich.org

Jacquelyn Babinski (P83575)
MI AECRES
(231) 794-2379
jbabinski@miaecres.org

*Attorneys for Petitioners*

---

PLAINTIFFS 00002515

## COMPLAINT AND REQUEST FOR A
## DUE PROCESS HEARING UNDER THE IDEA

### I.    INTRODUCTION

1.    The Supreme Court has repeatedly recognized the importance of education and literacy, explaining, "education prepares individuals to be self-reliant and self-sufficient participants in society." *Wisconsin v. Yoder*, 406 U.S. 205, 221 (1972). Moreover, "[i]lliteracy is an enduring disability." *Plyler v. Doe*, 457 U.S. 202, 222 (1982). "In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." *Brown v. Board of Education*, 347 U.S. 483, 493 (1954). But that is exactly what Defendants have denied K.B.

2.    K.B. is a 16-year-old child who has been eligible for special education services since at least August 2019. Kalamazoo Public Schools failed to evaluate K.B. and failed to appropriately instruct her. The Michigan Department of Education and the Kalamazoo Regional Educational Service Agency investigated Kalamazoo Public Schools and failed to identify that the District was not comprehensively evaluating students.

3.    Petitioner, H███ B██, by and through her undersigned counsel, hereby submits the following Complaint and Request for a Special Education Due Process Hearing against the Kalamazoo Public Schools ("KPS" or "the District"), Kalamazoo Regional Educational Service Agency ("KRESA"), and the Michigan Department of Education ("MDE") (collectively "Respondents"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 USC §§ 1400 *et seq.*; the Michigan Administrative Rules for Special Education ("MARSE"), Michigan Administrative Code Rule 340.1701 *et seq.*; the Michigan Special Education Act ("MSEA"), MCL 380.1701 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 USC § 794;

PLAINTIFFS 00002516

Title II of the Americans with Disabilities Act ("Title II"), 42 USC §§ 12131 *et seq*.; and the Persons with Disabilities Civil Rights Act ("PDCRA") MCL 37.1101 *et seq*.

4.      Throughout K.B.'s educational career, the District has denied her comprehensive educational evaluations and individualized educational and social-emotional supports that were supported by peer-reviewed research, thereby failing to provide her with a free and appropriate public education ("FAPE") as required by the IDEA and the MARSE.  Moreover, the Respondents have failed to provide K.B. with an equal educational opportunity and have discriminated against her on the basis of her disability, in violation of Section 504 and Title II. Respondent MDE has also failed to monitor and supervise the provision of educational services and equal educational opportunities to K.B.; to ensure compliance by the District with all relevant State and Federal laws in the provision of those educational services; to administer an effective complaint resolution process; and to provide appropriate technical assistance to the District to ensure that K.B. is afforded a FAPE and an equal educational opportunity without discrimination.

## II.    JURISDICTION

5.      MDE and the Michigan Office of Administrative Hearings and Rules ("MOAHR") have jurisdiction over this due process hearing request under 20 U.S.C. § 1415(b)(6) because this request concerns the legal obligations of Respondents under the IDEA regarding the identification, evaluation, educational placement, and provision of a FAPE to a student with a disability. This Tribunal has the authority to determine, based on the individual facts and circumstances of the case, whether the state educational agency ("SEA") should be a party to the hearing. Letter to Anonymous (OSEP January 2, 2017) ("[T]he hearing officer has the authority to determine, based on the individual facts of the case, whether the SEA is a proper party to the due process hearing."). *See also RV v Rivera*, 220 F Supp 3d 588 (ED Pa 2016) (SEA found proper party to due process hearing when charter school dissolved, leaving SEA to provide services.); *Corey H v Bd of Ed of*

PLAINTIFFS 00002517

*Chicago*, 995 F Supp 900 (ED Ill 1998) (uncontested evidence that SEA failure to take corrective action with respect to LEAs' least restrictive environment rules and regulations was sufficient to establish violation of statutory requirement that it ensure compliance with least restrictive environment mandate).

6.      For Petitioners' claims under Section 504 and Title II of the ADA that seek educational relief, they shall be heard by this tribunal for purposes of administrative exhaustion. 20 USC § 1415(l); *Fry v Napoleon Cmty Sch*, 137 S Ct 743 (US 2017).

7.      The District, KRESA, and MDE receive federal financial assistance within the meaning Section 504, 29 USC § 794, and are public entities as defined in by Title II of the ADA, 42 USC § 12131(1). Accordingly, they are responsible for upholding the rights of students under Section 504 and the ADA.

## III.     PARTIES

### *The Student*

8.      K.B. is a sixteen-year-old child with a disability who resides in the District. Her address is ████████████ Kalamazoo, MI 49048. K.B. currently attends Loy Norrix High School. K.B. is a student with a disability, as defined by the IDEA and the MARSE under the primary category of Other Health Impairment. *See* MARSE R 340.1713. She is also an individual with a disability within the meaning of Section 504 and the ADA, as she has been diagnosed with attention deficit hyperactivity disorder ("ADHD"), adjustment disorder, and oppositional defiant disorder, which substantially limit one or more major life activities, including reading, learning, communicating, and interacting with others. 28 CFR § 35.108.

PLAINTIFFS 00002518

### The Respondents

9.      KPS is K.B.'s home district and as such, is the local education agency ("LEA") responsible for providing her with a FAPE and the procedural protections required under the IDEA. 20 USC § 1413. KPS is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 CFR § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 USC §§ 12132, 12131(1)(A), (B) and PDCRA, MCL 37.1101 *et seq*.

10.     KRESA is the regional educational service agency, also known as an intermediate school district as defined in MCL 380.4(3), of which KPS is a constituent school district. KRESA must submit a plan for special education, which sets forth the special education programs and related services to be delivered. MARSE R 340.1832. Additionally, KRESA receives federal funding to provide special education services. MARSE R 340.1801. Under MARSE, KRESA is involved in both investigating LEA noncompliance and assisting the MDE in monitoring the LEA's compliance with SEA-issued corrective action. MARSE R 1853-54. KRESA is an educational institution, subject to PDCRA, MCL 37.1101 *et seq*. KRESA is also a "program or activity" covered by Section 504, 20 USC §794(b), and a "public entity" under Title II of the ADA, 42 USC §12131(1)(A).

11.     MDE qualifies as a State Educational Agency ("SEA") under 20 USC § 1401(32) ("The term [SEA] means the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools . . ..").

12.     Since May 2019, Michael Rice, in his official capacity, has been the State Superintendent and head of MDE and was an agent and/or employee of MDE, acting or failing to act within the scope, course, and authority of his employment and his employer.

PLAINTIFFS 00002519

13.     At all relevant times prior to May 2019, Michael Rice was the Superintendent of KPS and was an agent and/or employee of KPS, acting or failing to act within the scope, course, and authority of his employment and his employer.

14.     Collectively, MDE and Michael Rice shall be identified as "the MDE Respondents."

15.     The MDE Respondents have consistently received IDEA funding by submitting plans to the Secretary of the U.S. Department of Education that "provide[] assurances . . . that the State has in effect policies and procedures to ensure that . . . [a] free appropriate public education is available to all children with disabilities residing in the State." 20 USC § 1412.

16.     As Michigan's SEA, MDE has general supervisory responsibility for implementing the IDEA's requirements.  MDE is specifically "responsible for ensuring" that IDEA's regulations are carried out and for its general supervision over each educational program for children with disabilities to ensure the programs meet MDE's educational standards, which include IDEA's regulatory requirements. 34 CFR § 300.149(a).

17.     Under the IDEA, the MDE, as SEA, has additional responsibilities when it comes to resolving administrative complaints. The IDEA provides that in resolving an administrative complaint:

> in which the SEA has found a failure to provide appropriate services, an SEA, pursuant to its general supervisory authority under Part B of the [IDEA], must address—
>       1. The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and
>       2. Appropriate future provision of services for all children with disabilities.

34 CFR § 300.151(b).

PLAINTIFFS 00002520

18.     MDE is the department of the State of Michigan that is responsible for administering and enforcing laws related to public education. Mich Comp Laws § 16.400-16-402. As Michigan's state educational agency, MDE bears the ultimate responsibility for ensuring that all public schools in Michigan comply with the IDEA.  MDE is also a "program or activity" covered by Section 504, 20 USC § 794(b), and a "public entity" under Title II of the ADA, 42 USC § 12131(1)(A).

## IV.    STATEMENT OF FACTS

19.     Ms. B█ timely filed this due process complaint within two years of her knowledge of the District's, KRESA's, and MDE's violations.[1]

20.     Plaintiff K.B. is a sixteen-year-old student who resides in Kalamazoo, Michigan and is African American.  She has a twin sister who is also a student in the District. When K.B. was in the fifth grade, her mother became legally blind and now cannot drive.   As Ms. B█ is a single mother, this became a challenge for the family to manage.

21.     K.B. began attending Hillside Middle School in KPS in 2017 and was repeatedly sent home for disciplinary issues.  Her mother would struggle to find transportation to pick K.B. up, and K.B. slowly began to disengage from school.

---

[1] The statute of limitations added to IDEA applies to filing, not to limiting of the remedy as explained by the legislative history of the statute.

> In this reauthorization, we also include a 2–year statute of limitations on claims. However, it should be noted that this limitation is not designed to have any impact on the ability of a child to receive compensatory damages for the entire period in which he or she has been deprived of services. The statute of limitations goes only to the filing of the complaint, not the crafting of remedy. This is important because it is only fair that if a school district repeatedly failed to provide services to a child, they should be required to provide compensatory services to rectify this problem and help the child achieve despite the school's failings.

> Therefore, compensatory education must cover the entire period and must belatedly provide all education and related services previously denied and needed to make the child whole.

*GL v Ligonier Valley Sch Dist Auth*, 802 F3d 601, 624 (3d Cir 2015) (quoting 50 Cong Rec S11851 (daily ed Nov 24, 2004) (statement of Sen. Tom Harkin)).

PLAINTIFFS 00002521

22.     K.B. was unilaterally placed in KPS's Alternative Learning Program ("ALP") by the District in October 2017, where she was exposed to many other students with behavior problems, resulting in her behaviors escalating.

23.     K.B. was assigned to attend ALP by KPS employee Atiba McKissack for the entire 2017-2018 and 2018-2019 school years, the entirety of 6th and 7th grade.

24.     At ALP, K.B. was repeatedly suspended for disrespect and not following directions.

25.     During the 2018-2019 school year, KPS gave K.B. 11 lunch detentions, 9 behavior incident reports, and a total of 44 days of out of school suspension.

26.     During one of her suspensions beginning on April 16, 2019, K.B. went to the local elementary school to play, went inside to get a drink, and while there got into a fight with another student.  The police were called and K.B. was issued a citation and court date. K.B. was subsequently removed from ALP on April 25, 2019, for the rest of the school year.

27.     KPS staff told Ms. B█ that K.B. could not come back to KPS in September 2019 after she had completed five therapy sessions and engaged with services from Community Mental Health ("CMH").

28.     On July 15, 2019, CMH identified K.B. as having ADHD, adjustment disorder, and oppositional defiant disorder.

29.     K.B. had not previously been identified as a student with disabilities by KPS.

30.     On August 23, 2019, K.B was determined as clinically eligible to receive services through the Michigan Department of Health and Human Services' ("MDHHS") Special Targeted Home and Community-Based Services Waiver program as a child with a serious emotional disability.

PLAINTIFFS 00002522

31.     On September 4, 2019, K.B. began receiving homebound instruction through ALP.

32.     On September 9, 2019, K.B.'s advocate, George White, filed a special education state complaint with MDE alleging that KPS had failed to properly evaluate and identify K.B. as a student with a disability.

33.     On September 13, 2019, K.B. was enrolled in Milwood Magnet School and continued to receive homebound instruction.

34.     Between September 9 and October 23, 2019, KPS gave K.B. 8 behavior incident reports and 18 days of out of school suspension, even though she was receiving homebound instruction. KPS told Ms. B███ that it was because K.B. was "not cooperating."

35.     Millwood Middle School conducted a Functional Behavioral Assessment ("FBA") on October 9, 2019, and evaluated K.B., resulting in the drafting of a in a Multidisciplinary Evaluation Team ("MET") Report.

36.     On October 23, 2019, at the MET meeting, KPS found K.B. ineligible for special education services despite her numerous disabilities, her repeated behavior referrals, and even though her test scores reflected a need for educational and socio-emotional interventions.

37.     Between October 23 and October 31, 2019, KPS gave K.B. 5 behavior incident reports and 11 days of out of school suspension.

38.     On November 8, 2019, MDE issued a finding and corrective action plan in response to the state complaint K.B.'s advocate George White had filed.

39.     MDE found KPS in violation of IDEA and MARSE for failing to properly identify and evaluate K.B. as a student with a disability.

40.     MDE's corrective action plan ordered KPS to do the following:

PLAINTIFFS 00002523

a.    Conduct a Review of Existing Educational Data ("REED") and comprehensive evaluation of K.B., prepare a MET report, and conduct an IEP team meeting to determine K.B.'s eligibility for special education services by January 15, 2020;

b.    If K.B. was found eligible for special education services, by January 22, 2020, develop a plan for 37 hours of compensatory education to be provided to K.B. before September 1, 2020;

c.    Develop and revise the KPS Child Find process by June 15, 2020, to ensure that KPS complied with the requirements of the IDEA and MARSE; and

d.    Provide appropriate professional development to KPS staff by June 15, 2020.

41.    Quixotically, MDE's decision specifically stated that if K.B. was found eligible for special education services, then MDE would find KPS in further violation of MARSE for failing to provide services to an eligible student under MARSE, providing KPS with incentive to find K.B. not eligible for special education services.

42.    KPS failed to conduct the required evaluation and simply notified Ms. B█ that it was relying on prior evaluations of K.B. conducted in January 2018 and October 2019 to again find her ineligible for special education services.

43.    The January 2018 and October 2019 evaluations were not comprehensive multidisciplinary educational evaluations as required by the IDEA and MARSE.

44.    Regarding the January 2018 MET, Ms. B█ was never notified that it had occurred and was never asked to provide information for the evaluation process.

PLAINTIFFS 00002524

45.     To date, KPS has not complied with MDE's November 8, 2019, finding and corrective action plan regarding K.B.

46.     Upon information and belief, MDE has not ensured or enforced KPS's compliance with the corrective action plan.

47.     On October 31, 2019, KPS gave K.B. 9 days of out of school suspension to begin on November 4, 2019, with a return to school pending further investigation.

48.     Barry Smith, Assistant Director of Student Services for KPS, told K.B. that she was either going to be expelled or she could go to KRESA's Youth Advancement Academy ("YAA").

49.     On its website, YAA defines itself as: "YAA is a strict discipline charter school that serves students in grades seven through 12 who have been expelled from public school or are assigned to the academy by court order."[2]

50.     K.B. had never been previously expelled from school and had never been involved in the juvenile court system.

51.     YAA was not an appropriate placement for K.B.

52.     Barry Smith told Ms. B███ that she needed to file an expulsion appeal.

53.     Ms. B███ was not clear on why she needed to do this as she thought that K.B. going to YAA would preclude expulsion, but she filed the appeal due to Mr. Smith's direction.

54.     On November 14, 2019, Ms. B███ submitted a parent request for an expulsion appeal.

55.     On November 15, 2019, K.B. was enrolled at YAA and Ms. B███ submitted a second request for an expulsion appeal.

---

[2] Kalamazoo RESA, *Youth Advancement Academy* <https://www.kresa.org/Page/1931> (accessed January 6, 2022).

PLAINTIFFS 00002525

56.     On November 23, 2019, Ms. B██ submitted a written request via U.S. mail for an IEP meeting.

57.     On November 25, 2019, Mr. White submitted another written request for an IEP meeting on K.B.'s behalf via email.

58.     On December 9, 2019, Mr. White submitted a third written request for an IEP meeting via U.S. mail.

59.     On December 16, 2019, KPS rejected all requests for an IEP meeting because they had found K.B. ineligible for an IEP on October 23, 2019.

60.     On December 19, 2019, YAA finally created a "behavior plan" for K.B. after she was suspended for five days.

61.     However, the behavior plan did not address any of K.B.'s specific problem behaviors or any interventions to help support such behaviors, but simply outlined a list of rules that K.B. was supposed follow to avoid being suspended or expelled.

62.     On January 30, 2020, Ms. B██ submitted a written request via U.S. mail that K.B. be evaluated for special education services pursuant to IDEA.

63.     On February 7, 2020, KPS sent Ms. B██ a Prior Written Notice of their refusal to evaluate K.B. for special education services due to the evaluations they had conducted in January 2018 and October 2019.

64.     On February 13, 2020, K.B. had a hearing in Kalamazoo County Juvenile Court and was ordered to write an apology to the family of the student she had fought with at the elementary school on April 25, 2019, during one of her suspensions.

65.     K.B. refused to write the letter because she apologized to the student and family in the courtroom and additionally was unable to write a letter due to her disabilities.

PLAINTIFFS 00002526

66.     Nonetheless, the court placed K.B. in detention at the Kalamazoo County Juvenile Home until she could complete the letter to their satisfaction.

67.     Because K.B. struggles with reading and writing, she remained in the Juvenile Home for 3-4 weeks as versions of her letter were rejected by officers of the court.

68.     During her time in juvenile detention, K.B. attended the school at the Intensive Learning Center ("ILC"), where she received instruction from certified special education teachers without an IEP.

69.     At some point during the time K.B. was at ILC, Ms. B███ asked for ILC to perform a special education evaluation of K.B.

70.     Ms. B███ made this request verbally.

71.     Because Ms. B███ is blind, she spoke to ILC staff to confirm the request was in K.B. 's file, and staff told her the request was in K.B.'s file.

72.     Upon review of K.B.'s ILC file by her advocate, George White, Ms. B███ learned that the request was not in K.B.'s file.

73.     On March 19, 2020, a court-ordered psychological evaluation of K.B. was completed.

74.     Through the psychological evaluation, K.B. was diagnosed with ADHD, trauma and stress-related disorder, and oppositional defiant disorder ("ODD").

75.     The evaluation also found that K.B.'s full scale IQ score was 82, and her academic achievement results were below average.

76.     The evaluation recommended further assessment of K.B. in an education setting to determine necessary special education services and recommended long-term treatment and management of K.B.'s diagnoses.

PLAINTIFFS 00002527

77.    K.B. was released from Juvenile Detention and returned to KPS at Loy Norrix High School on March 1, 2020.

78.    On December 3, 2020, Ms. B█ requested in writing via U.S. mail that KPS hold an IEP meeting for K.B.

79.    On December 14, 2020, KPS notified Ms. B█ that they were refusing to write an IEP for K.B. because they had previously found her ineligible for special education services.

80.    KPS told Ms. B█ that they could perform more evaluations of K.B. if she wanted to request them.

81.    On January 25, 2021, Mr. White filed another complaint against KPS with MDE.

82.    Between December 2020 and February 2021, KPS gave K.B. at least 3 behavior incident reports.

83.    On March 23, 2021, MDE again found KRESA in violation of IDEA and MARSE for failing to properly identify and evaluate K.B. as a student with a disability.

84.    MDE issued a corrective action plan which ordered KRESA to do the following:

a.    Conduct a Review of Existing Educational Data ("REED") and comprehensive evaluation of K.B., prepare a MET report, and conduct an IEP team meeting to determine K.B.'s eligibility for special education services by April 30, 2021;

b.    If K.B. was found eligible for special education services, by April 30, 2021, develop a plan for 45 hours of compensatory education to be provided to K.B. before January 1, 2022;

c.    Develop and revise the KPS Child Find proceedings by June 1, 2021, to ensure that KPS complied with the requirements of the IDEA and Michigan Administrative Rules for Special Education ("MARSE"); and

PLAINTIFFS 00002528

  d. Provide appropriate professional development to KPS staff by June 1, 2021.

85. As of the date of filing this complaint, upon information and belief, KRESA still has not developed a plan for 45 hours of compensatory education to be provided to K.B., developed and revised the KPS Child Find proceedings, or provided appropriate professional development to KPS staff.

86. On April 12, 2021, an initial Review of Existing Evaluation Data ("REED") meeting for K.B. was conducted.

87. The REED was signed on April 19, 2021.

88. An evaluation plan for K.B. was developed in the areas of social/emotional/behavioral, achievement, and medical and mental health.

89. On April 20, 2021, KPS gave K.B. another behavior incident report.

90. On May 17, 2021, K.B. received physician verification of her diagnosis of ADHD.

91. K.B.'s physician found that K.B.'s health was deteriorating and that K.B. has trouble completing work and getting along with other students due to her diagnoses.

92. On May 26, 2021, at K.B.'s MET meeting, the KPS evaluation team recommended that K.B. be found eligible for special education services under the Other Health Impairment ("OHI") disability category.

93. That same day, an IEP meeting was held, and an IEP was finally created for K.B. However, the services and accommodations under the IEP still failed to appropriately meet K.B.'s educational needs.

  a. Under the Student's Post-Secondary Vision and Transition Activities section, nine different activities/services are listed as needed for K.B., but there are no goals listed to support the achievement of these services, no mention of how these

PLAINTIFFS 00002529

services will be provided to K.B., and simply list K.B., her mother, and "teacher" as persons responsible for providing these services.

b. Under the Special Factors, Supplementary Aids and Assessments section, K.B. has four different accommodations listed. However, due to the severity of her disability, including cognitive impairments and behavioral concerns, K.B. needs additional added support to access her education, such as a proper Behavior Intervention Plan, breaks throughout the school day, providing a quiet room or space, using varied reinforcement systems, pre-written notes or study guides, tests taken in an alternate setting, breaks during testing.

c. Under Programs and Services, K.B. needs to be provided with proper services to successfully attain her written goals. Services needed include direct social work services for emotional/behavioral support, resource room instruction, and special education instruction.

94. In October 2021, another IEP meeting was held for K.B.

95. Under the Family Educational Rights and Privacy Act ("FERPA"), parents have certain rights with respect to accessing their children's education records, including the right to inspect and review the student's education records maintained by the school.

96. A school must honor a parent's request to review their child's education records within 45 days of receiving a request.

97. According to the KPS website, to view their child's record, parents should submit a written request that identifies the records they wish to inspect to the school principal.

PLAINTIFFS 00002530

98.     The school principal will arrange for access and notify the parent or eligible student of the time and place where the records may be inspected.[3]

99.     On November 9, 2021, Ms. B█ sent an email to Christopher Aguinaga, principal of Loy Norrix High School, requesting a copy of all 2021-2022 discipline and education records in the possession of Loy Norrix High School and KPS that pertained to K.B.

100.    Ms. B█ uses her son's email address due to her visual impairment.

101.    Ms. B█ did not receive a response to this email request.

102.    On November 11, 2021, Ms. B█ called Loy Norrix High School to verbally request to inspect K.B.'s records, but the office secretary informed her that the principal was in a meeting at the time.

103.    Ms. B█ never heard back from Mr. Aguinaga or anyone else at KPS regarding her request to review K.B.'s records.

104.    On December 5, 2021, Ms. B█ again sent an email to both Mr. Aguinaga and Rikki Saunders, KPS's Director of Special Education, requesting to view K.B.'s records.

105.    In that email, Ms. B█ explained that she was communicating through her son's email due to her disability as she cannot access email on her own.

106.    Later that evening, Mr. Aguinaga finally responded that K.B.'s records were emailed to the email address that Loy Norrix High School has on filed per signed registration.

107.    Mr. Aguinaga's email also stated that his "staff doesn't have the time to continue to send [r]ecords for free to incompetence."[4]

---

[3] See *Family Educational Rights and Privacy Act (FERPA)*, Kalamazoo Public Schools, https://www.kalamazoopublicschools.com/Page/1721 (last visited January 12, 2022).
[4]

PLAINTIFFS 00002531

108.    Mr. Aguinaga then sent a second email to Ms. B███ stating that he "would love to meet [K.B.'s] family, but [has] yet to see them at Loy Norrix," and that it "[s]eems as if they don't care about poor [K.B.]."

109.    Due to Mr. Aguinaga's hostile and inappropriate response, Ms. B███ did not feel comfortable responding to him to try to determine what email address KPS was using to send the records.

110.    As of the date of filing, Ms. B███ still has not seen K.B.'s educational records.

111.    During the 2021-2022 school year so far, KPS has suspended K.B. from school almost every single week.

112.    On December 7, 2021, an altercation occurred between K.B. and a Loy Norrix staff member.

113.    Ms. B███ does not know the staff member's name.

114.    In response to K.B.'s behavioral difficulties, the staff member told K.B. that her mother "needs to be disciplining [her] dumb ass" and then called K.B. a "dumb ass bitch."

115.    One of the students present recorded this incident on their cell phone.

116.    On December 15, 2021, an incident occurred that caused K.B. to be suspended from school for 10 days.

117.    On January 11, 2022, a Manifestation Determination Review (MDR) was held to determine if the conduct was a manifestation of K.B.'s disability.

    a.    Present at the MDR were K.B., Ms. B███, Special Education provider Alysia Baznik, Evaluation Team Representative Kara Milton, School Social Worker Kirsten Jennings, School District Representative Andrew Muysenberg, Special

PLAINTIFFS 00002532

Education Coordinator Janine VanStee, and Special Education Advocate George White.

    b.   At the MDR, KPS suggested that K.B. would do best in a small school setting and proposed to transfer K.B. to Valley Center School, a special education center-based school that provides services to students with emotional or unique behavioral needs.

    c.   Ms. B███ denied the transfer, and K.B. was able to return to school on January 12, 2022.

118.    As of the date of filing, K.B. is still enrolled at Loy Norrix High School and attending classes without proper accommodations or goals per her IEP.

119.    As of the date of filing, KPS continues to punish and retaliate against K.B. due to the behavioral issues stemming from her disabilities.

120.    KPS has made no effort to accommodate K.B.'s disabilities, thus denying her access to a meaningful education.

121.    Respondents' acts have deprived K.B. of a FAPE she is entitled to by law.

122.    Respondents' acts have deprived K.B. of her equal opportunity to receive the same benefits that other participants in Respondents' programs and services enjoy.

123.    Respondents' acts were knowing and intentional.

124.    Because of KPS's failure to properly evaluate and accommodate K.B. and KRESA's and MDE's failure to properly oversee KPS, K.B. has suffered educational, social, and behavioral impacts and other damages. This complaint is filed to obtain compensatory education, tutoring, rehabilitative counseling, training for the District and KRESA, and, when appropriate, the appropriate damages owing for the District's, KRESA's and MDE's harm.[5]

---

[5] Damages for emotional distress and humiliation are not available at due process, but Petitioner gives notice for purposes of exhaustion under the ADA and Section 504.

PLAINTIFFS 00002533

## V.    ALLEGATIONS

### a.    RESPONDENTS VIOLATED THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT, 20 USC §§ 1400 *et seq.*

125.    Petitioners incorporate by reference all previous paragraphs of the Complaint.

126.    Congress passed IDEA to ensure "that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 USC § 1400(1)(A), (B).

127.    Under the IDEA, each state must "ensure" that it provides "special education" and "related services" to all children with disabilities aged 3 to 21 residing in the state. 20 USC §§ 1401(9), 1412(a)(1). Special education means specially designed instruction that meets the unique needs of a child with a disability. *See* 20 USC § 1401(29). "Related services" means the supportive services "required to assist a child with a disability to benefit from special education." 20 USC § 1401(26). The State directs local school districts to provide special education and related services to each eligible student with a disability by implementing an "individualized education program," an individually tailored statement that is developed, reviewed, and revised by an "IEP team." *See* 20 USC § 1414(d).

128.    The IDEA further requires through the least restrictive environment ("LRE") requirement that states "ensure" that:

> [t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes . . . cannot be achieved satisfactorily.

20 USC § 1412(a)(5).

PLAINTIFFS 00002534

129.    As the state educational agency for Michigan, MDE is specifically "responsible for ensuring that" all eligible Michigan children with disabilities receive a free appropriate public education in the least restrictive environment. 20 USC §§ 1412(a)(11)(A), (a)(1), (a)(5). MDE must coordinate with other public agencies as needed to ensure that children with disabilities receive the education to which they are entitled under the IDEA. *See* 20 USC § 1412(12).

130.    To fulfill these responsibilities, MDE, among other things, must engage in "effective monitoring" to ensure that local school districts provide a free appropriate public education in the least restrictive environment to all eligible children. *See* 20 USC §§ 1416(a)(1)(C), (a)(3)(A), (a)(3)(B). While the State must use data to measure school districts' performance, maintain an administrative complaint process, and take corrective action upon finding any violations of the Act, its duty requires far more.  *See* 20 USC §§ 1411(e)(2)(B)(i), 1415, 1416(a)(3).

131.    Rather than focusing on technical compliance, the State's "primary focus" must be on "improving educational results and functional outcomes for all children with disabilities." 20 USC § 1416(a)(2)(A).  The State must ensure that students receive a free appropriate public education in the least restrictive environment. *See* 20 U.S.C. §§ 1412(a)(1), (a)(5); 1416(a)(1)(C), (a)(3)(A). Accordingly, the State must now guarantee that districts meet the "markedly more demanding" standard for a free appropriate public education as clarified by the Supreme Court in *Endrew F.*, which explicitly demands that every child with a disability receive an "ambitious" education, with the chance to meet "challenging objectives," and anticipates that most children can do so in the general education classroom. *Endrew F,* 137 S Ct at 1000.

132.    To this end, the IDEA requires states receiving IDEA funds to have "in effect policies and procedures to ensure that the State meets each of the following conditions:" (1) "A free appropriate public education is available to all children with disabilities residing in the State

PLAINTIFFS 00002535

between the ages of 3 and 21, inclusive, . . ." ; (2) "An individualized education program, or an individualized family service plan that meets the requirements of section 1436(d) of this title, is developed, reviewed, and revised for each child with a disability in accordance with section 1414(d) of this title"; and (3) "Children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title," among others. 20 USC § 1412.

133.    The IDEA requires local education agencies receiving IDEA funding to "submit[] a plan that provides assurances to the State educational agency that . . . . [t]he local educational agency, in providing for the education of children with disabilities within its jurisdiction, has in effect policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title." 20 USC § 1413(a).

134.    As the Supreme Court has held, "[t]o meet its substantive obligation under IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F*, 137 S Ct at 999.

135.    At all times relevant to this complaint, K.B. has been a student with a disability under 20 USC § 1401(3).

136.    Respondents violated K.B.'s rights under the IDEA by knowingly failing to provide comprehensive initial evaluations and failing to utilize a variety of assessments in violation of 20 USC §§ 1414(a)(1)(A), 1414(b); 34 CFR §§ 300.301, 304, 306.

137.    Respondents knowingly failed to properly evaluate K.B. when her educational or related service needs, including the need for emotional and behavioral supports, warranted an evaluation, in violation of 20 USC 1414(a)(2) and 34 CFR 300.303.

PLAINTIFFS 00002536

138.    The District failed to ensure that K.B.'s assessments were "administered by trained and knowledgeable personnel" in violation of 20 USC § 1414(b)(3)(A)(iv) and 34 CFR § 300.304(c)(1)(iv).

139.    In their repeated failure to effectively correct the noncompliance of the District in the administrative complaint process, MDE failed in its responsibilities under Federal law to "address" the District's "failure to provide appropriate services" concerning and failed to "address" the "[a]ppropriate future provision of services for all children with disabilities," which would have included K.B. 34 CFR § 300.151(b).

140.    MDE failed to address the appropriate provision of services by KPS, resulting in the continued denial of FAPE to students in violation of 34 CFR 300.151.

141.    KRESA failed in their responsibilities under Federal law to ensure a FAPE for K.B. and is thus a proper party to this administrative proceeding pursuant to 20 USC § 1415(b) and 34 CFR § 300.2.

142.    MDE failed in its responsibilities under State and Federal law to ensure FAPE to K.B. and is thus a proper party to this administrative hearing pursuant to 20 USC § 1415(b) and MARSE R 340.1701, 1852-55.

143.    Respondents otherwise violated K.B.'s right to receive a FAPE.

**b.  RESPONDENTS VIOLATED THE MICHIGAN ADMINISTRATIVE RULES FOR SPECIAL EDUCATION**

144.    Petitioners incorporate by reference all previous paragraphs of the Complaint.

145.    MARSE R 1700 *et seq.* defines the administrative rules for special education and related services in the State of Michigan.

146.    MARSE defines special education as "specially designed instruction, at no cost to the parents, to meet the unique educational needs of the student with a disability and to develop

PLAINTIFFS 00002537

the student's maximum potential. Special education includes instructional services defined in R 340.1701b(a) and related services." R 340.1701c(c).

147.    MARSE requires the district to "[c]omplete a *full* and individual evaluation." R 340.1721a (emphasis added).

148.    Pursuant to MARSE, "[t]he individualized education program team shall determine the programs and services for a student with a disability in accordance with 34 CFR part 300. The individualized education program shall not be restricted to the programs and services available." R 340.1721e(4).

149.    Respondents are covered entities subject to MARSE.

150.    Respondents failed to conduct a "full and individual evaluation" in violation of MARSE R 340.1713.

151.    MDE failed to maintain an effective complaint resolution process, resulting in the continued denial of FAPE in violation of MARSE R 340.1851 *et seq.*

152.    KRESA failed to ensure a FAPE in violation of MARSE R 340.1701.

   **c.  RESPONDENTS VIOLATED SECTION 504 OF THE REHABILITATION ACT, 29 USC § 794**

153.    Petitioners incorporate by reference all previous paragraphs of the Complaint.

154.    Pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its regulations, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 USC § 794.

155.    The regulations regarding Preschool, Elementary, and Secondary Education apply to "preschool, elementary, secondary, and adult education programs or activities that receive

PLAINTIFFS 00002538

Federal financial assistance and to recipients that operate, or that receive Federal financial assistance for the operation of, such programs or activities." 34 CFR § 104.31.

156.    In general, "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 CFR § 104.33(a).

157.    The District is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under Section 504. 29 USC § 794.

158.    KRESA is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under Section 504. 29 USC § 794.

159.    MDE is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under Section 504. 29 USC § 794.

160.    K.B. is a person with a disability within the meaning of Section 504. 29 USC § 794.

161.    The District failed to engage in evaluations and reevaluations of K.B. as specified and required, thus violating Section 504. 34 CFR § 104.35.

162.    Respondents have intentionally discriminated against K.B. in violation of Section 504 by failing to provide comprehensive educational evaluations resulting in a denial of a FAPE to K.B.

PLAINTIFFS 00002539

163.    Respondents have otherwise intentionally discriminated against K.B. in violation of Section 504. As a direct and proximate cause of Respondents' violation of Section 504, K.B. has suffered and continues to suffer educational, social, and behavioral impacts, and other injuries.

### d.  RESPONDENTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 USC §§ 12131 *et seq*.

164.    Petitioners incorporate by reference all previous paragraphs of the Complaint.

165.    Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC § 12132; *see also* 28 CFR § 35.

166.    Respondents are each a public entity subject to Title II of the ADA, 42 USC § 12131.

167.    K.B. is a person with a disability within the meaning of the ADA. 42 USC § 12102.

168.    Respondents intentionally violated K.B.'s rights under the ADA and the regulations promulgated hereunder by excluding her from participation in and denying her the benefits of Respondents' services, programs, and activities, and by subjecting her to discrimination in violation of 42 USC § 12132.

169.    Respondents otherwise intentionally discriminated against K.B. in violation of 42 USC § 12132.

170.    As a direct and proximate cause of Respondents' violation of the ADA, K.B. has suffered and continues to suffer educational, social, and behavioral impacts, and other injuries she will continue to suffer.

PLAINTIFFS 00002540

e.   **RESPONDENTS VIOLATED THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101** *et seq.*

171.    Petitioners incorporate by reference all previous paragraphs of the Complaint.

172.    PDCRA guarantees, as a civil right, the full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability. MCL 37.1102.

173.    PDCRA further prohibits educational institutions from "[d]iscriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids." MCL 37.1402.

174.    Respondents are each an educational facility within the meaning of MCL 37.1102 and an educational institution within the meaning of MCL 37.1401.

175.    K.B. has a disability as defined in MCL 37.1103.

176.    K.B.'s disabilities are unrelated to her ability to utilize and benefit from Respondents' services.

177.    Respondents discriminated against K.B. in the full utilization of or benefit from the services provided and rendered by Respondents due to K.B.'s disability.

178.    Respondents otherwise violated K.B.'s rights under PDCRA.

**VI.     PRAYER FOR RELIEF**

WHEREFORE, as a "proposed resolution of the problem" under 20 USC § 1415(b)(7)(A)(ii)(IV) and 34 CFR § 300.508(b)(6), Petitioners request that this Tribunal order the following relief, reserving the right to amend this list of proposed remedies based on the recommendations from their professional advisers:

PLAINTIFFS 00002541

A.    Find that Respondents violated state and federal law;

B.    Order compensatory education for K.B.;

C.    Order compensatory related services, including at a minimum social work services, for K.B.;

D.    Order the District to ensure that comprehensive educational evaluations are conducted for students in all suspected areas of eligibility and that information is obtained to allow the IEP team to determine all special education services and supports necessary for the student to make progress in light of their circumstances;

E.    Order training for District and KRESA staff regarding comprehensive educational evaluations;

F.    Order KRESA to ensure that its constituent districts engaged in comprehensive educational evaluations and provide eligible students with a FAPE;

G.    Enjoin the Respondents from implementing all policies and practices that violate or have the effect of violating the federal protected rights of Petitioner;

H.    Order MDE to implement a state-wide, proactive enforcement protocol for ensuring compliance with MDE's corrective action plans that includes, but is not limited to, a determination of whether the corrective action plan has resulted in providing the student with an educational program more "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," *Endrew F*, 137 S Ct at 999;

I.    Order MDE to hire and/or allocate the appropriate number of staff to ensure that corrective action plans are enforced and result in the changes prescribed;

PLAINTIFFS 00002542

J.      Order MDE to engage in proactive monitoring of corrective action plans, including substantive review of the facts and follow up with parents or guardians to review a child's current circumstances, to ensure compliance with federal and state law;

K.      Order MDE to exercise its authority under MARSE R 340.1855;

L.      Find that Petitioner is the prevailing party;

M.      Award Petitioner damages;

N.      Award Petitioner reasonable attorneys' fees and costs under 42 USC § 1988 and/or other applicable statues; and

O.      Any other relief deemed necessary.

Petitioners request any and all remedies available to them, pursuant to case law, statute, and equity. The IDEA expressly gives broad authority to hearing officers and courts to order appropriate remedies, without regard to whether the family specifically mentions every possible remedy that might be deemed appropriate by a hearing officer. "[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v Hood*, 327 US 678, 684 (1946), and the existence of a statutory right implies the existence of all necessary and appropriate remedies. *Sullivan v Little Hunting Park, Inc*, 396 US 229, 239 (1969) (citations omitted).

Respectfully submitted,

Dated: 2/11/2022  _____

By: _____
ID qnQ5aak3GbV1NrmFk3Xgf33v

H████ B███
Petitioner

PLAINTIFFS 00002543

Dated: February 11, 2022        By:

_____
Elizabeth K. Abdnour (P78203)
ELIZABETH ABDNOUR LAW, PLLC
1100 W. Saginaw Street, Suite 4A-2
Lansing, MI 48915
(517) 292-0067
elizabeth@abdnour.com

Erin H. Diaz (P80388)
Mitchell D. Sickon (P82407)
DISABILITY RIGHTS MICHIGAN
4095 Legacy Parkway
Lansing, MI 48911-4263
(517) 487-1755
ediaz@drmich.org
msickon@drmich.org

Jacquelyn Babinski (P83575)
MI AECRES
(231) 794-2379
jbabinski@miaecres.org
www.miaecres.org

*Attorneys for Petitioners*

PLAINTIFFS 00002544

## <u>PROOF OF SERVICE</u>

I have served a copy of Petitioner's Complaint and Request for Due Process Hearing under the IDEA upon the parties listed below via email only on this 11th day of February, 2022.  ***Please notify me if you would like to receive a hard copy of this document.***

 

 

_____
Elizabeth K. Abdnour (P78203)
Attorney at Law

Rikki Saunders
Director of Special Education
Kalamazoo Public Schools
1220 Howard St.
Kalamazoo, MI 49008
saundersrt@kalamazoopublicschools.net

Dave Campbell
Superintendent
Kalamazoo RESA
1819 East Milham Avenue
Portage, MI 49002
dave.campbell@kresa.org

Michael Rice
State Superintendent
Michigan Department of Education
608 W. Allegan Street
P.O. Box 30008
Lansing, MI 48909
RiceM6@michigan.gov

Michigan Department of Education
P.O. Box 30008
Lansing, MI 48909
MDE-MIComplaints@michigan.gov

Jordan Bullinger
Clark Hill
Attorney for Respondents
200 Ottawa Avenue, NW, Suite 500
Grand Rapids, MI 49503
jbullinger@clarkhill.com

PLAINTIFFS 00002545