# EXHIBIT 11

# MICHIGAN DEPARTMENT OF EDUCATION

*Office of Special Education*

February 2016 Report

## DISPUTE RESOLUTION PROGRAM REVIEW

Prepared by Pingora Consulting, LLC



## Objective

At the invitation of the Michigan Department of Education, Office of Special Education (OSE), the project is intended to assist OSE in developing and refining an integrated system of general supervision, focusing on the interconnection of special education monitoring, dispute resolution, annual determinations, technical assistance and professional development.

MDE_00001192

## Approach

Pingora Consulting, LLC worked closely with OSE staff to convene a series of stakeholder meetings, reviewed OSE policies and procedures, and considered dispute resolution data, as well as stakeholder input from over 70 meeting participants.  The outcome of the review is synthesized into this preliminary report.  A final report shall be issued at a later date.

## Introduction

OSE is responsible for special education general supervision pursuant to the Individuals with Disabilities Education Act (IDEA).  In order to meet this obligation, OSE must ensure that the requirements of IDEA are met, and that each educational program for children with disabilities administered in Michigan and meets the educational standards of the state. *34 C.F.R. §300.149.*

OSE commissioned this review in order to make improvements to its system of general supervision. The data reviews, interviews, stakeholder groups, findings and recommendations are intended to assist OSE in its efforts to improve dispute resolution and general supervision.

An integrated system of general supervision connects discrete components and creates information pathways between systems to fully inform general supervision.  All parts of the system provide critical information to OSE as it supervises the provision of special education on a statewide basis. The following graphic is a visual representation of the pathways between systems necessary for an integrated system of general supervision.

MDE_00001193



System of General Supervision

© Pingora Consulting, LLC 2016

MDE_00001194

This report will address the following components of general supervision system:

I.    Dispute Resolution System
  A.   Special Education Complaints
  B.   Special Education Due Process Hearings
  C.   Special Education Mediation
II.   Monitoring System
  A.   Selection Rubric
  B.   Determinations
  C.   Correction of Noncompliance

Recommendations will be offered to:

1.   Address IDEA compliance;
2.   Address stakeholder input; and
3.   Refine and improve the integration of various components of the general supervision system.

MDE_00001195

## I. DISPUTE RESOLUTION SYSTEM
## SPECIAL EDUCATION COMPLAINTS

The IDEA requires every state to have a special education complaint system.  The purpose of a complaint system is to resolve all special education complaints that meet the requirements in the federal regulations and allege a violation of special education laws, regulations, or rules.  *34 C.F.R. §§300.151 to 300.153.*  The state complaint system was created to resolve disputes between parents, other individuals, or organizations and a public school as a form of dispute resolution.  The state complaint procedures, which are under the direct control of OSE, provide a parent and a school district with mechanisms that allow them to resolve differences without having to resort to a more costly and cumbersome due process hearing.  *71 Federal Register 46606.*

The state complaint system can be used to resolve any complaint that meets the requirements of 34 C.F.R. §300.153, including complaints that allege a denial of a Free Appropriate Public Education (FAPE).  *71 Federal Register 46601.*  States may not have procedures that remove complaints about the provision of FAPE or any other allegation of a violation of IDEA from the jurisdiction of the state complaint system.  *U.S. Dep't. of Education, IDEA Part B Self-Assessment: Dispute Resolution* (November 2015).  The United States Department of Education advises that the broad scope of the state complaint system is critical to the state's exercise of its general supervision responsibilities.  *71 Federal Register 46601.*  The complaint system "is a powerful tool to identify and correct noncompliance." *Id.*

After a state complaint investigation, OSE must issue a written decision that addresses each allegation in the complaint and contains findings of fact, conclusions, and the reasons for its final decision.  This decision is a mandatory component of the state complaint system. *34 C.F.R. §300.152(a)(5).*  If the investigation determines that a school has failed to provide appropriate services under IDEA, OSE must direct the school to complete corrective action to address the needs of an individual named child or children, and address the "appropriate future provision of services for all children with disabilities." *34 C.F.R. §300.151(b).*  In light of the need to address the appropriate future provision of services for all children with disabilities, every OSE decision should be viewed as an opportunity to provide technical assistance to all other schools, districts, and public education entities.

The regulatory components of an integrated, compliant state system for complaint investigations are reviewed in detail below, accompanied by stakeholder feedback in each area, as well as findings based on the feedback received in conjunction with a detailed review of the current system.

MDE_00001196

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| **34 C.F.R. §300.151  Adoption of State Complaint Procedures** | | |
| (a) *General.* Each SEA must adopt written procedures for— | ▪ ISD lacks the objectivity to investigate. ▪ ISD staff support districts, provide TA, and investigate.  Conflicts result. ▪ ISD role as gate keeper creates conflict. ▪ ISD investigators are poorly trained. ▪ Clarifying call is used to expand issues or change issues from substantive to procedural. ▪ Preliminary report by ISD is different than final report issued by OSE. ▪ The OSE system is not technically consistent. ▪ Confusion over the way complaints are received. ▪ No process for when a complaint is actually received, i.e. date stamped. ▪ The complaint disappears if OSE and the school come to an agreement. ▪ Lack of trust in a fair process. ▪ All issues sifted down to procedural compliance. ▪ Parent's voice is minimized.  Fear of retribution. | OSE has written procedures adopted in August 2015.  The procedures have some inconsistencies with federal requirements. 1. OSE exceeds filing requirements by making a proposed resolution mandatory. The complainant must include "a proposed resolution of the problem **to the extent known and available to the party at the time the complaint is filed.**"  *34 C.F.R. §300.153(b)(4)(v).* 2. OSE jointly investigates with ISD staff, and conducts a clarifying call. 3. OSE permits the extension of the 60-day timeline to engage in an "informal meeting."  The 60-day timeline can be extended upon agreement of the parties to engage in mediation or other alternative means of dispute resolution. *34 C.F.R. §300.152(b)(1)(ii).*  An informal meeting does not constitute alternative dispute resolution. 4. OSE offers mediation to any complainant.  IDEA funded mediation is available to parent complainants only. *34 C.F.R. §300.152(a)(3)(ii).* 5. OSE permitted admission of noncompliance to resolve all or parts of a complaint.  OSEP guidance requires OSE to issue a decision, including findings, conclusions, and corrective action even in the case of an admission or voluntary corrective action.  *Letter to Chapman* (OSEP 2015). 6. OSE indicates the final decision is a public record.  IDEA requires all personally identifiable student information to be confidential absent parental consent. *34 C.F.R. §300.622.  Personally identifiable information* includes "other information that, alone or in combination, is linked or linkable to a specific student that would allow a |

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| | | reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." *34 C.F.R. §99.3.* If a state chooses to make complaint decisions available to the public, it must ensure that the confidentiality of any personally identifiable information in the decision is protected from unauthorized disclosure.  *Q & A on IDEA Dispute Resolution Procedures, Q. B-33* (OSEP 2013). |
| (1) Resolving any complaint, including a complaint filed by an organization or individual from another State, that meets the requirements of § 300.153 by— | ▪ Substantive complaints are screened out.<br>▪ Dismissed because parent didn't meet pleading burden.<br>▪ Substantive complaints modified to procedural issues.<br>▪ High pleading hurdle – too much information required to open an investigation.<br>▪ Not all issues are investigated. Many are screened out.<br>▪ Parents have to use "magic words" in order to have complaint investigated. | OSE has a large discrepancy between the number of complaints filed and the number investigated.  Possible reasons include:<br>• Informal screening out substantive complaints,<br>• Encouraging informal resolutions, or<br>• Causing or encouraging withdrawal of the complaint in order to participate in mediation.<br><br>There is a lack of consistency in investigatory process from internal OSE staff and ISD staff, creating the appearance of partiality and lack of independence.<br><br>OSE may not have procedures that remove complaints about FAPE or the identification, evaluation, or educational placement, or any other allegation of a violation of Part B or federal regulations, from the jurisdiction of the state complaint system.  OSE may not direct or require parents to request a due process hearing on these matters instead of using the state complaint process. *Part B Self Assessment: Dispute Resolution* (OSEP 2016). |

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| (i) Providing for the filing of a complaint with the SEA; and<br>(ii) At the SEA's discretion, providing for the filing of a complaint with a public agency and the right to have the SEA review the public agency's decision on the complaint; and | ▪ ISD lacks the objectivity to investigate.<br>▪ ISD staff support districts, provide TA, and investigate.  Conflicts result.<br>▪ ISD role as gate keeper creates conflict.<br>▪ ISD investigators are poorly trained. | OSE requires the complaint to be filed with the SEA, but conducts a joint investigation with ISD staff.  Concerns were noted regarding the impartiality of this process, as the ISD serves as a "gate keeper," which may result in discouraging use of the state complaint process. |
| (2) Widely disseminating to parents and other interested individuals, including parent training and information centers, protection and advocacy agencies, independent living centers, and other appropriate entities, the State procedures under §§ 300.151 through 300.153. | ▪ Website is hard to use.<br>▪ The Procedural Safeguards document is overwhelming.<br>▪ Procedures are not user friendly.<br>▪ Not accessible without the internet or assistance.<br>▪ Parents are unaware of the process.<br>▪ Geography limits access to system. No phone or internet means no access.<br>▪ Need more education on purpose of system. | The complaint investigation system is widely misunderstood, both in terms of purpose and process.<br><br>The OSE Procedural Safeguards Notice provides for additional uses of the state complaint system beyond special education and the federal requirements.<br><br>The system appears to be accessible and consumable for individuals with the means to access it.  However, barriers to accessibility exist for some of the most vulnerable populations, e.g. living in poverty, non English speaking, disenfranchised, etc. |
| (b) *Remedies for denial of appropriate services.* In resolving a complaint in which the SEA has found a failure to provide appropriate services, an SEA, pursuant to its general supervisory authority under Part B of the Act, must address— | ▪ There is no connection to other components of general supervision.<br>▪ Confusion over purpose of system – education, improvement, AND correction of noncompliance. | The complaint system does not consistently address substantive issues.<br><br>OSE and ISD staff encourage substantive disputes to be filed in the due process hearing system. |
| (1) The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and | ▪ Closer supervision of student level correction is needed.<br>▪ The school district should not be determining comp. ed.<br>▪ Comp. ed. not part of CAP.<br>▪ OSE finds that parents waive compensatory services. | Corrective action appears to address procedural, rather than substantive issues.<br><br>Student level corrective action lacks specificity.<br><br>Compensatory education determinations are relinquished to the IEP team. |
| (2) Appropriate future provision of services for all children with | ▪ Decisions don't serve as technical assistance for future applicability. | Complaint decisions do not appear to address the future provision of services for all children with disabilities, or inform |

MDE_00001199

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| disabilities. | ▪ System is based on compliance, not improving outcomes.<br>▪ CAP system does not get at the root cause of issues.  They repeat. | other components of general supervision. |
| **34 C.F.R. §300.152 Minimum State Complaint Procedures** | | |
| (a) *Time limit; minimum procedures.* Each SEA must include in its complaint procedures a time limit of 60 days after a complaint is filed under § 300.153 to— | ▪ It is unclear when filing of the complaint occurs.<br>▪ ISD staff has 30 days to conduct the investigation, OSE has 30 days to issue decision.  Imbalance of workload.<br>▪ Requesting mediation results in an automatic stay of 60-day day timeline. | OSE lacks a defined process for determining when complaints are received for the purpose of commencing the 60-day timeline. |
| (1) Carry out an independent on-site investigation, if the SEA determines that an investigation is necessary; | | |
| (2) Give the complainant the opportunity to submit additional information, either orally or in writing, about the allegations in the complaint; | ▪ Clarifying call results in amending (watering down) the issues.<br>▪ Clarifying call is usually the only contact with complainant. | OSE accepted voluntary resolution by a school district without involving the complainant, which may foreclose the complainant's right to submit additional information about the allegations in the complaint.  This practice has changed.  Even when voluntary resolution is proposed, OSE conducts an investigation.<br><br>OSE uses the "clarifying call" to broadly amend complaints.  OSE does not have a process to determine whether the new information constitutes a new complaint or serves to amend the existing complaint.  *71 Federal Register 46603.* |
| (3) Provide the public agency with the opportunity to respond to the complaint, including, at a minimum— | ▪ Far more complaints are filed than investigated.<br>▪ Need opportunity to work together. | The joint clarifying call between complainant, OSE and ISD staff is viewed as a way for OSE to<br>• Remove the substantive issues,<br>• Water down complex issues, and<br>• Encourage withdrawal of the complaint. |
| (i) At the discretion of the public agency, a proposal to resolve the complaint; and | ▪ Voluntary resolution closes many complaints. | Voluntary corrective action was accepted in lieu of issuing a decision with findings of fact, conclusions, and the reasons for OSE's final decision.  OSE has changed its procedures, and |

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| | | now issues a decision even when a district offers voluntary corrective action. |
| (ii) An opportunity for a parent who has filed a complaint and the public agency to voluntarily engage in mediation consistent with § 300.506; | ▪ Mediation means the complaint can't go forward.<br>▪ Mediation automatically extends the decision deadline.<br>▪ Mediation is offered instead of complaint investigation. | Mediation is not seen as a viable dispute resolution alternative, and the use of mediation is low in relation to the number of complaints.<br><br>Misinformation regarding mediation is likely a barrier to its effective use. |
| (4) Review all relevant information and make an independent determination as to whether the public agency is violating a requirement of Part B of the Act or of this part; and | ▪ If proof doesn't exist on paper, it won't be considered by OSE.<br>▪ Voice of the interviewee is not heard if no corresponding documentation exists.<br>▪ OSE fails to review all relevant material and speak with relevant individuals.<br>▪ No procedures for conducting an investigation. | OSE does not have an established practice for routine complaint investigations. |
| (5) Issue a written decision to the complainant that addresses each allegation in the complaint and contains— | ▪ The decisions are not easy to understand.<br>▪ Decisions address only procedural issues. | OSE no longer permits reconsideration. If reconsideration is permitted at any future point, it is critical that OSE enforce the corrective action originally ordered if the reconsideration period extends beyond the original 60-day deadline for a final decision until a reconsideration decision is issued. Corrective action may then be amended in the reconsidered decision. |
| (i) Findings of fact and conclusions; and<br>(ii) The reasons for the SEA's final decision. | ▪ Decisions don't always contain findings of fact or the reasons for the final decision.<br>▪ Decisions don't serve as technical assistance. | Decisions are difficult and confusing to read.  Violations are not clear, and correction of noncompliance is not specific to the student. |
| (b) *Time extension; final decision; implementation.* The SEA's procedures described in paragraph (a) of this section also must— | | |
| (1) Permit an extension of the time limit under paragraph (a) of this section only if— | | |
| (i) Exceptional circumstances exist with respect to a particular complaint; or | ▪ No uniform system of processing complaints.<br>▪ Timelines frequently not followed. | OSE permits over 20 extensions per year for exceptional circumstances. OSEP uses a very narrow definition of exceptional circumstances warranting an extension of the 60-day timeline. |

MDE_00001201

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| | | "OSEP has found that the following do not constitute exceptional circumstances that would warrant an extension of the 60-day time limit:  State staff shortages or heavy caseloads; school vacations or breaks; the use of mediation or alternative dispute resolution without agreement between the parent and public agency."  *Q & A on IDEA Part B Dispute Resolution Procedures (OSEP 2013).* |
| (ii) The parent (or individual or organization, if mediation or other alternative means of dispute resolution is available to the individual or organization under State procedures) and the public agency involved agree to extend the time to engage in mediation pursuant to paragraph (a)(3)(ii) of this section, or to engage in other alternative means of dispute resolution, if available in the State; and | ▪ Mediation automatically results in staying or extending the the 60-day timeline.<br>▪ Complainants are told they must withdraw complaint in order to participate in mediation.<br>▪ Complainants are discouraged from participating in mediation.<br>▪ Approach is to "work it out" so complaint is withdrawn or screened out. | OSE permits the extension of the 60-day timeline to engage in an "informal meeting."  The 60-day timeline can be extended upon agreement of the parties to engage in mediation or other alternative means of dispute resolution. *34 C.F.R. §300.152(b)(1)(ii).*  An informal meeting does not likely constitute alternative dispute resolution.<br><br>OSE provides a state system of IEP facilitation.  This is an under utilized option for informal dispute resolution. |
| (2) Include procedures for effective implementation of the SEA's final decision, if needed, including— | ▪ There is no oversight of the CAP.<br>▪ There is no system of verification.<br>▪ OSE accepts paper assurances of proof of compliance.<br>▪ CAPS are inconsistent and meaningless.<br>▪ CAPs are not sufficiently monitored for implementation.<br>▪ Case is closed before CAP is implemented.<br>▪ Internal training doesn't correct noncompliance.<br>▪ OSE does not ensure or independently verify correction.<br>▪ There is no system of graduated sanctions. | There appears to be lack of systematic verification of correction of noncompliance.<br><br>Corrective action is not always aligned to the violation, and appears directed primarily at procedural compliance. |
| (i) Technical assistance activities;<br>(ii) Negotiations; and | ▪ Decisions are not easily understood by districts. | OSE complaint decisions do not currently serve as technical assistance, meaning that decisions are not |

MDE_00001202

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| (iii) Corrective actions to achieve compliance. | ▪ Decisions don't serve as technical assistance.<br>▪ Internal training doesn't correct noncompliance.<br>▪ CAP doesn't change noncompliance.  It repeats. | thoroughly grounded in the regulations with reasons for findings or conclusions. |
| (c) *Complaints filed under this section and due process hearings under § 300.507 and §§ 300.530 through 300.532.* (1) If a written complaint is received that is also the subject of a due process hearing under § 300.507 or §§ 300.530 through 300.532, or contains multiple issues of which one or more are part of that hearing, the State must set aside any part of the complaint that is being addressed in the due process hearing until the conclusion of the hearing. However, any issue in the complaint that is not a part of the due process action must be resolved using the time limit and procedures described in paragraphs (a) and (b) of this section. | ▪ The due process system is not accessible.<br>▪ Parents do not understand the difference between complaints and due process. | Due process hearings are infrequently used to address disputes in Michigan. This may be positive if it relates to the use of the state complaint system in lieu of the more costly due process system. It may also be reason for concern if consumers do not see the due process hearing system as accessible or viable. |
| (2) If an issue raised in a complaint filed under this section has previously been decided in a due process hearing involving the same parties— | ▪ The due process hearing system is too complicated.<br>▪ The due process hearing system is inaccessible to most parents. | The due process hearing system is addressed in more detail in the next section of this report. |
| (i) The due process hearing decision is binding on that issue; and<br>(ii) The SEA must inform the complainant to that effect. | | |

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| (3) A complaint alleging a public agency's failure to implement a due process hearing decision must be resolved by the SEA. | | |
| **34 C.F.R. §300.153 Filing a Complaint.** | | |
| (a) An organization or individual may file a signed written complaint under the procedures described in §§ 300.151 through 300.152. | | OSE accepts complaints from individuals or organizations. |
| (b) The complaint must include— | | |
| (1) A statement that a public agency has violated a requirement of Part B of the Act or of this part; | ▪ High pleading hurdle.<br>▪ OSE fails to accurately state the complainant's allegations<br>▪ OSE does not address systemic violations. | The lack of clear complaint investigation procedures has resulted in lack of uniformity as to the quantity and type of information constitutes a state complaint.  Internally, OSE staff have varying standards and practices. |
| (2) The facts on which the statement is based; | ▪ Complainant required to produce evidence of violations before complaint is investigated. | There is some question as to whether OSE's complaint system creates a burden of proof for complainants over and above the regulatory requirements. |
| (3) The signature and contact information for the complainant; and | | |
| (4) If alleging violations with respect to a specific child— | | |
| (i) The name and address of the residence of the child;<br>(ii) The name of the school the child is attending;<br>(iii) In the case of a homeless child or youth (within the meaning of section 725(2) of the McKinney-Vento Homeless Assistance Act, available contact information for the child, and the name of the school the child is attending;<br>(iv) A description of the | ▪ The form is difficult to complete.<br>▪ Unable to access the model form without internet access.<br>▪ Parents don't understand what issues are complainable.<br>▪ High pleading hurdle.  OSE requires large amount of information and documentation to open a complaint. | OSE procedures and the model complaint form require a proposed resolution of the problem.  This requirement exceeds the federal requirements, as a proposed resolution is required "to the extent known."<br><br>Widespread misunderstanding exists with regard to the quantity and quality of information a complainant must produce in order for the complaint to be investigated.<br><br>OSE lacks consistency in its practice of determining if a complaint meets the minimum requirements.  In some cases, OSE requires more information that is required.  This practice results in an |

| IDEA Part B Requirement | Stakeholder Feedback* | Findings Based on Review and Feedback |
|---|---|---|
| nature of the problem of the child, including facts relating to the problem; and<br>(v) A proposed resolution of the problem to the extent known and available to the party at the time the complaint is filed. | | impermissible burden on the complainant.<br><br>Once a complaint meeting the requirements of 300.153 is received, OSE must commence an investigation. |
| (c) The complaint must allege a violation that occurred not more than one year prior to the date that the complaint is received in accordance with § 300.151. | | Lack of a clear system of filing and processing complaints may result in confusion regarding the one year limitations period. |
| (d) The party filing the complaint must forward a copy of the complaint to the LEA or public agency serving the child at the same time the party files the complaint with the SEA. | | OSE routinely and by rule provides the school district with a copy of the complaint, eliminating barriers or burdens for the complainant. |

*Stakeholder comments are duplicated in applicable sections.

## I. DISPUTE RESOLUTION SYSTEM
## SPECIAL EDUCATION DUE PROCESS HEARINGS

The IDEA requires every state to have a special education due process hearing system.  The due process hearing system is viewed as more formal, costly, and cumbersome than the state complaint system. *71 Federal Register 46606.*  Access to the due process hearing system is an important procedural safeguard afforded to parents by the IDEA. *34 C.F.R. §300.504(c)(5).*  It is an important part of a state's system of general supervision.

OSE must have a process in place to ensure correction of all noncompliance in a due process hearing decision, and to ensure that decisions are implemented within the timeline specified by the hearing officer. *Q & A on IDEA Part B Dispute Resolution Procedures, Question C-26* (OSEP 2013), and *Part B Self Assessment:  Dispute Resolution* (OSEP 2016).  A hearing officer's findings of noncompliance provide critically relevant information to OSE to inform its monitoring system, influence local district level determinations pursuant to 34 C.F.R. §§300.600 and 300.604, and inform current statewide technical assistance needs.

OSE does not currently use data from due process hearings to inform its system of general supervision.  Although this review focused on the complaint system, it is important to incorporate other components of general supervision into the overall recommendations.

## I. DISPUTE RESOLUTION SYSTEM
## SPECIAL EDUCATION MEDIATION

The IDEA requires OSE to establish and implement procedures to allow parties to resolve disputes involving any matter in special education through mediation. *34 C.F.R. §300.506(a).*  Mediation must be available to parents and school districts after a state complaint is filed, after a due process hearing request is filed, and as an option to resolve disputes before filing any type of complaint. Resolving disputes between parties at the local level through the use of mediation (or other means of alternative dispute resolution) will be less adversarial and less time consuming and expensive than a state complaint investigation or due process hearing, and students with disabilities will be the beneficiaries of a local level resolution. *71 Federal Register 46603.*  Mediation is intended to be broadly available at no cost to the parents or school district in an effort to resolve disputes as informally and early as possible.

OSE currently utilizes the Michigan Special Education Mediation Program (MSEMP) as a resource for mediation.  However, the rate at which parties to a complaint select mediation as an option is quite low in comparison to states with similar populations.  For example, in FY2014 mediation requests for all non due process hearing disputes averaged approximately 15% in relation to the total number of special education complaints.  In Georgia, the average was 32%, and in North Carolina, the average was 27%, approximately double the rate of mediation requests than in Michigan.  (For more information regarding similar size states, refer to the Infographic in Appendix

1 at the end of this report.)   Nationally, the percentage of mediations requested outside of the due process hearing system is closer to 50% of the total number of state complaints.  *CADRE IDEA Dispute Resolution Data Summary for U.S. and Outlying Areas* (2013-2014).  Michigan's low number of special education mediations must be critically analyzed to ascertain potential barriers.  The Special Education Reform Taskforce convened by the Lt. Governor found with regards to special education mediation that "many educators, parents and guardians do not know of its existence or are intimated when lawyers participate in mediation." *Special Education Reform Taskforce*, p. 11 (January 2016).  Stakeholders reported that agreeing to participate in mediation automatically meant that the complaint investigation ceased.  Further, stakeholders reported the belief that the complaint must be withdrawn in order to participate in mediation.  These misconceptions likely contribute to Michigan's low special education mediation numbers, which further results in a disproportionately high number of complaint investigations and delays in resolving concerns on behalf of students.

## II. MONITORING SYSTEM SELECTION RUBRIC

Each educational program for students with disabilities within the state must be under the general supervision of OSE. 34 C.F.R. §300.149(a)(2).  Monitoring is an essential component of any general supervision process.  IDEA requires states to monitor the implementation of Part B and annually report on performance under this part.   The primary focus of the state's monitoring activities must be on: (1) improving educational results and functional outcomes for all children with disabilities; and (2) ensuring that public agencies meet the program requirements under Part B of the Act, with a particular emphasis on those requirements that are most closely related to improving educational results for children with disabilities. *34 C.F.R. §300.600.*  Consistent with these requirements, monitoring systems should focus on information and data that most directly relate to or influence student performance, education results, and functional outcomes for students with disabilities.  States should work to incorporate multiple sources of information, including compliance data from dispute resolution, into how districts are selected for monitoring.

OSE does not currently utilize dispute resolution data to inform local district monitoring selection.  Using dispute resolution data in conjunction with other data creates a more robust system of monitoring selection criteria.  The disconnect of dispute resolution data from the selection rubric for local monitoring may contribute to long term or systemic noncompliance that remains unaddressed by OSE.

MDE_00001207

## II. MONITORING SYSTEM
### LOCAL DETERMINATIONS

Each state must use the targets established in the state's performance plan under §300.601 and §300.600(d) to analyze the performance of each Local Education Agency (LEA). *34 C.F.R. §300.602.* The performance of each LEA on the targets in the state's performance plan must be reported annually. *34 C.F.R. §300.602(b)(A).* Additionally, states must make annual determinations on the performance of LEAs. *34 C.F.R. §300.600(a)(2).* Although each state has discretion in making annual determinations on the performance of LEAs, the IDEA specifies, at a minimum, a state's annual determination process must include consideration of the follow: an LEAs performance on all SPP compliance indicators (e.g. Indicators 9, 10, 11, 12, 13, 15, 16, 17 and 20), whether an LEA submitted valid and reliable data for each indicator, LEA specific audit finds, and **any uncorrected noncompliance from any source.** (Emphasis added.) *73 Federal Register 73021.*

It is not clear that OSE considers dispute resolution noncompliance data in making local determinations. Dispute resolution data represents a critical component in OSE's analysis of an LEA's performance.

## II. MONITORING SYSTEM
### CORRECTION OF NONCOMPLIANCE

In exercising is monitoring responsibilities, a state must ensure that when it identifies noncompliance with the requirements of Part B by LEAs, the noncompliance is corrected as soon as possible, and in no case later than one year after the state's identification of the noncompliance. *34 C.F.R. §300.600(e.)* Once noncompliance has been identified, it is the responsibility of OSE to track and monitor the implementation of corrective action activities ordered as result of findings of noncompliance. This responsibility includes findings from state complaints and due process hearings. Strong general supervision systems must have the ability to correct any finding of LEA noncompliance regardless of how the noncompliance was identified. Closely monitoring the correction of noncompliance is paramount to ensuring that children with disabilities are provided with the FAPE and the opportunity to progress towards meeting IEP goals and statewide achievement standards.

States must ensure that districts correct noncompliance even if the violation relates to a single student or is merely a procedural violation of the IDEA, and not a substantive denial of FAPE. The state must also require districts to correct any underlying systemic practice that gave rise to a violation. *Letter to Copenhaver* (OSEP 2008).

Also important is the verification of correction of noncompliance. General Supervision systems must include a method of verifying whether or not the corrective action plan activities have been implemented, and whether the results of such corrective action have brought the LEA into

compliance with Part B.    This obligation is resolute for noncompliance found through monitoring or dispute resolution activities.

As noted in OSEP's prior monitoring reports and verification visit letters, in order to demonstrate that previously identified noncompliance has been corrected, OSE must:

- Account for all instances of noncompliance, including noncompliance identified: (a) through the State's on-site monitoring system or other monitoring procedures such as self-assessment; (b) through the review of data collected by the State, including compliance data collected through a State data system; and (c) by the Department;
- Identify where (in what local educational agencies (LEAs) or early intervention services (EIS) programs) noncompliance occurred, the percentage level of noncompliance in each of those sites, and the root cause(s) of the noncompliance;2
- If needed, change, or require each LEA or EIS program to change, policies, procedures and/or practices that contributed to or resulted in noncompliance; and
- Determine, in each LEA or EIS program with identified noncompliance, that the LEA or EIS program is correctly implementing the specific regulatory requirement(s). This must be based on the State's review of updated data such as data from subsequent on-site monitoring or data collected through a State data system.

*Letter to Chief State School Officers* (OSEP 2008)


## Recommendations

Recommendations are based on IDEA compliance standards, OSEP guidance, and a convergence of data gleaned from a detailed review of OSE's current system of general supervision, staff interviews and stakeholder comments.

<u>Recommendation #1</u>

Develop a practitioner's guide for complaint investigation addressing, at a minimum, the following points:

1. The state complaint system must be able to resolve any disputes alleging a violation of IDEA, implementing federal regulations, or state special education laws or rules, including procedural or substantive allegations, and child specific or systemic allegations.
2. OSE should review its model forms for regulatory compliance and ease of use.
3. OSE must delineate the complaint filing process, including when the complaint is considered filed or received, and how the complaint is assigned to an investigator.
4. A filed complaint must be reviewed for procedural sufficiency based on the requirements of 34 C.F.R. §300.153, ensuring that no additional burdens are placed on complainants.
5. Issues are determined based on the allegations in the complaint.  The complainant must be provided the opportunity to provide additional information, either orally or in writing, about the allegations in the complaint.
6. Mediation should be encouraged as a less formal dispute resolution tool.   However, mediation cannot be used to deny or delay the complaint investigation process.  Mediation

affects the timeline only upon the agreement of the parties to delay the complaint investigation for the purpose of engaging in mediation.

7. The assigned complaint investigator must request and review data relevant to the allegations in the complaint, interview relevant parties, as needed, about the allegations in the complaint, conduct an onsite investigation if needed to determine facts critical to the state's decision, and review sufficient information upon which to base findings of fact and conclusions using a data convergence approach (more than one data source supports the investigator's conclusions).  Corrective action, if any, must be time certain and appropriate to remedy correction for any named student and also the appropriate future provision of special education services for all children with disabilities.

8. The assigned investigator must prepare a draft report utilizing OSE's decision template.

9. The investigator and OSE administrators should debrief on the contents of the report and the reasons for the conclusions.

10. OSE issues the final decision within the 60-day timeline.  Timelines may be extended only for exceptional circumstances consistent with OSEP guidance.

11. Closely follow timely correction of noncompliance and determine the type of verification needed to ensure correction.

## Recommendation #2

Encourage the use of mediation in all special education disputes.

1. Educate the public about mediation as an effective early dispute resolution tool.

2. Ensure that mediators are specially trained in IDEA requirements and IDEA dispute resolution.

3. Protect a parent's right to proceed with a complaint investigation while contemporaneously engaging in mediation.

4. Ensure that mediation is not used to deny or delay the use of any other component of the state's dispute resolution system.

## Recommendation #3

Use data from special education complaints and due process hearings to inform general supervision.

1. Track the issues investigated in state complaints and issues heard by a due process hearing officers in order to
   a. Inform the monitoring system by identifying critical areas of potential noncompliance across the state for the purpose of determining monitoring priorities;
   b. Develop a system of targeted program or district monitoring in the event of systemic noncompliance; and

MDE_00001210

    c. Target technical assistance and professional development to current compliance challenges across the state.

2. Use the number, frequency, and severity of complaints as part of the risk rubric or monitoring selection process utilized by OSE to identify the districts that will be monitored.

3. Use monitoring to follow long term corrective action to ensure appropriate future provision of services for all children with disabilities.

4. Consider including findings of noncompliance resulting from dispute resolution as part of the local determination process.

### Recommendation #4

1. Give consideration to the establishment of a toll free number for dispute resolution, and possible points of access to the dispute resolution system without the benefit of internet access.

2. Update the Michigan Procedural Safeguard Notice in order to
    a. Use as parent friendly language as possible without altering the substance of the document;
    b. Clarify the dispute resolution mechanisms and processes; and
    c. Meet all other regulatory requirements.

3. Consider the development of IDEA compliant quick reference guides to supplement the Procedural Safeguards Notice.

### Recommendation #5

1. Provide targeted technical assistance to complaint investigators and mediators regarding the requirements of IDEA, appropriate investigatory techniques and standards, appropriate mediation techniques and standards, and the expectations of OSE for timely, thorough, professional complaint investigations and mediations.

2. Provide targeted technical assistance to monitors and state staff on a comprehensive system of general supervision, addressing noncompliance from all sources, and IDEA compliance tied to improving outcomes for students with disabilities.

*This report is respectfully submitted to OSE in conclusion of the program review.*

Date: March 14, 2016

| | |
|---|---|
| Lenore Knudtson | Stephanie Weaver |

MDE_00001211