# EXHIBIT 12

# Michigan Department of Education

Office of Special Education

michigan.gov/mde



# Dispute Resolution Program Review

February 2021



 Prepared by
Pingora Consulting, LLC

MDE_00001212

# CONTENTS

*Introduction* ................................................................................................................ *3*

  Purpose and Process ................................................................................................ 3

  Background ................................................................................................................ 4

  Program Requirements ............................................................................................ 6

*Use of Dispute Resolution* ........................................................................................ *9*

  Dispute Resolution Options: Rate of Use Per 10K .................................................. 9

    Mediation .............................................................................................................. 10

    State Complaints .................................................................................................. 12

    Due Process Hearings .......................................................................................... 14

*Then and Now* ............................................................................................................ *16*

  Recommendations from the 2016 Program Review .............................................. 16

    2016 Recommendation #1 .................................................................................... 16

    2020 Review of Progress from Recommendation #1 ........................................... 17

    2016 Recommendation #2 .................................................................................... 18

    2020 Review of Progress from Recommendation #2 ........................................... 19

    2016 Recommendation #3 .................................................................................... 20

    2020 Review of Progress from Recommendation #3 ........................................... 20

    2016 Recommendation #4 .................................................................................... 22

    2020 Review of Progress from Recommendation #4 ........................................... 22

    2016 Recommendation #5 .................................................................................... 24

    2020 Review of Progress from Recommendation #5 ........................................... 24

*Summary of Stakeholder Comment: Spring 2020* ................................................... *25*

  Topic Area: System Changes Since 2016 ............................................................... 25

  Topic Area: Special Education Dispute Resolution System .................................... 26

  Topic Area: Special Education State Complaint System ........................................ 27

  Topic Area: Special Education Mediation System ................................................. 28

  Topic Area: Special Education Due Process Hearing System ................................. 29

*Opportunities for Continued Improvement* ............................................................. *30*

*In Conclusion* ............................................................................................................ *33*

*Appendix A: GAO Report November 2019* ................................................................ *34*

# Introduction

**3**

## Purpose and Process

This report examines the current dispute resolution system as a component of a general supervisory system of the Michigan Department of Education (MDE), Office of Special Education (OSE).  Under the Individuals with Disabilities Education Act (IDEA), each State Education Agency (SEA) must make available and implement dispute resolution options as mandated by Part B of the IDEA, federal regulations, and state law and rule.  MDE OSE commissioned this review in order to evaluate changes since the 2016 review, assess current system effectiveness, and receive recommendations to facilitate ongoing improvement.

The review included information gathering activities conducted over several weeks in the spring of 2020.  The process commenced with a survey sent to stakeholders located throughout the state.  A total of 69 individuals responded to the survey, including public school employees, intermediate school district (ISD) staff, advocates, parents, and attorneys.

In March 2020, the MDE OSE hosted a series of focus group sessions, in which a facilitated conversation was used to gather input from invited participants.  Participants included parents, advocates, representatives from IDEA grant funded programs (mediation & parent information), ISD staff and local district staff.  In addition, the MDE OSE staff offered perspective on the current state of the system including implementation challenges, a description of staff changes, and current trends in dispute resolution.  The program review included an examination of current MDE OSE guidance documents and information presented to the special education field.  It is important to note that the COVID-19 pandemic's full force was felt during the onsite review.  Public education changed from an onsite, face-to-face model to schools being closed, evolving to instruction offered through distance learning using virtual platforms and sending home materials.  After a period of time, many schools opened using a hybrid model combining virtual and in-person learning.  Although the uncertainties of delivering public education services to students with disabilities caused by the COVID-19 pandemic delayed the issuance of the report, it also permitted a review of the general supervision and dispute resolution systems under extreme stress caused by the extraordinary and unprecedented health crisis.

A careful analysis was conducted of the vast and wide variety of material that was obtained through the information gathering process.  Consideration was given to multiple perspectives and recommendations were grounded in requirements and a convergence of data.  That is to say more weight was given to those areas where multiple sources of information converged to affirm a strength

**4**

of the system or area of general supervision needing improvement.  The final section of this review outlines prioritized recommendations for continued systems development.

# Background

In 2016, the MDE OSE commissioned an independent review of its systems of special education general supervision with a focus on dispute resolution.  Pingora Consulting, LLC conducted the review, comprised of stakeholder meetings and input, system reviews, and onsite interviews.  The 2016 review resulted in confirmation of components that worked well and recommendations for improvement.  MDE OSE released the report to the public, encouraging transparency and collaboration with the field.

Four years later, Pingora Consulting, LLC returned to MDE OSE to conduct a follow-up review, permitting a longer view toward the overall health of the dispute resolution system as a component of general supervision, and facilitating an in-depth review of system changes and improvements since the 2016 review.  The report compares the special education dispute resolution system as a component of general supervision in 2016 to its current state, analyzing trends, improvements, or areas of ongoing need.  The outcomes and recommendations provide the MDE OSE with benchmarks and recommendations for ongoing improvement.

The MDE OSE has worked side by side with stakeholders in the special education community to improve its system of general supervision, including dispute resolution.  Through this process, the MDE OSE refined its system of general supervision, aligned the roles of the various public agencies providing services to students with disabilities with legal requirements and state standards, and clarified the oversight structure consistent with the guidance from the Office of Special Education Programs (OSEP) regarding the responsibilities of the ISDs located throughout the state.  The following graphic depicts the hierarchy of authority and responsibility consistent with Part B of the IDEA.



**IDEA Supervision and Funding**

After sufficient time for previous improvements to take root and develop into firmly embedded systemic alignment between the IDEA, federal regulations, and Michigan statutes and rules, MDE OSE is conducting a review of its dispute resolution system to ensure its effectiveness and identify areas of potential improvement.  The review and recommendations of this report will help guide MDE OSE's ongoing commitment to improving outcomes for students with disabilities through fulfillment of its general supervisory obligations.

MDE_00001216

**6**

# Program Requirements

The purpose of the Individuals with Disabilities Education Act (IDEA) is to ensure that all eligible children with disabilities have available to them a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living;  to ensure that the rights of children with disabilities and their parents are protected; to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities; and to assess and ensure the effectiveness of efforts to educate children with disabilities. *See 34 C.F.R §300.1.*

Under IDEA, the United States Department of Education (DOE) awards funds to each state educational agency (SEA), which in turn provides funds to local educational agencies. As a condition of accepting IDEA funds, states are required to monitor the implementation of Part B services for school aged students age 3 through 21. (Michigan extends the upper age limit for eligibility to age 26.) States must have policies and procedures in effect that are consistent with IDEA requirements, including obligations related to procedural safeguards and due process procedures.

The IDEA and implementing federal regulations provide a system of dispute resolution to assist parents, concerned persons, and public agencies to address concerns and resolve disagreements. While building, deploying, and refining systems of dispute resolution, it is important to keep in mind the system of general supervisory authority pursuant to IDEA:

**GENERAL SUPERVISION (***34 C.F.R. §300.149.***)**

The MDE OSE is responsible for special education general supervision pursuant to the IDEA.  In order to meet this obligation, the MDE OSE must ensure that the requirements of IDEA are met, and that each educational program for children with disabilities administered in Michigan meets the educational standards of the state.

An integrated system of general supervision connects discrete components and creates information pathways between systems to fully inform general supervision.  All parts of the system provide critical information to the MDE OSE as it supervises the provision of special education on a statewide basis. The following graphic is a visual representation of the pathways between components necessary for an integrated system of general supervision. Additionally, the results of these processes are used to inform the SEA's (MDE OSE) overarching responsibilities of general supervision.

MDE_00001217

**7**



The MDE OSE built and deployed an effective, accessible dispute resolution system for IDEA related disputes.  Most importantly, MDE OSE continues on a path of refinement of its system in order to fulfill the purpose of the IDEA.  Every state that accepts federal funds through Part B of the IDEA is required to have a system of dispute resolution comprised of the following components:

## MEDIATION

The IDEA requires the MDE OSE to establish and implement procedures to allow parties to resolve disputes involving any matter in special education through mediation.  *34 C.F.R. §300.506(a).*  Mediation must be available to parents and school districts after a state complaint is filed, after a due process hearing request is filed, and as an option to resolve disputes before filing any type of complaint.  Resolving disputes between parents and schools at the local level through mediation (or other means of alternative dispute resolution) is less adversarial, less time consuming, and less expensive than a state complaint investigation or due process hearing.  Students with disabilities and their parents are the beneficiaries of a local level resolution.  *71 Federal Register 46603.*  Mediation is intended to be broadly available and at no cost to the parents or school district in an effort to resolve disputes as informally and early as possible.

**8**

## STATE COMPLAINT

The broad authority of IDEA requires every state to have a special education complaint system.  The purpose of a complaint system is to resolve all special education complaints that meet the requirements in the federal regulations and allege a violation of special education laws, regulations, or rules.  *34 C.F.R. §§300.151 to 300.153.*  The state complaint system is available to resolve disputes between parents, other individuals, or organizations and a public school through an impartial investigation conducted by MDE OSE.  The state complaint procedures are under the direct control of the MDE OSE and are an integral part of the state's system of general supervision.  For parents, the state complaint system offers a system to address concerns without having to resort to a more costly and cumbersome due process hearing.  *71 Federal Register 46606.*

The state complaint system can be used to resolve any complaint that meets the requirements of 34 C.F.R. §300.153, including complaints that allege a denial of a FAPE or challenge an eligibility determination, even though those types of substantive complaints had historically been resolved through due process hearings.  *71 Federal Register 46601*, *Dispute Resolution Procedures Under Part B of the IDEA* (OSEP 2013).  States may not have procedures that remove complaints about the provision of FAPE or any other allegation of a violation of IDEA from the jurisdiction of the state complaint system to any other component of the special education dispute resolution system.  *U.S. Dep't. of Education, IDEA Part B Self-Assessment:  Dispute Resolution* (November 2015).  The United States Department of Education advises that the broad scope of the state complaint system is critical to the state's exercise of its general supervision responsibilities.  *71 Federal Register 46601.*  The complaint system is intended to be "a powerful tool to identify and correct noncompliance."  Id.

## DUE PROCESS COMPLAINT

The IDEA requires every state to have a special education due process hearing system.  The due process hearing system is viewed as more formal, costly, and cumbersome than the state complaint system. *71 Federal Register 46606.*  The IDEA is clear that a parent or public agency may file a due process complaint on any matter relating to the identification, evaluation, educational placement, or the provision of FAPE to a child.  *71 Federal Register 46696.*  Access to the due process hearing system is an important procedural safeguard afforded to parents by the IDEA.  *34 C.F.R. §300.504(c)(5).*  The decisions of due process provide valuable information to inform the state's system of general supervision.

After a state complaint investigation, the MDE OSE must issue a written decision that addresses each allegation in the complaint and contains findings of fact, conclusions, and the reasons for its final decision.  This decision is a mandatory component of the state complaint system.  *34 C.F.R. §300.152(a)(5).*  If the investigation determines that a school has failed to provide appropriate services under IDEA, the MDE OSE must direct the school to complete corrective action to address the needs of an individually named child or children and address the "appropriate future provision of services for all children with disabilities."  *34 C.F.R. §300.151(b).*  In light of the need to address the appropriate future provision of services for all children with disabilities, every MDE decision should be viewed as an opportunity to provide technical assistance to all other schools, districts, and public education entities.

# USE OF DISPUTE RESOLUTION:  The Big Picture

## Dispute Resolution Data Over Time



## Dispute Resolution Options: Rate of Use per 10K

The following charts depict the rate of use per 10,000 students in Michigan from the 2008-2009 through 2018-2019 school years using the color code below.  Each of the three areas are analyzed and a separate graph and written chart is included for review.



Prepared by CADRE - Contact: cadre@directionservice.org

**MEDIATION**



**11**

| Mediations | Michigan | | Comparator 50 States | |
|---|---|---|---|---|
| | Number Reported | Events Per 10K | Events Per 10K | Number Reported |
| 2018-19 | | | | |
| Mediation Requests Total | 197 | 9.9 | 15.5 | 11,053 |
| Mediations Held | 154 | 7.7 | 9.3 | 6,657 |
| Total Mediation Agreements | 127 | 6.4 | 6.2 | 4,423 |
| 2017-18 | | | | |
| Mediation Requests Total | 152 | 7.6 | 16.3 | 11,268 |
| Mediations Held | 122 | 6.1 | 9.4 | 6,472 |
| Total Mediation Agreements | 99 | 5.0 | 6.1 | 4,214 |
| 2016-17 | | | | |
| Mediation Requests Total | 142 | 7.2 | 16.0 | 10,634 |
| Mediations Held | 97 | 4.9 | 9.3 | 6,215 |
| Total Mediation Agreements | 76 | 3.8 | 6.0 | 3,977 |
| 2015-16 | | | | |
| Mediation Requests Total | 102 | 5.2 | 12.3 | 8,227 |
| Mediations Held | 71 | 3.6 | 9.4 | 6,263 |
| Total Mediation Agreements | 58 | 2.9 | 6.2 | 4,127 |

## SUMMARY

The use of mediation as an early dispute resolution tool has steadily increased since 2015-16. Although the frequency of use still lags in a national comparison, it is important to note that agreement rates are equivalent to the national rates.  The increasing rates of mediation are a positive reflection of the improvements undertaken by MDE OSE and may reflect increased confidence in the mediation system as well as the roster of mediators serving parents and students with disabilities.

**STATE COMPLAINT**



**13**

| Written State Complaints | Michigan | | Comparator | |
| --- | --- | --- | --- | --- |
| | | | 50 States | |
| | Number Reported | Events Per 10K | Events Per 10K | Number Reported |
| 2018-19 | | | | |
| Written State Complaints Filed | 214 | 10.7 | 7.8 | 5,533 |
| Reports Issued Total | 171 | 8.6 | 5.1 | 3,619 |
| Reports with Findings | 168 | 8.4 | 4.7 | 3,337 |
| 2017-18 | | | | |
| Written State Complaints Filed | 197 | 9.9 | 7.7 | 5,320 |
| Reports Issued Total | 140 | 7.0 | 5.0 | 3,472 |
| Reports with Findings | 117 | 5.9 | 3.1 | 2,129 |
| 2016-17 | | | | |
| Written State Complaints Filed | 215 | 10.9 | 7.8 | 5,195 |
| Reports Issued Total | 163 | 8.2 | 5.2 | 3,465 |
| Reports with Findings | 120 | 6.1 | 3.0 | 2,010 |
| 2015-16 | | | | |
| Written State Complaints Filed | 274 | 13.9 | 8.0 | 5,301 |
| Reports Issued Total | 200 | 10.1 | 4.9 | 3,284 |
| Reports with Findings | 165 | 8.4 | 3.2 | 2,154 |

**SUMMARY**

State complaints continue to be an important resource for resolving disputes regarding potential IDEA noncompliance.  Although the aggregate number of complaints remains in the downward trend since 2015-2016, the number of complaints per ten thousand students continues to trend above the national average.  Viewed in perspective, the rates may remain higher than the national average due, at least in part, to public confidence in the MDE OSE's complaint investigation system.  It is also likely that more Michigan families utilize the state complaint system over the due process hearing system than the national average.  Disputes are being resolved and noncompliance corrected in the less litigious model of the state complaint system.

MDE_00001224

## DUE PROCESS HEARING



| Due Process Hearings | Michigan | | Comparator | |
| --- | --- | --- | --- | --- |
| | | | 50 States | |
| | Number Reported | Events Per 10K | Events Per 10K | Number Reported |
| 2018-19 | | | | |
| Due Process Complaint Filed | 75 | 3.8 | 27.0 | 19,224 |
| Resolution Meetings Held | 33 | 1.7 | 17.8 | 12,653 |
| Resolution Meeting Agreements | 18 | 0.9 | 1.8 | 1,274 |
| Fully Adjudicated Hearings | 5 | 0.3 | 2.6 | 1,830 |
| 2017-18 | | | | |
| Due Process Complaint Filed | 79 | 4.0 | 26.0 | 18,001 |
| Resolution Meetings Held | 32 | 1.6 | 14.7 | 10,187 |
| Resolution Meeting Agreements | 15 | 0.8 | 1.8 | 1,253 |
| Fully Adjudicated Hearings | 7 | 0.4 | 1.9 | 1,286 |
| 2016-17 | | | | |
| Due Process Complaint Filed | 72 | 3.6 | 24.3 | 16,175 |
| Resolution Meetings Held | 35 | 1.8 | 13.7 | 9,107 |
| Resolution Meeting Agreements | 15 | 0.8 | 2.2 | 1,458 |
| Fully Adjudicated Hearings | 1 | 0.1 | 1.6 | 1,099 |
| 2015-16 | | | | |
| Due Process Complaint Filed | 69 | 3.5 | 26.0 | 17,325 |
| Resolution Meetings Held | 41 | 2.1 | 11.9 | 7,936 |
| Resolution Meeting Agreements | 21 | 1.1 | 2.1 | 1,423 |
| Fully Adjudicated Hearings | 3 | 0.2 | 1.2 | 833 |

## SUMMARY

Due process hearings continue to be significantly underutilized compared to the national rates. The low use rates may be reflective of Michigan families using the less litigious route of state complaint investigation rather than the more expensive due process hearing, or it may be emblematic of the public's lack of confidence in the due process hearing system, a sentiment captured during the 2016 focus groups. MDE OSE may want to consider a deeper analysis of the reasons for the significant under-utilization of this important IDEA safeguard.

# THEN and NOW: 2016 Summary and 2020 Review

The evaluators reviewed recommendations from 2016, compared them to current stakeholder concerns and the current dispute resolution system to provide a longitudinal view of progress and opportunities for continued growth.

## Recommendations from the 2016 Program Review

Recommendations were based on IDEA compliance standards, OSEP guidance, and a convergence of data gleaned from a detailed review of MDE OSE's 2016 system of general supervision, staff interviews and stakeholder comments.

## 2016 Recommendation #1

Develop a practitioner's guide for complaint investigation addressing, at a minimum, the following points:

- The state complaint system must resolve any disputes alleging a violation of IDEA, implementing federal regulations, or state special education laws or rules, including procedural or substantive allegations, and child specific or systemic allegations.

- Review model forms for regulatory compliance and ease of use.

- Delineate the complaint filing process, including when the complaint is considered filed or received, and how the complaint is assigned to an investigator.

- Ensure that no additional burdens are placed on complainants.

- Align issues with the allegations in the complaint.

- Provide the complainant the opportunity to provide additional information, either orally or in writing, about the allegations in the complaint.

- Encourage mediation as a less formal dispute resolution tool.  Ensure that mediation cannot be used to deny or delay the complaint investigation process.  Emphasize that mediation affects the complaint investigation timeline only upon agreement of the parties to delay the complaint investigation for the purpose of engaging in mediation.

- Request and review data relevant to the allegations in the complaint, interview relevant parties, as needed, about the allegations in the complaint, conduct an onsite investigation if needed to determine facts critical to the state's decision, and review sufficient information

upon which to base findings of fact and conclusions using a data convergence approach (more than one data source supports the investigator's conclusions).

- Require corrective action that is time certain and appropriate to remedy correction for any named student and also the appropriate future provision of special education services for all children with disabilities.
- Utilize a draft report utilizing OSE's decision template.
- Debrief between the investigator and OSE administrators on the contents of the report and the reasons for the conclusions.
- Issue the final decision within the 60-day timeline.  Timelines may be extended only for exceptional circumstances consistent with OSEP guidance.
- Closely follow timely correction of noncompliance and determine the type of verification needed to ensure correction.

## 2020 Progress Review of Recommendation #1:

**Documentation:**  The evaluators reviewed the following relevant documentation to assess the MDE OSE response to the 2016 recommendations and its continued growth.

- Special Education State Complaints:  Procedures and Model Forms (November 2020).
- Special Education Dispute Resolution Options (DRAFT November 2020).
- MDE OSE Guidance: Compensatory Education (November 2020).
- Boilerplate internal forms, including standardized decision template.
- Internal workflow procedures to verify correction of noncompliance.
- Standardized new hire complaint investigator training.
- The Special Education Dispute Resolution Options page on MDE OSE's website continues to feature the Special Education Problem Solving Process from 2018.
- Corrective Action Process for Noncompliance with the IDEA and MARSE (July 2018).

### Snapshot:

- The number of State Complaints filed remains constant.
- Decisions are issued within the 60-day timeline unless properly extended.
- Decisions with findings of noncompliance remains relatively constant.
- MDE OSE consistently uses a decision template.

- MDE OSE consistently reviews decision internally prior to release.

## Themes from 2020 Stakeholder Input:

- MDE OSE is now investigating and resolving substantive issues in state complaints.
- State complaint decisions are issued in a timely manner.
- Accessibility to the MDE OSE website, including forms and documentation has improved.
- MDE OSE is open to stakeholder concerns and continues to consider appropriate modifications.
- The state complaint filing process has been streamlined.  The submission process no longer involves multiple persons and the requirement to prove submissions.

## Summary:

Since 2016, MDE OSE developed and/or refined procedures to address stakeholder concerns.  MDE OSE continues to participate in ongoing technical assistance to support staff in maintaining internal standards and consistency.  It has also developed an onboarding process to ensure that new staff have the requisite skills to investigate complaints and draft decisions consistent with the State's standards.  Considerable gains have been made in developing standard workflow models for the complaint investigation process, resulting in decisions that correct noncompliance at the student level, address noncompliance at the system level for all students with disabilities, and meet the general supervisory obligation of MDE OSE.  It is critical for MDE OSE to remove outdated guidance from its website to ensure consistent education and messaging for families and professionals.

## *2016 Recommendation #2*

Encourage the use of mediation in all special education disputes.

- Educate the public about mediation as an effective early dispute resolution tool.
- Ensure that mediators are specially trained in IDEA requirements and IDEA dispute resolution.
- Protect a parent's right to proceed with a complaint investigation while contemporaneously engaging in mediation.
- Ensure that mediation is not used to deny or delay the use of any other component of the state's dispute resolution system.

MDE_00001229

**19**

## 2020 Progress Review of Recommendation #2:

**Documentation:**    The evaluators reviewed the following relevant documentation and/or information to assess the MDE OSE response to the 2016 recommendations and its continued growth.

- Special Education Mediation Services (SEMS) website.
- SEMS Additional Options page describes a process inconsistent with MDE OSE's recent guidance documents.
- Special Education Due Process Complaint Procedures (April 2020).
- MDE OSE Guidance: The Resolution Meeting (November 2020).

### Snapshot:

- Use of mediation as a dispute resolution option continues to grow.
- Although its use increased each year, Michigan continues to lag behind the frequency of use in a national comparison.
- The percent of mediations that result in agreement has increased each year and is now consistent with national averages.

### Themes from 2020 Stakeholder Input:

- General agreement among all stakeholder groups that mediation is a good option.
- Early use of mediation is most helpful.
- Mediation is an important process that allows parents and schools the opportunity to retain control of the outcome without giving control to a third party to make decisions.
- Increased efforts to market mediation have made it possible for more parents to see and hear about it as a dispute resolution option.
- MDE OSE support helped increase use of mediation.
- Mediation is viewed favorably and assisted with rebuilding relationships with families and districts.
- Wide variability exists in the skill and ability of mediators by region.

## Summary:

In order to address stakeholder concerns, MDE OSE should work with the mediation system to improve training and consistency for special education mediators.  In addition, MDE OSE should develop ways to encourage the use of mediation across the state and closely monitor the frequency of use and

MDE_00001230

success rates in different regions. Technical assistance and informational campaigns may be warranted depending on the findings. Finally, MDE OSE should be responsible for vetting and/or approving special education content specific information on the SEMS website, as well as the information provided by the Michigan Alliance for Families.

## 2016 Recommendation #3

Use data from special education complaints and due process hearings to inform general supervision.

- Track the issues investigated in state complaints and issues heard by a due process hearing officers in order to identify critical areas of potential noncompliance across the state for the purpose of determining monitoring priorities.
- Develop a system of targeted program or district monitoring in the event of systemic noncompliance.
- Target technical assistance and professional development to current identified compliance challenges across the state.
- Use the number, frequency, and severity of complaints as part of the risk rubric or monitoring selection process utilized by MDE OSE to identify the districts that should be monitored.
- Use monitoring to follow long term corrective action to ensure appropriate future provision of services for all children with disabilities.
- Consider including findings of noncompliance resulting from dispute resolution as part of the local determination process.

## 2020 Progress Review of Recommendation #3:

**Documentation:**  The evaluators reviewed the following relevant documentation to assess the MDE OSE response to the 2016 recommendations and its continued growth.

- The MDE OSE developed and implemented a system to track activities and data related to the *Individuals with Disabilities Education Act* (IDEA) and the *Michigan Administrative Rules for Special Education* (MARSE). Catamaran is designed to support districts and service areas in meeting their obligations of the IDEA, the MARSE, and state-identified priorities. Catamaran was designed to help local districts analyze and interpret data and keep track of all monitoring activities in a single location.
- MDE OSE Guidance: Consent as Defined in IDEA (May 2020).

- MDE OSE Guidance: Individualized Education Program Development: Supplementary Aids and Services (November 2020).
- MDE OSE Guidance:  IDEA Discipline Requirements (May 2019).
- MDE OSE Guidance:  Eligibility and Social Maladjustment Clarification (June 2020).
- MDE OSE Guidance:  Special Education Reevaluation Process (April 2019).
- MDE OSE Guidance: Compensatory Education (November 2020).
- MDE OSE Corrective Action internal process documents.

## Snapshot:

MDE OSE made significant improvements in using data from the dispute resolution system to inform monitoring priorities and drive the development of technical assistance.  MDE OSE developed (or is in the process of developing) several guidance documents to assist Michigan consumers with understanding and navigating the IDEA.  As part of the development process, guidance documents should be independently reviewed before publication to ensure technical accuracy. For example, the November 2020 Individualized Education Program (IEP) Development document on the website relies on OSEP guidance that was replaced and superseded by more recent guidance.

## Themes from 2020 Stakeholder Input:

- ISDs and Schools expressed satisfaction with the accessibility and efficiency of using Catamaran. It was described as a tool to facilitate the organization of the state complaint process.  Noted improvements included the ability to communicate, upload documents, and review information such as timelines, all in a central location.
- Stakeholders suggested that dispute resolution data be publicly reported.   Examples of data identified as helpful included areas of noncompliance, noncompliance by region, numbers of dispute resolution activity, and trends over time.
- Stakeholders stated concerns with the consistency and enforcement of corrective action. Specifically, stating some corrective action was inadequate to address long standing and continued noncompliance.  Many stakeholders felt like the development of dispute resolution corrective action was disconnected from other monitoring activities, including graduated

sanctions for similar noncompliance.  Some Stakeholders voiced concern regarding accountability and verification of corrective action implementation.

## Summary:

Stakeholders acknowledged efforts made by the MDE OSE to align the general supervision system across departments within MDE OSE.  However, it was noticeable to the field that dispute resolution reporting, i.e. general findings of noncompliance, disaggregation of findings by region, and the connection to other monitoring activities still didn't exist.  Additionally, corrective action development and verification of noncompliance was identified as a weakness, especially in regions with ongoing noncompliance.  The MDE OSE developed training, templates, interview guides, corrective action guidance, and other investigatory supports.  Many of these documents were developed simultaneously and after the survey and focus group data was collected.  It is anticipated the modifications and updates completed by MDE OSE will increase consistency.

### 2016 Recommendation #4

- Give consideration to the establishment of a toll-free number for dispute resolution, and possible points of access to the dispute resolution system without the benefit of internet access.
- Update the Michigan Procedural Safeguard Notice in order to use parent friendly language to the extent possible without altering the substance of the document.
- Clarify the dispute resolution mechanisms and processes.
- Meet all other regulatory requirements.
- Consider the development of IDEA compliant quick reference guides to supplement the Procedural Safeguards Notice.

## 2020 Progress Review of Recommendation #4:

**Documentation:**  The evaluators reviewed the following relevant documentation to assess the MDE OSE response to the 2016 recommendations and its continued growth.

- MDE OSE maintains a Toll-Free number for consumers.  The number appears on MDE OSE's website.  The telephone line is managed by a trained consultant.  Topics and information from these calls are tracked and discussed as opportunities to provide ongoing technical assistance to the field and identify areas of need that require more detailed improvement.

- Special Education Due Process Complaint Procedures (April 2020).
- Special Education State Complaints: Procedures and Model Forms (DRAFT November 2020).
- Internal procedures to review corrective action plans (2020).

## Snapshot:

The use of well-trained staff to respond to callers on the toll-free line provides quality, helpful information to consumers.  The staff responsible for manning the line regularly participate in professional development and technical assistance activities, resulting in high quality assistance and information for Michigan consumers.  MDE OSE continues to develop and/or revise guidance in high-need areas to provide additional information and close alignment with the federal and state laws.

## Themes from 2020 Stakeholder Input:

- Stakeholders suggested that the Procedural Safeguards are difficult for some parents to understand.  Parents receive them, but don't understand the contents of the document.
- Provide a companion guide that summarizes the purpose and outlines the rights provided in the procedural safeguards.
- Some stakeholders perceived that dispute resolution is risky for parents because often school districts utilize attorneys to make the process more legalistic.
- Parents expressed frustration with needing legal representation or advocates to navigate the dispute resolution process, causing significant financial hardship for parents and deterioration of the parent-school relationship.

## Summary:

The complexity of dispute resolution continues to be a difficult area for parents to understand and navigate.  MDE OSE works closely with the Michigan Alliance for Families to support parents.  Some stakeholders continue to need additional support in order to understand and ensure access to the procedural safeguards afforded to students with disabilities and their families.   MDE OSE, like OSEP, discourages the use of the more litigious due process hearing in response to a request for special education complaint investigation.  However, MDE OSE is without authority to prohibit this practice.

## *2016 Recommendation #5*

- Provide targeted technical assistance to complaint investigators regarding the requirements of IDEA, appropriate investigatory techniques and standards, and the expectations of MDE OSE for timely, thorough, professional complaint investigations.
- Provide targeted technical assistance to mediators regarding the requirements of IDEA, appropriate mediation techniques and standards, and MDE OSE expectations for mediations as just one component in the overall special education dispute resolution system.
- Provide targeted technical assistance to monitors and state staff on a comprehensive system of general supervision, addressing noncompliance from all sources, and IDEA compliance tied to improving outcomes for students with disabilities.

## 2020 Progress Review of Recommendation #5:

**Documentation:**   The evaluators reviewed the following relevant documentation to assess the MDE OSE response to the 2016 recommendations and its continued growth.

- Guidance documents developed by MDE OSE to educate the field regarding IDEA compliance.
- Internal on-boarding procedures for new complaint investigators.
- Coaching templates designed and implemented by MDE OSE, including a series of coaching tools and templates for complaint investigators.

### Snapshot:

MDE OSE provides multiple ongoing opportunities for staff development and technical assistance. Through the newly created position of dispute resolution coordinator, MDE OSE developed a series of guidance documents, providing clear information across the state.  Additionally, MDE OSE developed and implemented a coaching model for new investigators.  Finally, MDE OSE regularly cross trains members of the monitoring team to support compliance and improve outcomes for students with disabilities.

MDE_00001235

**Themes from 2020 Stakeholder Input:**

- Stakeholders indicated that complaint investigations are better but still lack consistency.
- Mediators and Due Process Hearing Officers would benefit from basic special education knowledge.
- Stakeholders expressed a need to better understand the roles and responsibilities of ISDs in dispute resolution processes.
- Stakeholders suggested opportunities to improve the IEP team process through conflict resolution skill training for all IEP team members, school administrator and staff, parents and third parties supporting the process.
- Some stakeholders expressed concern regarding the lack of a comprehensive system of guidance and technical assistance.  Isolated guidance documents exist, but those need to be updated and aligned with current legal interpretations and MARSE.

## Summary:

There is consensus that the State Complaint process has improved during the past four years.  Some confusion continues with respect to the roles and responsibilities of ISD staff and MDE OSE investigators in the complaint process.  Additionally, wide variability in the experience and expertise of dispute resolution professionals (mediators, hearing officers and investigators) and participants (school staff and parents) was noted.

# Summary of Stakeholder Comments: Spring 2020

The evaluators elicited input from the field by utilizing a survey that was sent to public school employees, ISD staff, advocates, parents and attorneys.  The following reported results represent the insights and perceptions of the survey respondents.  (Stakeholder comments were included without correction to ensure the integrity of the process.)

## Topic Area: System Changes since 2016
### Survey Results:
- 49.28% agree or strongly agree the MDE OSE has worked to improve the special education dispute resolution system over the last five years.

**26**

## Stakeholder Comments:

- Dispute resolution procedures are still too complicated.  Parties are easily overwhelmed and get lost in the process.
- The development of corrective action does not align with findings and is not graduated based on repeated noncompliance.
- There is a lack of accountability in verifying the correction of noncompliance; not always evident corrective action is monitored.
- The MDE OSE lacks a comprehensive procedure manual outlining the dispute resolution processes (complaints, mediation, due process, early dispute options) from intake to verification.
- Procedural safeguards are complex and most individuals can't consume the information.
- Parents lack IDEA specific knowledge and cost is a factor in accessing resources, i.e. advocates, lawyers, etc. necessary to participate in IDEA dispute resolution.
- Staff turnover throughout the system requires more concentrated and ongoing training to ensure consistency.

# Topic Area:  Special Education Dispute Resolution System

## Survey Results:

- 65.22% agree or strongly agree information on the special education dispute resolution system is widely available.
- 82.60% agree or strongly agree the MDE OSE dispute resolution system is an important resource for schools and families.

## Stakeholder Comments:

- The dispute resolution process has become risky for parents to access because districts can drag them into the legal system.
- Information is complicated and parents often need to pay an attorney or advocate to understand what to do.
- Lack of sanctions for districts that demonstrate ongoing and perpetual noncompliance.
- Compensatory education is not consistent or adequate.
- LEAs/Schools need training and support on the importance of and using dispute resolution, and how to share that information with families annually.

MDE_00001237

- Dispute resolution components although available are not realistic for families because of costs.
- More education about early dispute resolution.  The parties need to resolve tension before it escalates to full blown conflict.
- More information needed by parents to understand options.  Description of dispute resolution process without legal terminology and legal jargon.
- Components of MDE OSE dispute resolution components are disconnected.
- MDE OSE guidance needs updated.

## Topic Area:  Special Education State Complaint System
### Survey Results:

- **79.71%** agree or strongly agree the MDE OSE special education state complaint system is accessible.
- **53.62%** agree or strongly agree special education state complaints are thoroughly investigated by the MDE OSE.
- **60.87%** agree or strongly agree state complaint decisions are issued in a timely manner.
- **50.73%** agree or strongly agree special education state complaint decisions are understandable.
- **52.18%** agree or strongly agree special education state complaint decisions are based on legal standards.
- **32.35%** agree or strongly agree special education decisions included meaningful corrective action to address violations.
- **42.03%** agree or strongly agree special education decisions help understand the special education requirements.

### Stakeholder Comments:

- MDE OSE staff often going beyond compliance to best practice with complaint decisions.
- MDE OSE expanding allegations beyond those made by complainant.
- State complaint decisions continue to lack consistency.
- Concerns persist with ISDs role in the state complaint investigation process.
- MDE OSE interpretation of IDEA/MARSE not consistent with legal guidance.
- Parents have difficulty understanding complaint decisions without the help of a third party.
- Corrective Action not always assigned by MDE OSE.  Occasionally delegate this duty to an IEP team.
- Insufficient follow up on corrective action to verify compliance.
- Parent input is not always sought in a systemic complaint.

- Corrective Actions are not adequate to ensure that noncompliance has been corrected, either for the named student or for all students.
- The MDE OSE should post redacted versions of state complaint decisions to assist with shared understanding of noncompliance.
- The State complaint model form is accessible but not user friendly.  It is difficult to know how to complete the form.
- LEA/School staff are overwhelmed by the investigatory process.
- State complaint system doesn't focus on repairing relationships with parent.
- MDE OSE does not have a robust system of guidance or technical assistance.

## Topic Area:  Special Education Mediation System

### Survey Results:

- **88.40%** agree or strongly agree the MDE OSE special education mediation system is accessible.
- **55.07%** agree or strongly agree special education mediation is likely to help resolve disagreements between schools and parents.
- **63.77%** agree or strongly agree special education mediation helps schools and parents work together as a team on behalf of students.

### Stakeholder Comments:

- Universal misunderstanding of mediation expressed. Broad agreement parties don't understand mediation and do not access it early enough in the conflict process.
- County to county the mediation is conducted differently.   There are not enough trained mediators in rural areas.
- Mediators need more training in both the technical skills of mediation and the topic knowledge of special education requirements.
- Simple basic mediation concepts, i.e., confidentiality, neutrality, agreed upon time and duration are often not observed.
- In general, most parents are unaware of the mediation process and how to access it.  Parents need to know where to search for mediation.  MDE OSE and SEMS provide access to information about mediation.  However, information is not consistently available on LEA and ISD sites.   Parents need to be given more information (SEMS brochure) when they start special education, to really use it as a tool earlier in the process.
- Parties are not coming to mediation in good faith.  Often times the session is used as a discovery strategy.

- Mediation agreements that are not being implemented make it hard for parents to enforce without legal supports and incurring costs through the hearing process.   Parents lack alternatives to enforcing the agreement themselves.
- When a Parent is unable to enforce the implementation of the mediated agreement.  A situation is created where the parent may be prohibited from refiling a state complaint on the issued resolved through agreement at the mediation session.

## Topic Area:  Special Education Due Process Hearing System

### Survey Results:

- **64.70%** agree or strongly agree the MDE-OSE special education due process hearing system is accessible.
- **53.62%** agree or strongly agree the due process hearing system resolves special education disputes in a timely manner.
- **35.29%** agree or strongly agree due process hearing decisions are understandable.
- **45.59%** agree or strongly agree special education due process decisions are implemented.
- **32.35%** agree or strongly agree special education due process decisions help me understand special education requirements.

### Stakeholder Comments:

- Due Process Hearings are not timely when compared to other dispute resolution options.
- The dispute resolution system at the due process level is almost inaccessible to most parents. Most schools have a lawyer on hand, most parents don't have access to this resource. Additionally, there are not enough special education attorneys available for parents to consult.
- This system is not accessible to parents, but now (especially with insurance paying for school attorneys) it is highly leveraged to favor districts.
- The Due Process Hearings are a huge burden on families, they require parents to take time off work for extended periods of time; pay for childcare, etc.
- The length of the due process hearing process takes such a long time that parents are often discouraged and would rather seek education for their child elsewhere.
- ALJs lack specific understanding of special education.   ALJ findings do not appear consistent across the region.
- Corrective action has not been followed after due process orders because of a lack of monitoring.
- Ongoing concerns with the cross over between Due Process Hearings that are filed after a state complaint has been filed.

- Perceived concern with a trend where Districts are filing DP complaints against parents.
- School Districts attorneys are filing for reimbursement of attorney's fees from parents and their attorneys in an abusive and wholly unjustified manner without repercussion.

# Opportunities for Continued Improvement:

After a thorough review of the information gathered through a variety of methods, the following recommendations are offered to assist MDE OSE in its ongoing improvement within its system of special education dispute resolution.   As a guide, consideration was given to progress made since the 2016 review and the level of resources needed to meaningfully support, assist, and cultivate ongoing improvement in the Dispute Resolution System.  The recommendations are separated into three overarching areas: Communication, Training/Resources, and Law, Policy & Procedure.

As the MDE OSE begins to prioritize and implement recommendations, it is suggested that a tiered approach to implementation be considered.  A tiered model of implementation in response to the recommendations allows for the development of differentiated tools and resources based on the complexity of issues. The more significant or intensive the needs, the greater the frequency of contact, the longer the duration of the activity, and the higher the intensity of the support.

    **Tier 1:**  Resources dedicated to meet universal needs. This level of support is usually of low intensity, infrequent and of limited duration; often focuses on a one-time event with topics of broad interest; and may be a cooperative effort across several domains; and includes sharing and dissemination of information and/or products.

    **Tier 2:**   Resources address targeted needs around a topic or issue that may be produced and delivered to broad audiences through electronic networks or group events. These resources provide opportunities to establish networks among those with similar problems, and include, but are not limited to, webinars, teleconferences, conferences, videoconferencing, and communities of practice.

    **Tier 3:**   Resources are targeted and specialized for intensive needs. These resources include, but are not limited to, onsite, face-to-face services with extensive follow-up through various

means to address very specific issues/needs requiring direct assistance and support; and are intensive and sustained. [1]

## Recommendation Area #1 – Communication and Transparency

- Publish a summary of topical areas of noncompliance. Publication of this data in infographic format on an annual basis will transparently inform the public and schools across the state on areas that may need additional training and technical assistance.  Publication may reduce the need to respond to individual requests for access to government records.
- Increase messaging regarding the dispute resolution process and procedures.  Review messaging from SEMS and Michigan Alliance for Families to ensure accuracy and continuity.  Consider developing modules or content videos to help parents understand the dispute resolution process.
- Continue to improve public education and dissemination of a comprehensive dispute resolution procedure handbook to clearly outline the process for each dispute resolution option, including visual flowcharts describing the processes of mediation, due process and state complaints.

## Recommendation Area #2 – Training and Resources

- MDE OSE newly developed and adopted coaching and mentoring model for complaint investigators should be maintained to provide ongoing technical assistance to complaint investigators.  This support should focus on the requirements of IDEA, appropriate investigatory techniques and standards, and the expectations of MDE OSE for thorough and professional complaint investigations.
- Continue to provide targeted technical assistance to mediators regarding the requirements of IDEA, appropriate mediation techniques and standards and the expectation for timely and professional mediations.  Work with SEMS and other mediation providers to ensure consistent training for special education mediators across the state.
- Create consistent understanding of dispute resolution requirements by providing specific special education training or micro learning certificates to hearing officers, mediators, and school officials.  The learning should include basic IDEA & MARSE content in relation to students with disabilities.  Additional supplemental training should be offered to increase the ability of

---

[1] **Edutas, University of Oklahoma**

staff and contractors to conduct dispute resolution activities utilizing technology, especially in view of the ongoing nationwide health crisis.

- Provide advocate training in special education conflict resolution.

- Consider expanding the cadre of mediators to include independent/private mediators to the state approved roster.

- Continue providing advanced training for MDE OSE investigators.  The focus of the training should build the capacity of each investigator to make the necessary connections between facts, conclusions and decision outcomes.

- Regularly convene stakeholders to assess the need and determine how to communicate regularly and support the expansion of advocacy and legal support options for parents.

- Thoroughly review MDE OSE's website as well as all linked sites for current information and guidance.  Ensure that outdated or superseded information is removed in order to minimize confusion.

- Model and encourage the explanation and display of dispute resolution information on ISD and LEA websites throughout the state.

## Recommendation Area #3 – Law, Policy and Procedure

- Update and/or supplement the Michigan Procedural Safeguard Notice in order to use parent friendly language to the extent possible without altering the substance of the document.

- Consider the development of IDEA compliant quick reference guides to supplement the Procedural Safeguards Notice.

- Continually review and update guidance, especially in light of the new instructional delivery and practices resulting from digital learning.

- Convene stakeholders to study and review MARSE and dispute resolution policies (the role of attorneys and the interplay of state complaints/requests for due process).

- Design and utilize a corrective action rubric to track issues of noncompliance for due process hearings and state complaints.  Develop a corrective action workflow that assists complaint investigators in recognizing ongoing, repeated noncompliance.  Review and update the MDE OSE's incentives and sanctions to be used to address continued and systemic noncompliance.

# In Conclusion:

MDE OSE is to be commended for its continual efforts toward system improvement.  A well-functioning dispute resolution system is a critical safeguard for parents.  More importantly, the efforts of the MDE OSE in refining its dispute resolution systems, fulfilling its general supervisory obligations, verifying correction of noncompliance, and using noncompliance to inform technical assistance is a powerful tool to improve outcomes for students with disabilities.  The commitment to continuous improvement was evident throughout this review.  Recommendations were made to assist with ongoing efforts of MDE OSE to facilitate its improvement efforts.

Pingora Consulting appreciates the opportunity to be part of the team taking the "long view" to drive systemic change and continuous improvement.


Respectfully submitted:

PINGORA CONSULTING, LLC

_____

Lenore Knudtson

_____

Stephanie Weaver

# Appendix 1: GAO (Government Accountability Office) – November 2019 Report to Congressional Requestors[2]

**A summary of this report is included as another data source in order to gain additional perspective about the dispute resolution system in Michigan.**

## Purpose of the 2019 report

GAO was asked to review parents' use of IDEA dispute resolution option.  The report examined (1) how often IDEA dispute resolution options were used, and whether use in selected states varies across school district-level socioeconomic or demographic characteristics; and (2) what challenges parents face in using IDEA dispute resolution options and how Education and selected states help facilitate parents' use of these options.

GAO reviewed publicly available data on dispute resolution at the state level and collected data at the school district level from five states – Massachusetts, **MICHIGAN**, New Jersey, Ohio and Pennsylvania – selected based on the number of disputes initiated and school districts characteristics, among other factors.  GAO also reviewed relevant federal laws, regulations, and Education and State documents, and interviewed Education officials, state officials, staff from organizations providing technical assistance in these five states, and other national advocacy organizations.

Results from this report are included as part of the most recent dispute resolution review to provide additional data and perspective.  Consideration of this information offers an opportunity to include additional comparisons between Michigan and several other SEA systems all responsible for general supervision and implementation of dispute resolution systems under the IDEA.

## Highlights from the GAO Report

- In most of the five states reviewed high-income school districts had higher dispute resolution activity than low-income districts.
- Predominantly Black/or Hispanic districts generally had more dispute resolution activity than districts with fewer minority students.

---

[2] https://www.gao.gov/assets/710/702514.pdf

- Out of the three dispute resolution activities reviewed (mediation, due process complaints and state complaints), the largest gap between very-high income and very low-income districts existed in the number of mediation requests per 10,000 students.  Very high-income districts nationwide request mediation 35.2 as compared to 13.0 per 10,000 students for low-income districts.

## Michigan Highlights

- Michigan's rate of mediation requests in low-income districts was higher than the rate for high income districts.  This was different than the four other states in the comparison, as there were more requests from high income districts than low-income districts.
- In Michigan districts with high minority levels were more likely to initiate a mediation request than low minority districts.
- There were no Due Process Complaints in Michigan initiated in a low-income district.
- In Michigan, the highest rate of state complaint filings occurred in high income districts.
- Although all states in the comparison had high rates of state complaints initiated by high minority districts, Michigan's gap between low-minority and high minority districts was the largest when filing a state compliant in comparison to the other four states.

MDE_00001246