# EXHIBIT 21



OFFICE OF SPECIAL EDUCATION
SPECIAL EDUCATION COMPLAINT INVESTIGATION REPORT

**Complainant:**
George White
Social Economic and Educational CHANGE
4022 Rockwood Dr.
Kalamazoo, MI 49004

**Case Number:** 18-0085

**COMPLAINT DECISION
AND
PLAN FOR
CORRECTIVE ACTION**

**Public Agency:**
Michigan Department of Education
Office of Special Education
Joanne Winkelman, Ph.D., Supervisor
Program Accountability
608 West Allegan
PO Box 30008
Lansing, MI 48909

**District:**
Michael Rice, District Superintendent
Kalamazoo Public Schools
1220 Howard St
Kalamazoo, MI 49008-1882

**Case Manager:**
Marcia O'Brien

**Date of Decision:**
June 8, 2018

On April 9, 2018, the Michigan Department of Education, Office of Special Education (OSE) received a special education complaint filed by George White (Complainant) on behalf of Earl Matthew Moore Jr.. The complaint alleged that the Kalamazoo Public Schools (District), which is under the jurisdiction of the Michigan Department of Education (MDE), violated the Individuals with Disabilities Education Act (IDEA) and the Michigan Administrative Rules for Special Education (MARSE). Complaints may be filed by any individual or organization, in accordance with 34 CFR § 300.153. The Complainant in this matter is a third party. A release of information from the Student's parent was submitted; therefore, the OSE was able to communicate directly with the third party during the investigation of this complaint. Pursuant to the Code of Federal Regulations 34 CFR §§ 300.151 through 300.153 implementing the IDEA, the OSE conducted an investigation into the allegations in this complaint. Consistent with the IDEA and Federal Regulations, and the MARSE, the OSE issues the following Findings of Fact, Conclusions and Decision.

**Complaint Issues:**

1. Whether the District provided the Student a free appropriate public education (FAPE) pursuant to 34 CFR §§ 300.17 and 300.101. Specifically:
    i. Whether the District fulfilled its ongoing Child Find obligation to identify, locate and evaluate the student who may have been suspected of having a disability and in need of special education services, pursuant to 34 CFR § 300.111.

**Investigatory Process:**

Documents reviewed include:

   Original state complaint request; and
   Educational records submitted by the District.

Interviews were conducted with the following:

   Multiple District staff, both from the district level, the sending middle school and the current placement;
   The Complainant; and
   The Parent.

The OSE provided the District and Complainant the opportunity to submit additional information for consideration during the investigation of this complaint.

**Applicable Federal Regulations or State Rules:**

34 CFR § 300.101   Free appropriate public education (FAPE)

34 CFR § 300.111   Child find

34 CFR § 300.17    Free appropriate public education

R 340.1702         Student with a disability definition

**Relevant Time Period:**

Pursuant to 34 CFR § 300.153(c), the OSE has the authority to investigate allegations of violations that occurred not more than one year from the date the complaint was received. In light of this limitation, the investigation will be limited to the period of time from April 10, 2017 to April 9, 2018 for the purpose of determining if a violation of the IDEA or the MARSE occurred. However, records beyond this timeframe may be reviewed for the purpose of developing a complete record for the student.

**Findings of Fact:**

1. The Student was an eighth-grade student and 13 years old during the 2017 - 2018 school year.
2. The Parent indicated that the Student had difficulties in school stemming back to elementary school and that there had been an IEP in place at some time. The District indicated that although there were concerns in elementary, the Parent was not interested in an evaluation. Neither the Parent nor the District had any documentation to provide regarding this earlier time frame.
3. The Parent did not recall ever requesting a special education evaluation in writing.

PLAINTIFFS 00005422

4. The Student was enrolled in the Alternative Learning Program sometime between November 9, 2016 and December 6, 2016.
5. According to a District brochure, the Alternative Learning Program is a program for students who are working on improving their behavior, so they are able to move back into the classrooms at their home school and achieve success. "At ALP, we work intensively with students to find strategies that best suit their needs. In addition to behavior, we work intensively on literacy and numeracy. Students are taught literacy and numeracy strategies throughout all classes."
6. The District also provided the following information regarding the Alternative Learning Program:
    i. The curriculum is the same at this program as it is in the other middle school setting.
    ii. Based on assessment information, students are provided with additional instruction that is individualized for their specific academic needs. As an example, if a student has reading deficits, they are likely to have two courses in reading instead of one (grade level reading and strategic reading).
    iii. If assessment data indicated a more significant deficit, a student may also be provided:
        a. Genius hour: 30 minutes one to two times a week to work on the area of weakness.
        b. ZAP: staff identify students to stay after school with a certified teacher to increase skills and/or grades.
    iv. The positive behavior support system in the building was primarily based on the CHAMPS – Classwide Positive Behavior Support model presented by the Safe and Civil Schools© organization, and also included strategies such as peer mediators, restorative justice practices and team meetings to review student suspension reports every 6-8 weeks.
    v. Two times per week a local organization is set up to support students with counseling services. The organization's mission is to "connect people and organizations to resolve conflict and crisis, foster volunteerism, and meet community needs.
    vi. The child study team meets one time per month. Student's can be referred to this team to discuss a student's academic or behavioral concerns.
7. The referral form for the Alternative Learning Program includes request for specific information regarding each student as follows:
    i. 504 plan, yes/no response;
    ii. Behavior intervention plan, yes/no response;
    iii. Number of office discipline referrals;
    iv. Number of RTC visits (if applicable);
    v. Number of suspensions this school year;
    vi. Reading RIT score (NWEA/MAP);
    vii. Reading percentile rank (NWEA/MAP);
    viii. Math RIT score (NWEA/MAP);
    ix. Math percentile rank (NWEA/MAP);
    x. Please list any documented physical and/or mental health diagnosis and medications;
    xi. Please list any outside services that have been offered;
    xii. Date and time of the referral meeting;
    xiii. How was the parent notified of the referral meeting; and

xiv. List names and titles of the participants present at the referral meeting.
8. The Student was not "referred" to the program in this fashion, but rather was placed there as a result of a District "due process hearing" decision held for a behavior. The due process hearing documentation was not submitted; however, the District indicated the behavior was a "level 3 incident – battery" and that the hearing officer heard the case and determined the outcome, which in this case was placement at the Alternative Learning Program. District staff indicated hearing officers were typically former social workers or former building administrators.
9. The Alternative Learning Program reviews all student progress every marking period. Those students who were on phase two for 12 weeks were considered for the possibility to return to their home school. The Student has not yet achieved this level for this duration of time.
10. The Student was not referred to the child study team at the Alternative Learning Program and the District did not request parental consent to evaluate during the 2016 – 2017 or 2017 – 2018 school years.
11. During the 2016 – 2107 school year, the Student had 24 behavior incidents recorded as follows:
    i. The first 14 incidents were in the general education middle school building. Eight led to suspensions. Three led to conferences with the Student. One was a removal from the classroom and one led to detention. The last one, in this building on November 9, 2016 resulted in a "referral to the alternative/behavior school, due process hearing pending".
    ii. For the 10 behavior incidents at the Alternative Learning Program for this school year, five led to suspensions, two resulted in peer mediation, two led to detentions, and one led to a parent call and removal from the classroom.
12. During the 2017 – 2018 school year, through April 28, 2018, the Student had 11 behavior incidents recorded as follows:
    i. Seven suspensions;
    ii. Two detentions;
    iii. One removal from class; and
    iv. On February 15, 2018 the action section indicated "Parent/guardian phone call, DPP – Due Process Hearing Pending".
13. On November 10, 2017, a bus safety meeting was requested from the principal to the Parent as the Student had received multiple verbal re-directions and bus referrals this school year. During the phone discussion, the Parent indicated to the principal concerns regarding the ALP program and that his understanding was that it was a short-term program and he was told that the Student would be there for one year only.
14. Attendance correspondences with the Parent during the 2017 – 2018 school year included as follows:
    i. April 11, 2018 letter: 5 unexcused absences for the current trimester;
    ii. April 16, 2018 letter: 10 unexcused absences for the current trimester;
    iii. April 19, 2018 well-check call: Parent indicated the Student had not been feeling well and will be in school the next day; and
    iv. April 24, 2018 letter: 5 unexcused absences for the current trimester.
15. The District indicated that the Student has chronic absenteeism. The Parent indicated that although there are times the Student does not choose to attend school, that most absences are related to the Student being kicked out.
16. Attendance was addressed through phone calls placed by the school secretary,

teachers and the principal. In addition, letters were sent.
17. The Student's report card for the 2016 – 2017 school year at the Alternative Learning Program indicated:
    i. Grades of "F" for all classes/marking periods except for two incompletes in two subject areas marking period 4.
    ii. Total excused absences 15.5, total unexcused absences 76.5.
18. The Student's report card for the 2017 – 2018 school year at the Alternative Learning Program indicated:
    i. Marking period one and two:
        a. Grades of "F" for all classes except for D- in strategic math.
    ii. Marking period three:
        a. D's in math, language arts, and Read 180;
        b. C- in Science; and
        c. B's in Strategic Math and Social Studies.
    iii. Marking period four:
        a. Grades of "F" for all classes except for D in science.
    iv. Total excused absences as of marking period four: 30, total unexcused absences as of marking period four: 20.
19. NWEA assessment results indicated the Student was approximately two grade levels behind his peers in reading and mathematics.
20. District staff indicated that when considering the Student's ability to succeed, attendance was their prime area of concern. This year, the Student was on a trajectory to exit, but lack of attendance put him further behind. Staff noticed a big difference in how the Student performed when he was consistently present.
21. Special education services are provided to students' with IEPs in the Alternative Learning Program. Programs/services available included resource program, self-contained program for Students with autism spectrum disorder, a teacher to support inclusion, and a teacher for Students with cognitive impairments for teaching strategic reading and math. The District reported that primarily, the Alternative Learning Program tries to keep the students with their general education peer group.
22. The District shared that the Parent recently inquired about a 504 plan, but when asked about a disability, the Parent said the Student did not have a diagnosis. The Parent felt the District should have had previous information on file.
23. The District's staff handbook included a section on Child Find which stated: "As part of IDEA and the Michigan Revised School Code, if a staff member receives a written request from a parent or guardian to evaluate their child for special education eligibility, then the school psychologist, speech therapist, or Student Services must be notified within 24 hours. The school psychologist or speech therapist need to meet with the parent/guardian within 10 school days to conduct a review of existing evaluation data. The parent/guardian must sign for the evaluation being proposed. This includes Child Find efforts involving any student suspected of having a disability or having a disability who is in need for special education and related services. The consent for evaluation must be signed from the parent to proceed with conduction the evaluation. If staff members determine that an evaluation is not needed, then written support for refusing the evaluation must be made. Staff members need to notify a Student Services administrator is this occurs to review the written notice before it is sent to the parent/guardian."

## Conclusions:

PLAINTIFFS 00005425

1. "Child find" is the affirmative, ongoing obligation of states and local districts to identify, locate, and evaluate all children with disabilities residing within the jurisdiction who are in need of special education and related services. 34 CFR § 300.111(a)(1)(i).
2. Child find must include:
    i. Children who are suspected of being children with disabilities under 34 CFR § 300.8 and in need of special education, even if they are advancing from grade to grade; and
    ii. Highly mobile children, including migrant children. 34 CFR § 300.111(c).
3. States and LEAs have an obligation to ensure that evaluations of children suspected of having a disability are not delayed or denied because of implementation of an RTI strategy. The use of RTI strategies cannot be used to delay or deny the provision of a full and individual evaluation. It would be inconsistent with the evaluation provision of the IDEA for an LEA to reject a referral and delay an initial evaluation on the basis that a child has not participated in an RTI framework. Memo to State Directors of Special Education, 56 IDELR 50 (OSEP 2011).
4. Consistent with the consent requirements in § 300.300, either a parent of a child or a public agency may initiate a request for an initial evaluation to determine if the child is a child with a disability. 34 CFR § 300.301(b).
5. Although the District did not receive a written request from the Parent to evaluate, this does not negate Child Find obligations. The Student was placed in an intensive intervention program due to behaviors and has been there for a minimum of 17 months. During this intervention time, the Student continued to have significant behavioral and academic concerns that can not be attributed to a lack of attendance alone. When interventions are unsuccessful, and a student is consistently not progressing in the general education curriculum, this should minimally prompt a referral to the building's child study team. For this Student and the significance of the needs, a referral for a special education evaluation should have been initiated by the District.
6. According to the US Department of Education, "Services required under Part B may include medical services provided by a licensed physician to determine whether a child has a medically related disabling condition which results in the child's need for special education and related services. If a public agency believes that a medical evaluation by a licensed physician is needed as part of the evaluation to determine whether a child suspected of having attention deficit [hyperactivity] disorder meets the eligibility criteria of the other health impairment category, the school district must ensure that this evaluation is conducted and is at no cost to the parents. If a State requires that a medical evaluation be included as part of all evaluations for eligibility determination for the other health impairment category, it must also ensure that any necessary evaluations by other professionals are also conducted and considered as part of the eligibility determination process." *Letter to Parker*, 18 IDELR 963 (OSEP 1992).
7. School districts cannot shift their burden to arrange for a disability diagnosis onto a parent as they are required to provide and/or assist parents to obtain the medical evaluations necessary to fulfill their Child Find responsibilities.

Overall FAPE:
1. The IDEA requires that a State (i.e., public agency) have in effect policies and procedures to ensure that the State (i.e., public agency) identifies, locates and evaluates all children with disabilities residing in the State, regardless of the

severity of their disability, and who are in need of special education and related services. It is critical that this identification occur in a timely manner and that no procedures or practices result in delaying or denying this identification. Letter to State Directors of Special Education, 61 IDELR 202 (OSEP 2013).
2. The IDEA seeks to ensure that children with disabilities have access to a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of children with disabilities and their parents or guardians are protected. 20 U.S.C. § 1400. Further, the IDEA "provides federal funds to assist state and local educational agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures. One of those goals/procedures is the affirmative duty of the state (i.e., the local educational agency) to assure that "all children residing in the State (i.e., local educational agency) who are disabled . . . and who are in need of special education and related services are identified, located, and evaluated. . . . " 20 U.S.C. § 1412 (2)(C); Robertson County Sch. Sys. v. King, 99 F.3d 1139, 95-5526, 24 IDELR 1036 (6th Cir. 1996, unpublished) (citing Wise v. Ohio Dept. of Educ., 80 F.3d 177, 181 (6th Cir. 1996)).
3. A FAPE means special education and related services that are provided in conformity with an IEP. 34 CFR § 300.17(d).
4. In reviewing the violations above regarding Child Find, the Student's lack of academic and behavior progress, even with interventions, affected the Student's substantive rights. However, as this Student does not have an IEP, there is no denial of FAPE.

**Decision:**

1. Whether the District provided the Student a free appropriate public education (FAPE) pursuant to 34 CFR §§ 300.17 and 300.101. Specifically:
    i. Whether the District fulfilled its ongoing Child Find obligation to identify, locate and evaluate the student who may have been suspected of having a disability and in need of special education services, pursuant to 34 CFR § 300.111.

**The District had information to suspect that the Student may be a student with a disability and in need of special education and did not meet their child find obligation. The OSE determines a violation.**

**Student Level Corrective Action Plan:**

1. By July 9, 2018, conduct a review of existing evaluation data to:
    i. Review all relevant Student data from the Student's educational file, including input from the teacher and the Parent(s);
    ii. Identify all of the Student's potential special education and related service needs;
    iii. On the basis of the review, determine the evaluations that need to be conducted to consider all areas of suspected disabilities, consistent with 34 CFR § 300.304 through 300.311, and to include a functional behavioral assessment;
    iv. Seek consent from the Parent to conduct the evaluation(s) as determined at the review of existing evaluation data; and

PLAINTIFFS 00005427

  v. Provide prior written notice to the Parent for the evaluation(s).

 2. By August 17, 2018, conduct a full and individual initial evaluation, as outlined in the review of existing evaluation data, after consent is provided by the Parent, to determine:
  i. If the Student is a student with a disability and need of specialized instruction; and to
  ii. Determine the resulting educational needs of the Student.
  iii. The evaluation must be comprehensive and use a variety of assessment tools and strategies to gather current relevant functional, developmental, and academic information about the Student, including information provided by the Parent, to identify all of the Student's special education and related service needs.

3. By August 17, 2018, conduct a multidisciplinary evaluation team meeting to make a recommendation to the IEP team regarding eligibility.
4. By August 17, 2018, conduct an IEP team meeting for the purpose of developing an IEP to determine eligibility and if appropriate, develop an IEP to address the Student's unique educational and behavioral needs in accordance with 34 CFR §§ 300.320 through 300.324.

**Corrective Action Plan:**
The district must revise or develop procedures by 09/01/2018 to document and ensure that:
1. The District fulfills its ongoing Child Find obligation to identify, locate and evaluate students who are suspected of having a disability and in need of special education services.

The district must provide professional development by 01/15/2019 for all relevant staff regarding the new procedures.

Evidence of change in the district's practices must be provided and verified by the OSE.

Evidence of timely compliance and required submissions for Corrective Action Plans and Student Level Corrective Action Plans must be documented in Catamaran. Please direct questions regarding the complaint investigation to Joanne Winkelman at 517-335-0457 or winkelmanj@michigan.gov, and any questions regarding the corrective action to Harmonee Costello at 517-241-7082 or costelloh1@michigan.gov. All correspondence should be clearly marked as pertaining to case 18-0085.

Joanne Winkelman, Ph.D., Supervisor

Office of Special Education

Program Accountability Unit

Case Number: 18-0085                     Page 8 of 9

PLAINTIFFS 00005428

cc: Earl Moore, Sr.
    Reuquiyah Saunders
    Mindy Miller
    David Campbell
    Tori Wentela
    Jordan Bullinger

PLAINTIFFS 00005429