# EXHIBIT 34



OFFICE OF SPECIAL EDUCATION
SPECIAL EDUCATION COMPLAINT INVESTIGATION REPORT

**Complainant:**

K.B.

**Case Number:** 19-0189

**Public Agency:**
Michigan Department of Education
Office of Special Education
Rebecca McIntyre, Supervisor
Program Accountability
608 West Allegan
PO Box 30008
Lansing, MI 48909

**COMPLAINT DECISION
AND
PLAN FOR
CORRECTIVE ACTION**

**District:**
Gary Start, District Superintendent
Kalamazoo Public Schools
1220 Howard St
Kalamazoo, MI 49008-1882

**Case Manager:**
Gina Alexander

**Date of Decision:**
November 8, 2019

On September 9, 2019, the Michigan Department of Education, Office of Special Education (OSE) received a special education complaint filed by ▬▬▬▬▬▬ (Complainant) on behalf of ▬▬▬▬▬. The complaint alleged that the Kalamazoo Public Schools (District), which is under the jurisdiction of the Michigan Department of Education (MDE), violated the Individuals with Disabilities Education Act (IDEA).

Complaints may be filed by any individual or organization, in accordance with 34 CFR § 300.153. The Complainant in this matter is a third party. A release of information from the Student's parent was submitted; therefore, the OSE was able to communicate directly with the third party during the investigation of this complaint.

Pursuant to the Code of Federal Regulations 34 CFR §§ 300.151 through 300.153 implementing the IDEA, the OSE conducted an investigation into the allegations in this complaint. Consistent with the IDEA and Federal Regulations, the MDE issues the following Findings of Fact, Conclusions and Decision.

PLAINTIFFS 00014044

**Complaint Issues:**

1. Whether the District provided the Student a free appropriate public education (FAPE) pursuant to 34 CFR §§300.17 and 300.101. Specifically:
    i. Whether the District met its Child Find obligation to identify, locate and evaluate a student with a disability pursuant to 34 CFR §§ 300.111 and 300.301.
    ii. Whether the District afforded the Student the procedural safeguards contained in the IDEA's discipline provisions for students not determined eligible for special education consistent with 34 CFR § 300.534.

**Investigatory Process:**

Documents reviewed include:

> Original state complaint document; and
> Educational records submitted by the District.

The following provided information via an interview or questionnaire:

> Complainant (Advocate);
> Parent;
> General education teacher;
> Clinical social worker;
> Counselor;
> Principal;
> Administrator of student services; and
> Special education director.

The OSE provided the District and Complainant the opportunity to submit additional information for consideration during the investigation of this complaint.

**Applicable Federal Regulations or State Rules:**

| | |
|---|---|
| 34 CFR §300.111 | Child find |
| 34 CFR §300.301 | Initial evaluations |
| 34 CFR §300.534 | Protections for children not determined eligible for special education and related services |

**Relevant Time Period:**

Pursuant to 34 CFR §300.153(c), the OSE has the authority to investigate allegations of violations that occurred not more than one year from the date the complaint was received. In light of this limitation, the investigation will be limited to the period of time from September 10, 2018 to September 9, 2019 for the purpose of determining if a violation of the IDEA and/or the MARSE occurred. However, records beyond this timeframe may be reviewed for the purpose of developing a complete record for the student.

**Findings of Fact:**

1. The Student was enrolled in the District's alternative middle school as a 12-year-old seventh grader for the 2018 - 2019 school year and in the District's middle school, as a 13-year-old eighth grader for the 2019 - 2020 school year. The Student was not eligible for special education services at the time of enrollment for either school year.
2. District staff reported the Student was referred to the alternative middle school by staff from the Student's "home school." The "home school" was a school in the District

Child Find efforts involving any student suspected of having a disability or having a disability who is in need for special education and related services. The consent for evaluation must be signed from the parent to proceed with conducting the evaluation. If staff members determine that an evaluation is not needed, then written support for refusing the evaluation must be made. Staff members need to notify a Student Services administrator if this occurs to review the written notice before it is sent to the parent/guardian."
23. A written request for an evaluation, dated September 7, 2019, was provided to District staff by the Student's Parent. The request asked for the District to perform academic, emotional, cognitive and other health impairment evaluations.

**Conclusions:**

Issue 1i:
1. "Child find" is the affirmative, ongoing obligation of states and local districts to identify, locate, and evaluate all children with disabilities residing within the jurisdiction who are in need of special education and related services. 34 CFR § 300.111(a)(1)(i).
2. Child find must include:
   i. Children who are suspected of being children with disabilities under 34 CFR §300.8 and in need of special education, even if they are advancing from grade to grade; and
   ii. Highly mobile children, including migrant children. 34 CFR § 300.111(c).
3. The IDEA requires that a State (i.e., public agency) have in effect policies and procedures to ensure that the State (i.e., public agency) identifies, locates and evaluates all children with disabilities residing in the State, regardless of the severity of their disability, and who are in need of special education and related services. It is critical that this identification occur in a timely manner and that no procedures or practices result in delaying or denying this identification. Letter to State Directors of Special Education, (OSEP 2013).
4. States and LEAs have an obligation to ensure that evaluations of children suspected of having a disability are not delayed or denied because of implementation of an RTI strategy. The use of RTI strategies cannot be used to delay or deny the provision of a full and individual evaluation. It would be inconsistent with the evaluation provision of the IDEA for an LEA to reject a referral and delay an initial evaluation on the basis that a child has not participated in an RTI framework. Memo to State Directors of Special Education, January 21, 2011 (OSEP).
5. Consistent with the consent requirements in § 300.300, either a parent of a child or a public agency may initiate a request for an initial evaluation to determine if the child is a child with a disability. 34 CFR § 300.301(b).
6. A district may not take a passive approach and wait for others to refer the student for special education services; the district must seek out IDEA-eligible students. *Compton Unified Sch. Dist. v. Addison*, (9th Cir. 2010), *cert. denied,* , 132 S. Ct. 996 (2012).
7. Districts are responsible for conducting child find and identifying all IDEA-eligible students that reside in their jurisdiction. Because the child find obligation is an affirmative one, a parent is not required to request that a district identify and evaluate a child. Robertson County Sch. Sys. v. King, 99 F.3d 1139, 95-5526 (6th Cir. 1996, unpublished).
8. According to the Sixth Circuit, a petitioner needs to prove that the school district"overlooked clear signs of disability" and were negligent in failing to order testing, or that there was "no rational justification for failing to evaluate." Bd. of Educ.

PLAINTIFFS 00014055

of Fayette County, Kentucky v. L.M., 47 IDELR 20122 (6th Cir. 2007), at para. 1, cert. denied, 110 LRP 48155, 128 S. Ct. 693 (2007) (citing Clay T. v. Walton County Sch. Dist., 952 F.Supp. 817, 823 (M.D.Ga.1997)).

9. The Student was referred to the building's child study team in October 2018 and an intervention plan was developed. The child study team intervention plan indicated the Student had behavior concerns which impacted the Student's learning dating back to second, third, fourth and fifth grades.
10. An update on the Student's intervention plan, dated On November 30, 2018, referenced the Parent wanted intensive services and a Vanderbilt Scale completed for the Student. The Vanderbilt is a psychological assessment tool utilized for attention deficit hyperactivity disorder symptoms and their effects on behavior and academic performance in children ages six to 12.
11. In November 2018, a clinical social worker gained consent from the Parent to provide services to the Student. The Student received services three times in December 2018 and twice in January 2019. The Student continued to be suspended throughout the remainder of the school year and reportedly received homebound services in May 2019, due to a code of conduct violation.
12. Based on documentation provided by the District, the Student did not successfully meet the phase requirements of the alternative middle school. As of January 2019, the Student had not moved passed the orientation phase.
13. Although the District did not receive a written request from the Parent to evaluate, this does not negate the District's ongoing Child Find obligations. The Student was placed in a short-term, tier-three behavior modification program at an alternative school as an intervention to address behavioral needs and was enrolled for over a year. During this intervention time, the Student's behaviors increased in frequency and intensity, as well as the Student's academic concerns persisted.
14. Despite the District's attempts to provide multiple supports through interventions, the Student reportedly failed to respond to those interventions and continued to accrue numerous suspensions with increased intensity and frequency and failing grades, which resulted in a lack of progress in the general education curriculum and ongoing behavioral concerns. The District had reason to suspect a disability and pursue an evaluation consistent with their Child Find obligation.

Issue 1ii:
1. A child who has not been determined to be eligible for special education and related services under this part and who has engaged in behavior that violated a code of student conduct, may assert any of the protections provided for in this part if the public agency had knowledge (as determined in accordance with paragraph (b) of this section) that the child was a child with a disability before the behavior that precipitated the disciplinary action occurred. 34 CFR § 300.534(a).
2. A student is determined to be eligible for special education and related services under IDEA and MARSE if, it has been determined by a group of qualified professionals and the Parent of the student, that the student has a disability as defined under 300.8 and is in need of special education and related services consistent with 34 CFR §§ 300.111 (c)(1) and 300.306(a)(1).
3. As a learner with a disability eligible under the IDEA, a student is entitled to receive a FAPE according to an individualized education program (IEP), which includes discipline protections, special education, related services, and supplementary aids and services designed to meet the Student's unique educational needs. 34 CFR § 300.17.
4. A public agency must be deemed to have knowledge that a child is a child with a disability if before the behavior that precipitated the disciplinary action occurred—

    i. The parent of the child expressed concern in writing to supervisory or administrative personnel of the appropriate educational agency, or a teacher of the child, that the child is in need of special education and related services;
    ii. The parent of the child requested an evaluation of the child pursuant to §§ 300.300 through 300.311; or
    iii. The teacher of the child, or other personnel of the LEA, expressed specific concerns about a pattern of behavior demonstrated by the child directly to the director of special education of the agency or to other supervisory personnel of the agency. 34 CFR § 300.534(b).

5. If the district does not have knowledge, no IDEA disciplinary protections are available and the district may discipline the student with a disability the same way it would discipline a non-disabled student for similar misconduct. 34 CFR § 300.534(d).
6. According to the Office of Special Education and Rehabilitative Services (OSERS), "If a child engages in behavior that violates the code of student conduct prior to a determination of his or her eligibility for special education and related services and the public agency is deemed to have knowledge of the child's disability, the child is entitled to all of the IDEA protections afforded to a child with a disability, unless a specific exception applies. In general, once the student is properly referred for an evaluation under Part B of the IDEA, the public agency would be deemed to have knowledge that the child is a child with a disability for purposes of the IDEA's disciplinary provision." OSERS, Questions and Answers on Discipline Procedures, (June 1, 2009).
7. The Student was placed in a short-term, tier-three behavior modification program at an alternative middle school as an intervention to address behavioral needs and was enrolled for over a year. During this intervention time, the Student's behaviors increased in frequency and academic concerns persisted.
8. The Parent did not express concerns in writing to District staff indicating a need for special education and related services or request an evaluation of the Student.
9. The teacher of the Student or personnel from the District did not express concerns about the Student's repeated pattern of behavior to the director of special education or supervisory personnel in the District; however, a referral was made to the child study team and information indicated behavior concerns impacted the Student's academics.
10. Although District staff did not express concerns regarding the Student to administrative staff, the standards regarding when to suspect a disability require reconsideration as there was originally enough information to initiate the child study team process and the identified interventions and supports provided to the Student were clearly not achieving the intended results.
11. At the very least, the District had reason to suspect the Student may have a disability at the child study meeting held at the end of October 2018 upon reviewing the Student's cumulative record and after the Student reached ten cumulative days of suspension in November 2018, which triggered the need and request for a clinical social worker as an additional intervention.
12. The District continued to suspend the Student throughout the remainder of the 2018 – 2019 school year. Attendance records provided by the District demonstrate 35 cumulative days of removal; whereas the Michigan Student Data System demonstrates 85 cumulative days due to behavior.
13. During the 2018 - 2019 school year, the District had reason to suspect the Student may have a disability, as along with failing grades and a reported failure to respond to interventions, the Student also had a significant number of removals which exceeded ten cumulative school days.
14. The District did not provide the Student the procedural safeguards contained in the

IDEA's discipline provisions for students not determined eligible.

Overall FAPE:
1. The IDEA requires that a State (i.e., public agency) have in effect policies and procedures to ensure that the State (i.e., public agency) identifies, locates and evaluates all children with disabilities residing in the State, regardless of the severity of their disability, and who are in need of special education and related services. It is critical that this identification occur in a timely manner and that no procedures or practices result in delaying or denying this identification. Letter to State Directors of Special Education, July 19, 2013 (OSEP).
2. The IDEA seeks to ensure that children with disabilities have access to a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of children with disabilities and their parents or guardians are protected. 20 U.S.C. § 1400. Further, the IDEA "provides federal funds to assist state and local educational agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures. One of those goals/procedures is the affirmative duty of the state (i.e., the local educational agency) to assure that "all children residing in the State (i.e., local educational agency) who are disabled . . . and who are in need of special education and related services are identified, located, and evaluated." 20 U.S.C. § 1412(2)(C); Robertson County Sch. Sys. v. King, 99 F.3d 1139, 95-5526, October 15, 1996 (6th Cir., unpublished) (citing Wise v. Ohio Dept. of Educ., 80 F.3d 177, 181 (6th Cir. 1996)).
3. A FAPE means special education and related services that are provided in conformity with an IEP. 34 CFR § 300.17(d).
4. Failing to meet Child Find requirements is a matter of serious concern that can deny FAPE to a student whom a district should have identified. This failure to identify may entitle the student to compensatory education or tuition reimbursement accruing from the time the district first should have suspected the disability. *T.B. v. Prince George's County Bd. of Educ.*,17-1877, July 26, 2018 (4th Cir.); *Robertson County Sch. Sys. v. King*, 95-5526, October 15, 1996 (6th Cir., *unpublished*); *Lakin v. Birmingham Pub. Schs.*, 70 F. App'x 295, 02-1137 (6th Cir. 2003); and *Department of Educ. v. Cari Rae S.*, 158 F. Supp. 2d 1190, August 3, 2001 (D. Hawaii).
5. In reviewing the violations above regarding Child Find, the Student's lack of academic and behavior progress, even with interventions, affected the Student's substantive rights. The Student's learning and educational benefit was negatively impacted.
6. If the Student is found eligible for special education services, the violation rises to a denial of a FAPE.

**Decision:**

1. Whether the District provided the Student a free appropriate public education (FAPE) pursuant to 34 CFR §§300.17 and 300.101. Specifically:
   i. Whether the District met its Child Find obligation to identify, locate and evaluate a student with a disability pursuant to 34 CFR §§ 300.111 and 300.301.

   **The District had reason to suspect the Student might be a student with a disability and in need of special education. The District did not meet their Child Find obligation. The MDE determines a violation.**

   ii. Whether the District afforded the Student the procedural safeguards contained in the IDEA's discipline provisions for students not determined eligible for special

education consistent with 34 CFR § 300.534.

**The District did not afford the Student the procedural safeguards contained in the IDEA's discipline provisions for students not determined eligible for special education. The MDE determines a violation.**

**Student Level Corrective Action Plan:**

If the District has not already done so, within 30 school days or no later than the dates indicated below, the District must provide student level corrective action as follows:

1. By January 15, 2020, consistent with the conclusions outlined in this final decision, conduct a review of existing evaluation data to:
    i. Review all relevant Student data from the Student's educational file, including input from the teacher and the Parent(s);
    ii. Identify all of the Student's potential special education and related service needs;
    iii. On the basis of the review, determine the evaluations that need to be conducted to consider all areas of suspected disabilities, consistent with 34 CFR § 300.304 through 300.311, if any;
    iv. If evaluations were identified, seek consent from the Parent to conduct the evaluation(s) as determined at the review of existing evaluation data; and
    v. Provide prior written notice to the Parent for the evaluation(s) or for a determination that no additional evaluations were needed, including the reasons for the determination.
2. By January 15, 2020, consistent with the conclusions outlined in this final decision, conduct a full and individual initial evaluation that is sufficiently comprehensive and utilizes a variety of assessment tools and strategies to gather current relevant social-emotional, functional, developmental, and academic information about the Student, including information provided by the Parent, to identify all of the Student's special education and related service needs as outlined in the review of existing evaluation data after consent is provided by the Parent, in the following areas of need, as appropriate:
    i. Achievement, social/emotional/behavioral, adaptive skills, cognitive ability, and any other relevant areas of need; and
    ii. A functional behavioral assessment and behavior intervention plan, as appropriate.
3. By January 15, 2020, conduct a multidisciplinary evaluation team meeting to make a recommendation to the IEP team regarding eligibility, and if eligible, identify the educational needs of the Student consistent with the MARSE and the IDEA requirements.
4. By January 15, 2020, conduct an IEP team meeting to determine eligibility. If eligible, develop an IEP that includes:
    i. A present level statement that accurately reflects the Student's academic achievement and functional performance, including how the Student's disability affects the Student's involvement and progress in the general education curriculum.
    ii. Measurable annual goals and short-term objectives designed to meet the Student's needs that result from the disability to enable the Student to be involved in and make progress in the general education curriculum. The goals/objectives must contain the following components:
        a. Baseline data;
        b. Time frame or date;

PLAINTIFFS 00014059

      c. Skill(s) or a set of skills that can be counted or observed (skill/behavior);
      d. A measurement or assessment strategy (measurement/conditions); and
      e. Level of attainment to show mastery (accuracy rate/criteria).
   iii. Identification of the special education and related services and supplementary aids and services to be provided to the Student.
   iv. A clear description of the frequency, location and duration of the supplementary aids and services.
5. If the Student is found eligible, by January 22, 2020, in collaboration with the Parent and the members of the IEP team, the District must develop a plan for providing a total of 32 hours of compensatory service to address the Student's social-emotional/behavioral and academic needs. The plan must include 25 hours to address the Student's academic needs and seven hours to address social-emotional/behavioral needs. Services provided are to be in addition to the regular school day and the requirements of the current IEP. The plan could include participation in supervised group programs and/or activities with same age peers that provide the Student with the opportunity to work on social-emotional/behavioral and/or academic skills. Services must be delivered no later than September 1, 2020.

Evidence of the compensatory services ordered in the student level corrective action plan will be reviewed during the district corrective action verification process. See below for compensatory education requirements.

**Corrective Action Plan:**

The district must revise or develop procedures regarding child find, as needed, by June 15, 2020 to document and ensure that:
1. The District fulfills its ongoing Child Find obligation to identify, locate and evaluate students who are suspected of having a disability and in need of special education services.

The district must revise or develop procedures regarding discipline, as needed, by June 15, 2020 to document and ensure that:
1. The District affords students the procedural safeguards contained in the IDEA's discipline provisions for students not determined eligible for special education.

The district must provide professional development by June 15, 2020 for all relevant staff regarding the new procedures.

Evidence of change in the district's practices must be provided and verified by the OSE.

The ISD must upload evidence of the implementation of the compensatory services plan into the technical assistance notes in the district's corrective action plan to be reviewed during the verification process. Documentation must include:
1. Services must be delivered outside the regular school day.
2. A copy of the receipt(s) for services provided if a contractor is used.
3. Service provider logs for the compensatory services indicating the dates, starting and

    ending times, length of sessions, student absences, make up sessions and a short summary of instruction completed for each session by upload into Catamaran.
4. If the Student is absent on a scheduled day, this session does not need to be made up. Any staff absences require a make-up session.
5. Transportation logs or reimbursement receipts (if applicable).

Evidence of timely compliance and required submissions for Corrective Action Plans and Student Level Corrective Action Plans must be documented in Catamaran. Please direct questions regarding the complaint investigation to Rebecca McIntyre at (517) 335-0457 or mcintyrer1@michigan.gov, and any questions regarding the student level corrective action to Gina Alexander at (517) 241-7107 or alexanderg5@michigan.gov. All correspondence should be clearly marked as pertaining to case 19-0189.

Rebecca McIntyre, Supervisor
Program Accountability
Office of Special Education

cc:    H.B.
       Reuquiyah Saunders
       Mindy Miller
       David Campbell
       Tori Wentela
       Jordan M. Bullinger