UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONQUARION LEWIS; KE'AUJANAA SHEPHERD-FRIDAY; and K.B., by and through her parent and next friend H.B., | Case No. 22-cv-00838-RJJ PJG |
| Plaintiffs, | Hon. ROBERT J. JONKER<br>MAG. PHILLIP J. GREEN |
| v. | |
| MICHIGAN DEPARTMENT OF EDUCATION, | **PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF** |
| Defendant. | |

Erin H. Diaz (P80388)
Disability Rights Michigan
*Attorney for Plaintiffs*
4095 Legacy Parkway
Lansing, Michigan 48911
(517) 487-1755
ediaz@drmich.org

Jennifer B. Salvatore (P66640)
David L. Fegley (P85275)
Salvatore Prescott Porter & Porter
*Attorneys for Plaintiffs*
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
salvatore@sppplaw.com
fegley@sppplaw.com

Elizabeth K. Abdnour (P78203)
ABDNOUR WEIKER LLP
*Attorney for Plaintiffs*
325 E. Grand River Ave.
Suite 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com

Jacquelyn N. Kmetz (P83575)
MI AECRES
*Attorney for Plaintiffs*
P.O. Box 705
Ludington, Michigan 49431
(231) 794-2379
jkmetz@miaecres.org

Ticara D. Hendley (P81166)
Kathleen A. Halloran (P76453)
Neil Giovanatti (P82305)
*Attorneys for Defendant*
Michigan Department of
of Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
hendleyt1@michigan.gov
giovanattin@michigan.gov
hallorank1@michigan.gov

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES............................................................................................ii

I.     INTRODUCTION..................................................................................................1

II.    *Y.A.* HAS NO BEARING ON PLAINTIFFS' IDEA CLAIMS............................................1

       A.     MDE Remains Liable for Its Own IDEA Failures......................................1

       B.     Plaintiffs' IDEA Claims Are Not Moot....................................................3

III.   PLAINTIFFS ALLEGED AND ESTABLISHED TITLE II VIOLATIONS.....................4

IV.   CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*A.J.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*,
    No. 24-249, slip op. at 2-3, 605 U.S. __ (2025)..............................................................2-3

*Ass'n for Disabled Americans v. Fla. Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005).......................7-8

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007),
    amended on reh'g (Mar. 8, 2007)........................................................................................8

*City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997)........................................................................6

*Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240 (6th Cir. Aug. 3, 2022)...............................3

*D.R. v. Michigan Dep't of Ed.*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017)...8

*Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475 (N.D. Ohio 2007)..................................................8

*Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017)......................................................................2-3

*Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740 (6th Cir. 2008).............................................3

*Jones v. Univ. of Memphis*,
    No. 215CV02148JPMCGC, 2016 WL 11496100 (W.D. Tenn. Sept. 9, 2016)..................8

*Powell v. McCormack*, 395 U.S. 486 (1969).................................................................................4

*R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty., Ky.*, 637 F. App'x 922 (6th Cir. 2016)................. 3

*Somberg v. Utica Cmty. Schs.*, 908 F.3d 162 (6th Cir. 2018).........................................................4

*Tennessee v. Lane*, 541 U.S. 509 (2004).....................................................................................6-7

*Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006).........................................................................6-10

*U.S. v. Georgia*, 546 U.S. 151 (2006)....................................................................................passim

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*,
    No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016).......................................8-9

*Y.A. by Alzandani v. Hamtramck Pub. Sch.*,
    No. 24-1855, 2025 WL 1463285 (6th Cir. May 22, 2025).........................................passim

**Statutes**

20 U.S.C. § 1412(a)(11)..........................................................................................................2

20 U.S.C. § 1413(d)(g)............................................................................................................3

**Regulations**

28 C.F.R. § 35.130(b)(1)(v).................................................................................................9-10

34 C.F.R. § 300.151................................................................................................................3

S. Rep. No. 94-168 (1975)......................................................................................................2

MARSE R. 340.1755...........................................................................................................3, 5

I.  **INTRODUCTION**

Defendant's supplemental brief is wrong on the law and the facts. First, Defendant's reading of the *Y.A.* opinion regarding the Individuals with Disabilities Education Act (IDEA) oversimplifies and unilaterally expands the clear text of the decision. As Plaintiffs explained in their Supplemental Brief, the *Y.A.* decision is quite narrow, addressing only Eleventh Amendment immunity in the context of Title II of the Americans with Disabilities Act (ADA). The *Y.A.* decision *cannot* and *should* not be further extended. Under the IDEA's structure, the State Educational Agency (SEA)—here, Defendant MDE—is directly accountable and thus liable for IDEA violations when it fails to bring its local school districts into compliance with the law. In addition, Defendant's supplemental brief conclusorily asserts that Plaintiffs have failed to establish congressional abrogation of Eleventh Amendment immunity for the ADA claims in this case. In fact, Plaintiffs have demonstrated that Congress validly abrogated states' immunity for these claims, which involve unlawful discrimination against students with disabilities. Under the *United States v. Georgia* test, Plaintiffs have demonstrated that Eleventh Amendment immunity is abrogated in this specific case. *U.S. v. Georgia*, 546 U.S. 151, 159 (2006). Defendant's Motion for Summary Judgment should be denied.

II.  ***Y.A.* HAS NO BEARING ON PLAINTIFFS' IDEA CLAIMS**

Contrary to Defendant's argument in its supplemental brief, *Y.A.* has no bearing on Plaintiffs' IDEA claims, which should not be dismissed by the Court.

A.  **MDE Remains Liable for Its Own IDEA Failures**

Through the IDEA-mandated state complaint process, MDE is responsible for correcting noncompliance of local educational agencies (LEAs). Further, the IDEA mandates that MDE take affirmative steps if the LEA in question does not correct its own errors and come into compliance with the law. Here, MDE failed to comply with these direct obligations under the IDEA after the

1

conclusion of the one-year period allotted to the state to bring the district into compliance. MDE's own failures deprived the Plaintiffs of a functioning state complaint system and therefore a free appropriate public education (FAPE). That is discrimination under the IDEA, and nothing in *Y.A.* holds to the contrary.

The relevant statutory provision governing the states' general supervisory obligations under the IDEA is 20 U.S.C. § 1412(a)(11), and its legislative history sheds light on Congress's intent. As the Senate Committee on Labor and Public Welfare explained at the time of the bill's passage, "[t]his provision is included specifically to assure a single line of responsibility with regard to the education of handicapped children, and to assure that in the implementation of all provisions of this Act and in carrying out the right to education for handicapped children, the *State educational agency shall be the responsible agency*." S. Rep. No. 94-168, at 24 (1975) (emphasis added). The Committee explained that it "considers the establishment of *single agency responsibility* for assuring the right to education of all handicapped children of paramount importance. Without this requirement, there is an *abdication* of responsibility for the education of handicapped children." *Id.* (emphasis added). Congress was correct to be concerned. As this case demonstrates, when the State abdicates its responsibility, there is no accountability for local school districts' non-compliance with the law.

As the Supreme Court emphasized just last week, "once a State accepts the IDEA's financial assistance, it must provide 'special education and related services,' including 'instruction' tailored to meet a child's 'unique needs' and sufficient 'support services' to permit the child to benefit from that instruction." Ex. 1, *A.J.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, No. 24-249, slip op. at 2-3, 605 U.S. __ (2025) (quoting *Fry v. Napoleon Cmty. Schs.*, 580

2

U.S. 154, 158 (2017)).[1] For the purposes of IDEA, MDE must be able to bring its districts into compliance to ensure the "future provision of services for all children with disabilities." 34 C.F.R. § 300.151. MDE has failed to do so. (ECF No. 86-2, PageID.1880). Under IDEA, when the district is unable to provide special education programs, MDE must act.  For more than six years, MDE knew that Kalamazoo Public Schools was failing in this regard. MDE's consultants told it so. (ECF No. 86, PageID.1835-1836; ECF No. 86-14, PageID.1999-2000, 2003). MDE's own repeated findings of noncompliance told it so. (ECF No. 86-8, PageID.1917-1921). Nevertheless, MDE failed to exercise its duties under 20 U.S.C. § 1413(d)(g) or MARSE R. 340.1755 to actually respond as it was compelled to under law. Contrary to Defendant's representation, MDE is responsible for failing to ensure correction of noncompliance that ultimately resulted in a denial of FAPE for all Plaintiffs.

### B.  Plaintiffs' IDEA Claims Are Not Moot

Defendant's supplemental brief also reiterates its argument that Plaintiffs' IDEA claims are moot (even though *Y.A.* never even mentions mootness). But, as Plaintiffs already explained in their Response in Opposition to Defendant's Motion for Summary Judgment, they are seeking and entitled to relief from Defendant, despite the district's contribution towards compensatory

---

[1] In *A.J.T.*, the Supreme Court held that "ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts," rather than a heightened showing of "bad faith or gross misjudgment" as the Sixth Circuit had previously held. Ex. 1, *A.J.T.*, No. 24-249, slip op. at 8. In the Sixth Circuit, plaintiffs must demonstrate deliberate indifference to obtain compensatory damages. *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *8 (6th Cir. Aug. 3, 2022) (finding that the Sixth Circuit has assumed without deciding that "a showing of intent is required to recover compensatory damages") (citing to *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty., Ky*., 637 F. App'x 922, 925 (6th Cir. 2016); *Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 & n.2 (6th Cir. 2008))). In their Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiffs demonstrated a violation for failure to accommodate and evidence of the heightened intent requirement to secure damages for the discrimination. (*See* ECF No. 86, PageID.1855-1857).

education. (ECF No. 86, PageID.1846-1849). All Plaintiffs would still benefit from compensatory education to place them in the "same position that he or she would have occupied" but for the denial of FAPE. *Somberg on behalf of Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 176 (6th Cir. 2018). Both Ke'Aujanaa and K.B. are eligible to earn diplomas and are interested in returning to school. (ECF No. 86, PageID.1825, 1829). Upon reenrollment, they would be subject to their district's child find process and provision of FAPE and may need to utilize the state complaint process again. Should MDE not make necessary changes, they will again be deprived of a functioning state complaint system. Thus, all Plaintiffs have a legally cognizable interest in the outcome. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969).

### III.   PLAINTIFFS ALLEGED AND ESTABLISHED TITLE II VIOLATIONS

Defendant's supplemental brief correctly identifies that the *Y.A.* decision concerned the question of Eleventh Amendment immunity with respect to Title II claims. But once again, Defendant overstates the *Y.A.* holding. The *Y.A.* court found that MDE enjoyed Eleventh Amendment immunity because it determined that the plaintiffs in that specific case had failed to state a claim of discrimination against MDE regarding its *own services*, as opposed to those of the LEAs. In contrast, Plaintiffs here have pled and can prove through the substantial evidentiary record that MDE itself excluded Plaintiffs from a functioning state complaint system and discriminated against them in violation of Section 504 and the ADA. (ECF No. 86-14, PageID.1999-2000, 2003; ECF No. 86, PageID.1845-1846; ECF No. 86-5, PageID.1904).

Application of *Georgia's* three-factor test supports a finding that Eleventh Amendment immunity is not appropriate here. *Georgia*, 546 U.S. at 159. Defendant argues that the analysis can begin and end with the first factor, because Plaintiffs have supposedly failed to establish that any aspect of MDE's conduct violated Title II. That is incorrect. (*See* ECF No. 86, PageID.1849-1857).

As Plaintiffs explained in their response to Defendant's motion for summary judgment, MDE has "failed to reasonably accommodate [Plaintiffs'] disabilities by failing to correct KPS IDEA noncompliance, despite the obvious need and repeated opportunities to do so." (ECF No. 86, PageID.1850). When a local district like KPS is flagrantly out of compliance with its obligations under the law, MDE has its own obligations and responsibilities to correct that non-compliance; MDE's failure to impose graduated sanctions on KPS—a failure that violated its legal obligations—had the effect of discriminating against Plaintiffs and other disabled students. MDE could and should have fixed its broken state complaint system. Those fixes include analyzing districts' student populations (comparing students with and without disabilities) to determine if there were significant differences that would demonstrate that a district's child find process was not functioning, assigning corrective actions based on the causes of noncompliance, verifying that the issue that resulted in noncompliance was actually corrected, using the tools provided by MARSE, enforcing deadlines, and applying penalties if ignored. (*See* ECF No. 86-2, PageID.1882-1886). Those modifications were and continue to be required of MDE, as the SEA, under IDEA and MARSE. (ECF No. 86-2, PageID.1873, 1881-1882). Timely implementation of those modifications would not only have ensured KPS's compliance with its legal obligations but also would have shielded Plaintiffs and their peers with disabilities from the exclusion and discrimination that they endured during their educational careers.

The second *Georgia* consideration is "to what extent such misconduct also violated the Fourteenth Amendment," *Georgia*, 546 U.S. at 159, but Plaintiffs here have not expressly alleged any Fourteenth Amendment violations in their currently operative complaint. Finally, the third prong considers "insofar as such conduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity in such contexts is

nevertheless valid." *Id.* This creates an avenue for litigants like Plaintiffs, who did not allege constitutional violations, but nonetheless maintain that Eleventh Amendment immunity should not be applied to bar their Title II claims. In other words, a party's failure to plead constitutional claims alongside education-related ADA Title II claims is not fatal to its immunity arguments.

When analyzing the third *Georgia* factor, the Court must determine "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* In this case, Defendant violated Title II of the ADA by denying Plaintiffs access to a functioning state complaint process. Additionally, Defendant allowed the district to continue excluding Plaintiffs from access to their education for years with no financial penalty, in violation of IDEA and MARSE.

Shortly after *Georgia* was decided, the First Circuit offered a thorough and thoughtful discussion of its third factor in a case where, like here, Plaintiff had "stated a claim that [the public education entity] violated Title II but not the Fourteenth Amendment[.]" *Toledo v. Sanchez*, 454 F.3d 24, 34 (1st Cir. 2006). The First Circuit analyzed whether, under the third *Georgia* factor, Congress's abrogation of sovereign immunity as to the class of conduct at issue was valid as a prophylactic measure within Congress's Section 5 power. The First Circuit answered in the affirmative. Its analysis traced the reasoning of Supreme Court precedent established in *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997). Pursuant to that precedent, the *Toledo* court first considered the constitutional rights that Congress sought to protect when it enacted Title II, and whether there was a history of constitutional violations to support Congress's determinations. It answered yes to that question. At a general level, the Supreme Court had already held in *Tennessee v. Lane* that the "sheer volume of evidence demonstrating the nature and extent of unconstitutional

discrimination against persons with disabilities in the provision of public services" made it "clear beyond peradventure that inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation." 541 U.S. 509, 528-529 (2004). And as to the more specific question about the history of disability discrimination in the public education context, the *Toledo* court, relying on state statutes, court decisions, and examples from the legislative history of the ADA, concluded that "the thirty years preceding the enactment of the ADA evidence a widespread pattern of states unconstitutionally excluding disabled children from public education and irrationally discriminating against disabled students within schools," meant that "Congress was justified in enacting prophylactic § 5 legislation in response." *Toledo*, 454 F.3d at 38-39.

The final consideration for the *Toledo* court was whether Title II, as applied to public educational institutions, constituted a "congruent and proportional response to this history and pattern of unconstitutional discrimination." *Id.* at 39. In answering that question, the *Toledo* court acknowledged that Title II imposed burdens on states as it forced them to "make reasonable changes to their programs so that otherwise qualified disabled students can participate in public education." *Id.* But the imposition on states was congruent and proportional to the harm that Congress sought to remedy:

> Title II creates an affirmative obligation for states to "reasonably modify" their programs so as to accommodate the "otherwise qualified" disabled students of this nation. This obligation is not disproportionate to the need to protect against the outright exclusion and irrational disability discrimination that such students experienced in the recent past.

*Id.* at 40. *See also Ass'n for Disabled Americans v. Fla. Int'l Univ.,* 405 F.3d 954, 959 (11th Cir. 2005) (finding Title II to be an appropriate prophylactic response to the long history of discrimination against students with disabilities and noting that "[d]iscrimination against disabled

7

students in education affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of citizenship, such as voting and participation in public programs and services"); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007) (in Title II education case, Third Circuit "join[s] several sister circuits in holding that Congress acted within its Constitutional authority in abrogating sovereign immunity under Title II of the ADA").

Courts within the Sixth Circuit have been guided by *Toledo v. Sanchez* in analyzing sovereign immunity under the ADA. *See*, *e.g.*, *Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 481 (N.D. Ohio 2007) (agreeing with *Toledo's* analysis in light of *Lane* and *Georgia*, in finding abrogation of Eleventh Amendment immunity in a case involving a university doctoral student who sought accommodations related to nerve problems that impacted his ability to type at a high speed and for a sustained period of time); *Jones v. Univ. of Memphis*, No. 215CV02148JPMCGC, 2016 WL 11496100, at *4 (W.D. Tenn. Sept. 9, 2016) (citing *Toledo* and Third, Fourth, and Eleventh Circuit cases to find abrogation of Eleventh Amendment immunity in higher education case involving legally blind university student who alleged that University officials violated Title II and Section 504 by requiring her to attend mandatory meetings on the third floor of an academic building); *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *8 (M.D. Tenn. Jan. 20, 2016) (citing *Toledo* and Second, Third, Fourth, and Eleventh Circuit cases to find abrogation of 11th Amendment immunity in primary education case involving students with disabilities who alleged that the state had violated the IDEA, Title II, and Section 504 by denying them equal access to education and failing to place them in the least restrictive environment); *D.R. v. Michigan Dep't of Ed.*, No. 16-13694, 2017 WL 4348818, at *8 (E.D. Mich. Sept. 29, 2017) (citing *Toledo* and Second, Third, Fourth, and Eleventh Circuit cases, and *W.H.*,

8

2016 WL 236996, to find abrogation of 11th Amendment immunity in public education in case involving school-age children who alleged that the state had violated the IDEA, Title II, and Section 504 by failing to have child find processes in place, failing to provide a FAPE, and denying equal access to education among other claims).

Unlike the *Y.A.* case, where the court ended its inquiry at the first *Georgia* prong, Plaintiffs here have alleged and substantiated their claims against Defendant and its own programs and services—the state complaint process. Moreover, Plaintiffs have demonstrated that Defendant allowed discrimination to continue within the districts despite the ADA's clear prohibition on providing significant assistance to an entity that is discriminating, as this would constitute "[a]id[ing] or perpetuat[ing] discrimination" by Defendant itself. 28 C.F.R. § 35.130(b)(1)(v). While Plaintiffs did not allege a Fourteenth Amendment violation, Plaintiffs claims fall squarely within the *Georgia* test's third prong. Considering access to education as the First Circuit did in *Toledo v. Sanchez*, thirty years of evidence demonstrates that students experienced the unconstitutional exclusion from educational programs and irrational discrimination prior to the enactment of the ADA. *Toledo*, 454 F.3d at 38-39. Notably, Congress was aware that both IDEA and the Rehabilitation Act provided protections for disabled students, but it did not exclude educational institutions from the ADA. Instead, it specifically included education as an area of public life where it found that discrimination persisted and needed a statutory remedy. Thus, Title II of the ADA was justifiable "prophylactic § 5 legislation." *Id.* Lastly, while Title II does impose burdens on the state, they are a congruent and proportional response to the historic discrimination that students with disabilities experience. *Id.* at 40. The IDEA requires state departments of education to implement a state complaint process. But for the Plaintiffs' disabilities, they would not need access to MDE's state complaint process to access their education. When that state

9

complaint process fails, as is the case here, MDE is required to fix it. If it doesn't, it violates the ADA by aiding and perpetuating discrimination. 28 C.F.R. § 35.130(b)(1)(v). Thus, as the First Circuit found in *Toledo*, and as the Third, Fourth, and Eleventh Circuits and other district courts within the Sixth Circuit have found, Eleventh Amendment immunity does not shield the state in the context of public education. This court should find the same.

## IV.   CONCLUSION

Plaintiffs have pled and substantiated their Title II ADA claims, demonstrated that Eleventh Amendment immunity should be abrogated, and still have live claims under IDEA and Section 504 of the Rehabilitation Act. Therefore, this case must not be dismissed on either immunity or substantive grounds. As explained fully in Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' subsequent supplemental briefing, Defendant's motion for summary judgment should be denied, and the Plaintiffs' claims should proceed to trial.

Respectfully submitted,

Dated: June 16, 2025

/s/ David L. Fegley
David L. Fegley (P85275)
Jennifer B. Salvatore (P66640)
Salvatore Prescott Porter & Porter, PLLC
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
salvatore@spplaw.com
fegley@spplaw.com

Erin H. Diaz (P80388)
Disability Rights Michigan
4095 Legacy Parkway
Lansing, Michigan 48911
(517) 487-1755
ediaz@drmich.org

        Elizabeth K. Abdnour (P78203)
        Abdnour Weiker, LLP
        325 E. Grand River Ave., Ste. 250
        East Lansing, Michigan 48823
        (517) 994-1776
        liz@education-rights.com

        Jacquelyn N. Kmetz (P83575)
        MI AECRES
        P.O. Box 705
        Ludington, Michigan 49431
        (231) 794-2379
        jkmetz@miaecres.org

        *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.2(b)(ii), Plaintiffs certify that this brief complies with Local Rule 7.2(b)(i) as this brief includes 3,760 words. Microsoft Word Office 365 is the word processing software used to generate the word count in the above brief.

/s/ David L. Fegley
David L. Fegley (P85275)

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I electronically filed the above document and Plaintiffs' Supplemental Briefing and accompanying documents using the ECF System which will send notification of such to all represented parties.

/s/ David L. Fegley
David L. Fegley (P85275)